United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MEDTRONIC, INC., et al.,                    No. C-07-0567 MMC

12            Plaintiffs,                        **ORDER DENYING DEFENDANT'S**
                                                 **MOTION FOR SUMMARY JUDGMENT**
13      v.                                       **OF INVALIDITY; DENYING PLAINTIFFS'**
                                                 **MOTION FOR SUMMARY JUDGMENT**
14   AGA MEDICAL CORPORATION,                    **RE: PRIOR ART AND ANTICIPATION**

15            Defendant.
                                          /
16

17        Before the Court are defendant AGA Medical Corporation's ("AGA") "Motion (#2) for

18   Summary Judgment of Invalidity under 35 U.S.C. §§ 101 ('Double Patenting'), 102(a) ('Prior

19   Use') and 103 ('Obviousness')," filed February 28, 2009, and plaintiffs Medtronic, Inc.,

20   Medtronic USA, Inc., and Medtronic Vascular, Inc.'s (collectively, "Medtronic") "Motion that

21   the Cragg Filter Experiments Are Not Prior Art under 35 U.S.C. § 102 or § 103 and that the

22   Cragg II Paper Is Not Anticipating under § 102," filed February 27, 2009.  With respect to

23   each motion, an opposition and a reply have been filed.  Having read and considered the

24   papers filed in support of and in opposition to the motions, the Court rules as follows.

25   **A.    Anticipation**

26        Under 35 U.S.C. § 102(a), a person shall be entitled to a patent unless "the invention

27   was known or used by others in this country . . . before the invention thereof by the

28   applicant for patent."  See 35 U.S.C. § 102(a).  "Anticipation requires that each element of

1 the claim at issue is found, either expressly described or under the principles of inherency,

2 in a single prior art reference or that the claimed invention was previously known or

3 embodied in a single prior art device or practice." See In re Omeprazole Patent Litig., 483

4 F.3d 1364, 1377 (Fed. Cir. 2007).

5 **1.   AGA's Motion**

6 In its motion, AGA argues that all of the asserted independent claims of the three

7 patents-in-suit, United States Patens Numbers 5,067,967 ("'957 patent"), 5,190,546 ("'546

8 patent"), and 6,306,141 ("'141 patent"), are invalid, on the ground that such claims were

9 practiced by Dr. Andrew Cragg ("Cragg") and Dr. Kurt Amplatz ("Amplatz") prior to the

10 filing, on October 14, 1983, of the application that ultimately resulted in the issuance of the

11 patents-in-suit.  In particular, AGA asserts that Cragg and Amplatz practiced the asserted

12 claims during experiments undertaken in 1982 and 1983 ("Cragg/Amplatz experiments"),

13 which experiments were "memorialized" (see Mot. at 2:16) in an article published in

14 September 1983, specifically, Andrew Cragg et al., A New Percutaneous Vena Cava Filter,

15 141 Am. J. Roentgenology 601 (Sept. 1983) ("Cragg II").  (See Decl. Steven D. Hemminger

16 ("Hemminger Decl.") Ex. 24.)  As set forth below, the Court finds AGA has failed to show it

17 is entitled to summary judgment of invalidity on the ground of anticipation on the basis of

18 the Cragg/Amplatz experiments.

19 To prevail on its motion, AGA must show the Cragg/Amplatz experiments, as

20 memorialized in the Cragg II article, employed a shape memory alloy that "displays" stress-

21 induced martensite.  The "display" of stress-induced martensite is a limitation of each of the

22 asserted claims of the patents-in-suit. (See Order Construing Claims, filed Feb. 6, 2008, at

23 2:3-10.)  In support of its argument that Cragg II describes such an alloy, AGA points to the

24 following statement therein: "If the position of the filter was not optimal, it could be

25 withdrawn into the catheter and positioned again." (See Cragg II at 602.)  Thomas W.

26 Duerig ("Duerig"), AGA's expert, opines that because such withdrawal occurred at a

27 temperature above the temperature at which the filter's transformation from its martensitic

28 to its austenitic state was complete, if martensite was displayed during such withdrawal, it

1  had to have been induced by stress rather than by a change in temperature.  (See Decl.

2  Dr. Thomas W. Duerig in Supp. AGA's Opp'n ("Duerig Opp'n Decl.") ¶ 6.)  Additionally,

3  Kaushik Bhattacharya, another of AGA's experts, "rules out ordinary elasticity" as a

4  "deformation mechanism," for the reason that, in Bhattacharya's opinion, the filter used by

5  Cragg and Amplatz suffered strains in the range of 2.3% to 4.4%, as compared with the

6  ordinary elasticity of austenite generally, which "can accommodate strains of at most 0.5%

7  to about 1%."  (See Duerig Opp'n Decl. Ex. B ("Expert Report of Prof. Kaushik

8  Bhattacharya") ¶¶ 26-27, 30-31.)

9           As Medtronic's expert, Robert Sinclair ("Sinclair"), notes, however, Cragg II does not

10  disclose the chemical composition of the alloy used by Cragg and Amplatz, or whether the

11  filters at issue "fully deployed" or "achieved body temperature" before being retracted.  (See

12  Decl. Dr. Robert Sinclair, PhD ("Sinclair Decl.") ¶¶ 161.)  According to Sinclair "there is

13  insufficient evidence to determine," under such circumstances, whether the filters changed

14  shape due to the presence of stress-induced martensite or were merely "plastically or

15  elastically deformed."  (See id. ¶ 166.)[1]  Further, as Medtronic points out, Cragg II never

16  uses the term "stress-induced martensite" and, instead, is focused exclusively on the use of

17  an alloy with a "heat-sensitive memory."  (See Cragg II at 601.)

18           A review of the Cragg II reference reveals that the display of stress-induced

19  martensite is not expressly disclosed therein.  AGA, although arguing to the contrary, also

20  asserts, in essence, that stress-induced martensite was "necessarily present, or inherent,"

21  in the alloy used in the experiments.  See Schering Corp. v. Geneva Pharms., Inc., 339

22  F.3d 1373, 1377 (Fed. Cir. 2003) (holding "a prior art reference may anticipate without

23  disclosing a feature of the claimed invention if that missing characteristic is necessarily

24  present, or inherent, in the single anticipating reference") (internal citation omitted).  The

25  above-discussed evidence submitted by Medtronic is sufficient, however, to raise a triable

26

27           [1]Although AGA has challenged, under Daubert v. Merrell Dow Pharms., Inc., 509
28  U.S. 579 (1993), certain of Sinclair's opinions, that challenge is not made with respect to
   the opinions referenced above.

3

1 issue with respect to the inherency of stress-induced martensite in the alloy used by Cragg

2 and Amplatz.[2]

3      Accordingly, to the extent AGA seeks summary judgment of invalidity on the ground

4 of anticipation, AGA's motion will be denied.

5      **2.     Medtronic's Motion**

6      In its motion, Medtronic argues that the Cragg/Amplatz experiments do not

7 constitute either prior art or an invalidating prior use and that the Cragg II article does not

8 anticipate any of the asserted claims of the patents-in-suit.  As set forth below, the Court

9 finds Medtronic is not entitled to summary judgment with respect to either the

10 Cragg/Amplatz experiments or the Cragg II article.

11      Medtronic first argues that, even assuming the filters at issue exhibited stress-

12 induced martensite, the Cragg/Amplatz experiments cannot constitute prior art or an

13 invalidating prior use because Cragg did not appreciate what he assertedly had discovered.

14 The Court disagrees.  In particular, in the context of prior use under § 102(a), "it is

15 irrelevant that those using the invention may not have appreciated the results."  See W.L.

16 Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1548 (Fed. Cir. 1983).  As AGA

17 points out, the cases cited by Medtronic in support of its argument to the contrary are

18 distinguishable.  Most of those cases deal either with prior invention under § 102(g) or an

19 earlier statute,[3] see Coffin v. Ogden, 85 U.S. 120, 124-25 (1873); Invitrogen Corp. v.

20 Clontech Labs., 429 F.3d 1052, 1063 (Fed. Cir. 2005); Mycogen Plant Sci., Inc. v.

21 Monsanto Co., 243 F.3d 1316, 1331 (Fed. Cir. 2001); Int'l Glass Co. v. United States, 408

22 F.2d 395, 402 (Ct. Cl. 1969), or with prior knowledge, see In re Borst, 345 F.2d 851, 853

23 (C.C.P.A. 1965); In re Schlitter, 234 F.2d 882, 884 (C.C.P.A. 1956), rather than prior use.

24

25      [2]In light of such finding, the Court does not reach Medtronic's argument that a triable
26 issue exists as to whether the Cragg/Amplatz experiments were publicly accessible.  See
Minn. Min. & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1306 (Fed. Cir. 2002) ("For
27 purposes of anticipation, a use must be accessible to the public").

28      [3]AGA "is not asserting an invalidity defense based on prior invention by Dr. Cragg
and others."  (See Def.'s Opp'n at 8:13-15.)

4

1  Although one case, Eibel Process Co. v. Minn. & Ontario Paper Co., 261 U.S. 45, 66

2  (1923), discusses what the Federal Circuit has called "'accidental, unwitting, and

3  unappreciated' anticipation," see Schering Corp., 339 F.3d at 1378, even Eibel, according

4  to the Federal Circuit, "do[es] not show that inherency requires recognition," see id.[4]

5      Medtronic next argues that AGA has no evidence Cragg II "enable[s]" any asserted

6  claim of the patents-in-suit.  "In order to be anticipating, a prior art reference must be

7  enabling so that the claimed subject matter may be made or used by one skilled in the art."

8  See Impax Labs., Inc. v. Aventis Pharms. Inc., 468 F.3d 1366, 1381 (Fed. Cir. 2006).  "In

9  order to enable, the prior art reference must teach one of ordinary skill in the art to make or

10  carry out the claimed invention without undue experimentation."  See Minn. Min. & Mfg.

11  Co., 303 F.3d at 1306.

12      Here, AGA has presented evidence that Cragg II discloses "the size of nitinol wire

13  used, the annealing time, temperature and method, the size of the catheter used, the $A_f$

14  temperature, and experimental results" and that, consequently, the article "includes all the

15  information that is required to enable one of ordinary skill in the art to duplicate what Dr.

16  Cragg and his team did . . . without undue experimentation."  (See Duerig Opp'n Decl. ¶ 7.)

17  Medtronic has failed to show anything more is required in order to raise a triable issue as to

18  enablement.  Cf. Amgen, Inc. v. Hoescht Marion Roussel, Inc., 314 F.3d 1313, 1355 & n.22

19  (Fed. Cir. 2003) (holding "an accused infringer should be . . . entitled to have the district

20  court presume the enablement of unclaimed (and claimed) material in a prior art patent

21  defendant asserts against a plaintiff"; noting "by logical extension, our reasoning here might

22  also apply to prior art printed publications as well").

23      Medtronic next argues that the Cragg/Amplatz experiments did not employ a shape

24  memory alloy that displays stress-induced martensite and that the Cragg II article does not

25

26      [4]Medtronic also relies on Medtronic, Inc. v. Daig Corp., 611 F. Supp. 1498 (D. Minn.
1985), in which the court stated: "When a party asserts that a prior use anticipates a patent

27  claim under § 102(a) or (b), that party must also establish that such a use was of a
complete invention, i.e., conceived and reduced to practice, and public," see id. at 1508.  In

28  support of this statement, however, the district court relied on Coffin and Int'l Glass Co.,
both of which, as noted, deal with prior invention rather than prior use.

1   disclose such an alloy.  As discussed above, however, a triable issue exists as to whether

2   the experiments, as described in the article, employed an alloy that necessarily displayed

3   stress-induced martensite.

4        Accordingly, to the extent Medtronic seeks summary judgment on AGA's defense of

5   invalidity on the basis of anticipation, Medtronic's motion will be denied.

6   **B.    Obviousness**

7        Under 35 U.S.C. § 103, a patent is invalid "when the differences between the subject

8   matter sought to be patented and the prior art are such that the subject matter as a whole

9   would have been obvious at the time the invention was made to a person having ordinary

10  skill in the art to which said subject matter pertains."  See KSR Int'l Co. v. Teleflex Inc., 127

11  S. Ct. 1727, 1734 (2007) (internal quotation and citation omitted); see also 35 U.S.C.

12  § 103.

13       **1.    AGA's Motion**

14       AGA argues that all of the asserted claims of the patents-in-suit that are not

15  anticipated by the Cragg/Amplatz experiments or the Cragg II article are obvious variants of

16  asserted claims that are anticipated by such experiments or such article.  As discussed

17  above, however, the Court has found a triable issue exists as to whether any of the

18  asserted independent claims is anticipated, and, consequently, AGA's argument

19  necessarily fails.

20       AGA next argues that the asserted claims are rendered obvious by a combination of

21  three prior art references, specifically, (1) Andrew Cragg, et al., Nonsurgical Placement of

22  Arterial Endoprostheses: A New Technique Using Nitinol Wire, 147 Radiology 261 (Apr.

23  1983) ("Cragg I"), (2) Japanese Patent Application No. S56-144326 (Sept. 12, 1981)

24  ("Miyauchi"), and (3) United States Patent Number 4,490,112 (Sept. 2, 1982) ("Tanaka").

25  (See Hemminger Decl. Exs. 10, 16, 24.)  Although a party seeking to demonstrate

26  obviousness on the basis of a combination of prior art references need not show that

27  "some motivation or suggestion to combine the prior art teachings can be found in the prior

28  art, the nature of the problem, or the knowledge of a person having ordinary skill in the art,"

1   see KSR, 127 S. Ct. at 1734 (internal quotation and citation omitted), such party

2   nevertheless must show there was "an apparent reason to combine the known elements in

3   the fashion claimed by the patent at issue," see id. at 1740-41.

4        Here, AGA argues that "one of ordinary skill in the art would have been motivated to

5   combine these references to address the problem stated in the application [for the patents-

6   in-suit], i.e., avoiding the need for controlling the temperature of [a shape memory alloy]

7   medical device when implanting it in a body." (See Def.'s Mot. at 12:25-27); see also KSR,

8   127 S. Ct. at 1742 ("[A]ny need or problem known in the field of endeavor at the time of

9   invention and addressed by the patent can provide a reason for combining elements in the

10  manner claimed."). As Medtronic points out, however, AGA has failed to present any

11  evidence in support of this assertion, nor has AGA presented any evidence suggesting the

12  above-referenced "problem" was "known" in the field at the time of the application for the

13  patents-in-suit. Consequently, AGA has failed to demonstrate a reason to combine the

14  references at issue existed.[5]

15       Accordingly, to the extent AGA seeks summary judgment of invalidity on the basis of

16  obviousness, AGA's motion will be denied.

17       **2.    Medtronic's Motion**

18       Medtronic argues that the Cragg/Amplatz experiments cannot render the asserted

19  claims of the patents-in-suit obvious, on the ground that the experiments do not qualify as

20  prior art under § 102. As discussed above, however, the Court has found a triable issue

21  exists as to whether the experiments constitute prior art, and, consequently, Medtronic's

22  argument necessarily fails.

23       Accordingly, to the extent Medtronic seeks summary judgment on AGA's defense of

24  invalidity on the basis of obviousness, Medtronic's motion will be denied.

25

26       [5]In light of such finding, the Court does not reach Medtronic's argument (a) that
    there is a triable issue as to the ordinary level of skill in the art in 1983, (b) that there is a
27  triable issue as to whether the combination of the three references discloses every
    limitation of any asserted claim of the patents-in-suit, and (c) that objective indicia of
28  nonobviousness preclude summary judgment in favor of AGA.

1    **C.    Obviousness Type Double Patenting**

2         Obviousness type double patenting ("OTDP") is "a judicially created doctrine

3    grounded in public policy," the purpose of which "is to prevent the extension of the term of a

4    patent, even where an express statutory basis for [ ] rejection is missing, by prohibiting the

5    issuance of the claims in a second patent not patentably distinct from the claims of the first

6    patent." See In re Longi, 759 F.2d 887, 892 (Fed. Cir. 1985).[6]  The doctrine "preclude[s] a

7    second patent on an invention which would have been obvious from the subject matter of

8    the claims in the first patent, in light of the prior art." See Ortho Pharm. Corp. v. Smith, 959

9    F.2d 936, 940 (Fed. Cir. 1992) (internal quotation and citation omitted).

10        The "common-place situation" where a "broader claim 'embraces' or 'encompasses'

11   the subject matter defined by [a] narrower claim," however, "is not, per se, double

12   patenting." See In re Kaplan, 789 F.2d 1574, 1577-78 (Fed. Cir. 1986).  Instead, to

13   establish an OTDP defense, "there must be some clear evidence to establish why the

14   variation [between the two claims] would have been obvious which can properly qualify as

15   'prior art.'" See id. at 1580.

16        Here, AGA argues that the asserted claims of the '141 patent are invalid on the

17   basis of OTDP in light of United States Patent Number 5,597,378 ("'378 patent").[7]  In

18   particular, AGA argues that any differences between the asserted claims of the '141 patent

19   and certain claims of the '378 patent are "not [ ] patentable difference[s]." (See, e.g., Def.'s

20   Mot. at 18:1.)  As to some of these differences, AGA has presented evidence of prior art

21   that, AGA asserts, renders the difference not patentable.  For example, although claim 11

22   of the '141 patent uses the term "stent," whereas claim 9 of the '378 patent uses the term

23   "memory allow element" (see '141 patent col. 11, l. 66; '378 patent col. 11, l. 14), AGA has

24

25        [6]Although, as Medtronic points out, AGA's obviousness type double patenting
26   defense was not pled at the time AGA filed its motion for summary judgment of invalidity,
     the Court, on April 21, 2009, afforded AGA leave to amend its Answer and Counterclaims
27   to assert such defense.

28        [7]In light of the very recent amendment to add an OTDP defense, Medtronic has not
     moved for summary judgment thereon.

1  pointed to prior art that discloses the use a "stent" made from an alloy with "shape-memory

2  properties" (see Hemminger Decl. Ex. 24 (Charles T. Dotter, et al., Transluminal

3  Expandable Nitinol Coil Stent Grafting: Preliminary Report, 147 Radiology 259 (Apr. 1983)

4  ("Dotter"))).  Similarly, although claim 1 of the '141 patent requires a "guide wire," whereas

5  claim 34 of the '378 patent does not (see '141 patent col. 11, l. 5; '378 patent col. 14, ll. 39-

6  69), AGA has pointed to prior art that discloses the use of a "guiding wire" to place an

7  "endovascular prosthesis" in the body of a mammal (see Cragg I at 261).

8  　　　　Each of the three asserted independent claims of the '141 patent, i.e., claims 1, 11,

9  and 18, however, contains at least one term that is narrower than the corresponding term in

10  the '378 patent and that AGA has failed to address other than by the conclusory statement

11  of its expert that the difference between such terms is a "design choice" or a "distinction

12  without a difference."[8]  (See Decl. Dr. Thomas W. Duerig in Supp. AGA's Mot. ("Duerig

13  Decl.") ¶ 52 (stating "[t]he specific shapes of 'relatively straightened' and 'relatively coiled'

14  in claim 11 of the '141 patent are design choices of the more generic 'shape' claimed in the

15  '378 patent"); id. ¶ 57 (stating "[t]he terms 'easily inserted shape' and 'deformed shape'

16  [used in claim 18 of the '141 patent] merely describe the shape of the memory alloy in the

17  stressed shape and are design choices of the more generic 'shape' claimed in the '378

18  patent"); id. ¶ 61 (stating "[t]he language 'hollow tubular restraining member' of claim 34 of

19  the '378 patent versus the language 'hollow placement device' of claim 1 of the '141 patent

20  is a distinction without a difference when considered in light of the entire claim [of] the

21  function of those elements").)  Such statements are insufficient to carry AGA's burden on

22  summary judgment with respect to the issue of OTDP.  See Kaplan, 789 F.2d at 1580; see

23

24  　　　　[8]The Court finds unpersuasive AGA's argument that Medtronic is estopped from
asserting there are any patentable differences between the '141 patent and the '378 patent,

25  on the ground that Medtronic, according to AGA, represented to the United States Patent
and Trademark Office ("PTO") that the only "invention" in either patent was the "use of the

26  stress-induced martensite [ ] properties of the shape memory alloy at body temperature."
(See Def.'s Mot. at 14:19-23.)  In particular, AGA has failed to present any evidence

27  suggesting Medtronic's "assertions in favor of patentability" before the PTO "evince[d] a
clear and unmistakable surrender of subject matter" other than the use of stress-induced

28  martensite at body temperature.  See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 170
F.3d 1373, 1377 (Fed. Cir. 1999).

1  also Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1359 (Fed. Cir. 2007) (holding "the patent

2  challenger bears the burden of proving the factual elements of invalidity by clear and

3  convincing evidence"; noting "[t]hat burden of proof never shifts to the patentee to prove

4  validity").[9]

5         Accordingly, to the extent AGA seeks summary judgment of invalidity of the '141

6  patent on the basis of obviousness type double patenting, AGA's motion will be denied.

7                                    **CONCLUSION**

8         For the reasons stated above, each party's motion is hereby DENIED.

9         **IT IS SO ORDERED.**

10

11  Dated:  April 28, 2009

12                                                    MAXINE M. CHESNEY
                                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27         [9]In light of the above, the Court does not reach Medtronic's argument that AGA's
   OTDP defense is precluded by "the 'safe harbor' provision" (see Pls.' Opp'n at 17:7-8) of 35
28  U.S.C. § 121.

                                          10