Steven D. Hemminger (CA State Bar No. 110665)
ALSTON & BIRD LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, California 94306-2112
Telephone:     (650) 838-2000
Facsimile:      (650) 838-2001
steven.hemminger@alston.com

Michael S. Connor (admitted *pro hac vice*)
Lance A. Lawson (admitted *pro hac vice*)
Brian F. McMahon (CA State Bar No. 235373)
ALSTON & BIRD LLP
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280-4000
Telephone:     (704) 444-1000
Facsimile:      (704) 444-1111
mike.connor@alston.com
lance.lawson@alston.com
brian.mcmahon@alston.com

Marissa R. Ducca (admitted *pro hac vice*)
ALSTON & BIRD LLP
950 F Street, N.W.
Washington, DC 20004-1404
Telephone:     (202) 756-3369
Facsimile:      (202) 654-4982
marissa.ducca@alston.com

Attorneys for Defendant AGA MEDICAL CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MEDTRONIC, INC., a Minnesota corporation, MEDTRONIC USA, INC., a Minnesota corporation, and MEDTRONIC VASCULAR, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AGA MEDICAL CORPORATION, a Minnesota corporation,<br><br>Defendant. | Case No. 3:07-cv-00567 MMC (EMC)<br><br>**AGA'S NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND OPINIONS INCLUDED IN PROF. JANICKE'S MAY 11TH SUPPLEMENTAL REBUTTAL EXPERT REPORT AND ANY ADDITIONAL EVIDENCE REGARDING THE APPLICABILITY OF 35 U.S.C. § 121 (# 11)**<br><br>Date:     June 23, 2009<br>Time:    3:00 p.m.<br>Dept.:    Courtroom 7, 19th Floor<br>Judge:   Honorable Maxine M. Chesney |

1

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF THE ARGUMENT ................................................................... 2

III.   FACTUAL BACKGROUND ............................................................................... 3

       A.    The '141 Patent Did Not Issue from a Divisional Application.................... 3

       B.    The Examiner's Restriction Requirement During the Prosecution of the
             '378 Application Did Not Result in Cancellation of the Claims that
             Later Issued in the '141 Patent.................................................................... 4

IV.    APPLICABLE LEGAL PRINCIPLES ................................................................ 8

       A.    Federal Rules of Evidence ......................................................................... 8

             1.    Federal Rule of Evidence 201 ......................................................... 8

             2.    Federal Rule of Evidence 402 ......................................................... 8

             3.    Federal Rule of Evidence 403 ......................................................... 8

             4.    Federal Rule of Evidence 702 ......................................................... 8

       B.    ''Safe Harbor'' for Divisional Applications under Section 121 of the
             Patent Act.................................................................................................... 9

             1.    A "Safe Harbor" Patent Must Issue from a *Divisional*
                   Application............................................................................................. 9

             2.    The Claims in the Later-Filed Divisional Application Must
                   Have Been Subject to a Restriction Requirement in the Parent
                   Application and Not Elected ........................................................ 11

V.     ARGUMENT ...................................................................................................... 11

       A.    Section 121's "Safe Harbor" Applies Only to Divisional Applications,
             and Prof. Janicke's Opinions to the Contrary Should Be Excluded
             under Rules 702 and 403............................................................................ 12

       B.    Prof. Janicke Admitted During His Deposition that No Claims of the
             '378 Application Were Canceled Due to a Restriction Requirement,
             and Any Opinions to the Contrary Are Unfounded and Should Be
             Excluded under Rule 702 ............................................................................ 14

       C.    Evidence Beyond the Pertinent File Histories Is Inadmissible Pursuant
             to Rule 402 or Rules 702 and 403 ............................................................. 16

VI.    CONCLUSION .................................................................................................. 17

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3
*Applied Materials,*
  1995 U.S. Dist. LEXIS 22335, at *8-*11 .......................................................................... 12

4
*Bausch & Lomb, Inc. v. Alcon Labs., Inc.,*
  79 F. Supp. 2d 252 (W.D.N.Y. 2000)........................................................................ 10, 13

5

6
*Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC,*
  349 F.3d 1373 (Fed. Cir. 2003)......................................................................... 11, 14, 16

7
*Hangarter v. Provident Life & Accident Ins. Co.,*
  373 F.3d 998 (9th Cir. 2004) ..................................................................................... 13

8

9
*Molins Plc v. Textron,*
  48 F.3d 1172 (Fed. Cir. 1995)..................................................................................... 8

10
*Nationwide Transp. Fin. v. Cass Info. Sys.,*
  523 F.3d 1051 (9th Cir. 2008) ................................................................................... 13

11

12
*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*
  518 F.3d 1353 (Fed. Cir. 2008)........................................................................ 9, 10, 13

13
*Rohm & Haas Co. v. Crystal Chem. Co.,*
  722 F.2d 1556 (Fed. Cir. 1983)................................................................................. 15

14

15

### FEDERAL STATUTES

16
35 U.S.C. § 112.............................................................................................................. 6

17
35 U.S.C. § 121.......................................................................................................*passim*

18
35 U.S.C. § 131.............................................................................................................. 7

19
35 U.S.C. § 132......................................................................................................... 6, 15

20

### FEDERAL RULES

21
Federal Rule of Evidence 201........................................................................................ 7

22
Federal Rule of Evidence 402..................................................................................*passim*

23
Federal Rule of Evidence 403..................................................................................*passim*

24
Federal Rule of Evidence 702..................................................................................*passim*

25

### FEDERAL REGULATIONS

26
C.F.R. 1.113.................................................................................................................. 6

27
C.F.R. 1.116.................................................................................................................. 6

28
C.F.R. 1.2.............................................................................................................. 6, 7, 15

1

## OTHER AUTHORITIES

2

Manual of Patent Examining Procedure (MPEP) 5th ed., Rev. 15 (1993) ......................... 3, 4, 18

3

Manual of Patent Examining Procedure (MPEP) 5th ed., Rev. 16 (1994) ............................ 6, 18

4

Manual of Patent Examining Procedure (MPEP), 6th ed., Rev. 1 (1995) ............................ 3, 18

5

Manual of Patent Examining Procedure (MPEP) 6th ed., Rev. 2 (1996) .................................. 18

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO ALL PARTIES AND ATTORNEYS OF RECORD:

Please take notice that Defendant AGA Medical Corporation ("AGA") will and hereby does move *in limine* to preclude Plaintiffs Medtronic, Inc., Medtronic USA, Inc., and Medtronic Vascular, Inc. (collectively, "Medtronic") from presenting testimony from Professor Paul M. Janicke at trial based on opinions outlined in his Supplemental Rebuttal Expert Report. As a matter of law, none of the claims in U.S. Patent No. 6,306,141 (hereinafter, "the '141 patent") are protected by the safe harbor provision of 35 U.S.C. § 121 and, as such, any opinion testimony related to the issue is inadmissible at trial pursuant to Federal Rule of Evidence ("FRE") 702 because it will not "assist the trier of fact" in understanding the evidence or to determine a fact in issue. *See* FRE 702. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, all other pleadings and papers filed in this case, and other such arguments and evidence as may properly come before the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

On May 11, 2009, Medtronic served on AGA the Supplemental Rebuttal Expert Report of Paul M. Janicke. Medtronic has offered Prof. Janicke as an expert in PTO practices and procedures as they relate to the issue of whether or not the asserted claims of the '141 patent are protected by the safe harbor provision of 35 U.S.C. § 121. *See* Supplemental Rebuttal Expert Report of Paul M. Janicke ("Janicke Supplemental Report"), Ex. 44 to the Lawson Decl., at ¶¶ 3-4. As discussed in detail herein, Prof. Janicke opines that the '141 patent issued from a divisional application and that claims of the application that issued as U.S. Patent No. 5,597,378 (hereinafter "the '378 application") included in the '141 patent were cancelled from the '378 application due to a restriction requirement, and as such are immune from a double patenting attack. Whether or not the claims are protected by 35 U.S.C. § 121 is a question of law, and testimony regarding whether section 121's safe harbor applies improperly invades the province of the Court because it amounts to instructing the jury on the law. Because, as a matter of law, the claims are not protected by 35 U.S.C. § 121, AGA moves *in limine* to exclude from trial all of the opinions and testimony included

in Prof. Janicke's Supplemental Rebuttal Expert Report, particularly those concerning whether the '291 application is a divisional application, and whether the claims are protected by 35 U.S.C. § 121. Additionally, because the file histories of the '378 patent and the '141 patent are the only evidence admissible under the relevancy standard of FRE 402 to determine the legal issue of the applicability of 35 U.S.C. § 121's safe harbor provision, AGA also hereby moves to exclude any evidence beyond those relevant file histories.

## II.   SUMMARY OF THE ARGUMENT

For the safe harbor provision of 35 U.S.C. § 121 to apply, the claims in the protected patent must have issued from a divisional application and must have been cancelled due to a restriction requirement.  If the claims in the subsequent patent did not issue from a "*divisional*" application, they are not eligible for protection under section 121.  The interpretation of statutes is clearly the province of the Court, and any expert testimony regarding the scope and meaning of section 121's safe harbor provision improperly encroaches on the Court's role.  In this case, the claims in the '141 patent issued from a *continuation* application, not a *divisional* application.  Hence, by the express language of the statute itself, the claims of the '141 patent are excluded from protection. Additionally, section 121 expressly requires that, in order to be eligible for the protection of the statute's safe harbor, the later-filed claims must have been cancelled (i.e., carved out of) the earlier application as a result of a restriction requirement.  Here, the record shows that the claims were not cancelled as a result of a restriction requirement; rather, they were voluntarily cancelled by the applicant without comment.  Hence, the cancelled claims and all other claims in the '141 patent are ineligible for section 121's safe harbor.

Because, as a matter of law, 35 U.S.C. § 121 does not apply to the asserted '141 patent claims, Prof. Janicke's testimony on this issue is inadmissible under FRE 702.  Prof. Janicke should be precluded from providing any testimony on those issues, which are outlined in his Supplemental Rebuttal Report.

III.    **FACTUAL BACKGROUND**

    A.    **The '141 Patent Did Not Issue from a Divisional Application**

The '141 patent issued from U.S. Patent Application No. 08/483,291 ("the '141 application"), which James Jervis filed on June 7, 1995 as a continuation of U.S. Patent Application No. 07/956,653.[1]  This is evidenced by the application transmittal sheet (as well as the preliminary amendment) filed by the applicant.  *See* File History of U.S. Patent No. 6,306,141 (the "'141 File History Excerpts"), Ex. 45 to the Lawson Decl., at M-AGA237015.  The '141 application remained a continuation application throughout prosecution and was *never* converted to a divisional application.  This is evidenced by the Cross Reference to Related Applications section of the '141 patent, which states, "This application is a **continuation** of application Ser. No. 07/956,653 filed on Oct. 2, 1992."  '141 patent, col. 1, lines 6-7, Ex. 46 to the Lawson Decl. (emphasis added).  This is also evidenced by the face of the patent itself in the Related Application Data.  *See id*. at p. 1.

The request to amend the application to convert from continuation to a divisional was never recorded by the PTO.  On July 14, 1995, the applicant filed a Supplemental Preliminary Amendment, requesting that the Examiner amend the application and label it a "divisional" rather than a continuation.  *See* '141 File History Excerpts, Ex. 45 to the Lawson Decl., at M-AGA237081.  The Examiner was not *required* to make the changes requested in the amendment, and he did not do so.  *See* Manual of Patent Examining Procedure (MPEP), 6th ed. (1995), at § 714, et seq[2]; Janicke

---

[1] Application Serial No. 07/956,653 is the '378 application.  *See* '378 patent, Exhibit __ to the __ Decl.

[2] The MPEP clearly states that Examiners are to follow the procedures outlined therein.  According to the Foreword of the MPEP:

> This Manual is published to provide Patent and Trademark Office patent examiners, applicants, attorneys, agents, and representatives of applicants with a reference work on the practices and procedures relative to the prosecution of patent applications before the Patent and Trademark Office.  It contains instructions to examiners, as well as other material in the nature of information and interpretation, and outlines the current procedures which the examiners are required or authorized to follow in appropriate cases in the normal examination of a patent application.

MPEP, "Foreword," 5th ed., Rev. 15 (1993).

1   Dep. Tr. at 235:20-23 (explaining, "I can't tell if it was entered or not entered.  The paper was filed,

2   but *the language printed on the patent at the end of the day still called it a continuation*") (emphasis

3   added).

**B.      The Examiner's Restriction Requirement During the Prosecution of the
          '378 Application Did Not Result in Cancellation of the Claims that Later
          Issued in the '141 Patent**

6        James Jervis filed U.S. Patent Application No. 07/956,653, which eventually issued as U.S.

7   Patent No. 5,597,378, on October 2, 1992.  *See* '378 File History, Ex. 47 to the Lawson Decl., at M-

8   AGA064938.  On February 22, 1993, the Examiner issued an Office Action, stating that the

9   application had been examined and that Claims 11-54 were pending in the application and subject to

10  a restriction or election requirement.  *See id.* at M-AGA065008.  The Examiner stated that the

11  application was directed to two separate inventions, and thus restriction was required under 35

12  U.S.C. § 121.  *See id.* at M-AGA065009.  The restriction required the applicant to elect to prosecute

13  either Claims 11-53, which were drawn to medical devices incorporating SIM alloy elements, or

14  Claim 54, which was drawn to a method for compressing together two mammalian bones.  *Id.*

15       In accordance with the requirements of the MPEP 5th ed., Rev. 15 §§ 806.04(a)-(i); 808, and

16  809, the Examiner also stated in the February 22 Office Action that the applicant was required to

17  elect one of the following four patentably distinct species of the shape memory alloy element:  an

18  IUD, a stent graft, a catheter, or a tracheal catheter, and, as MPEP § 808 requires, the Examiner

19  stated his reasons for the restriction requirement.  *See id.* at M-AGA065010.  The Examiner also

20  found that Claims 12, 19, and 37 are generic.  *See id.*; MPEP § 809.  Thus, Claim 37 was not subject

21  to a species restriction as a result of the February 22 Office Action.  *See* Deposition Transcript of

22  Paul M. Janicke ("Janicke Dep. Tr."), Ex. 48 to the Lawson Decl., at 216:17-24.  The Examiner

23  further noted that if one or more of the generic claims were allowed, the non-elected species might

24  be allowable.  MPEP § 809.02(a).   In response to the Examiner's February 22 Office Action, the

25  applicant elected to prosecute Claims 11-53 and provisionally elected to proceed with the generic

26  and species claims directed to a catheter, i.e., Claims 11-14, 17-21, 24-37, and 41-53.  *See* '378 file

27

28

4

1    history, Ex. 47 to the Lawson Decl., at M-AGA065021.[3]

2            In an Office Action dated June 13, 1993, the Examiner acknowledged the applicant's

3    election, stated that Claims 15, 16, 22, 23, 38-40, and 54 were withdrawn from consideration,

4    examined the claims, and rejected the pending claims, including Claim 37.  *See id.* at M-

5    AGA065031.  On November 24, 1993, the applicant responded by amending Claim 37 (among

6    others) and adding Claims 54-56.  *See id.* at M-AGA065040-065056.  Thus, it is undisputed that

7    Claim 37 was examined on the merits after the only restriction requirement issued by the Examiner.

8            The Examiner then issued an Office Action on March 7, 1994, listing on the summary sheet

9    that Claims 11-14, 17-21, 24-36, 41, 42, 44-53, and 55-57[4] were rejected and that Claims 15, 16, 22,

10   23, 37-40, 43, and 54 were withdrawn from consideration.  *See id.* at M-AGA065090.  Contrary to

11   the prior Office Action, this Office Action incorrectly noted that Claim 37 had been withdrawn from

12   consideration in the summary sheet.  As evidenced by the species restriction and subsequent

13   communications, Claim 37 was identified as a generic claim.  It is undisputed that neither the March

14   7, 1994 Office Action nor any other paper in the prosecution history of the '378 patent included a

15   requirement that Claim 37 be restricted from the case or withdrawn from consideration.  *See* Janicke

16   Dep. Tr., Exhibit 48 to the Lawson Decl., at 195:10-196:9.  Further evidence that the listing of Claim

17   37 on the summary sheet as being withdrawn was an error is the fact that the March 7, 1994 Office

18   Action does not include a letter explaining the Examiner's restriction requirement and requiring the

19   applicant's election of species as required by MPEP § 817.

20           On June 24, 1994, in response to the Examiner's March 7 Office Action, the applicant argued

21   for reconsideration and parroted the Examiner's recitation of the status of the claims, including the

22   incorrect notation that Claim 37 had been withdrawn.  *See* '378 file history, Ex. 47 to the Lawson

23   Decl., at M-AGA065105.  The applicant also added Claims 58-64 by amendment and indicated that

24   he wanted to withdraw Claim 25 from consideration.  *Id.*  Obviously, the applicant did not notice the

25   _____

26   [3] The applicant elected to prosecute the "catheter" species, arguing that division of the catheter
     species into both "catheter" and "tracheal catheter" species was not required because those claims
27   were not patentably distinct.  *See id.* at M-AGA065021.
     [4] The Examiner renumbered Claims 54-56 as Claims 55-57 because the applicant had filed a
28   preliminary amendment on January 5, 1993 that added Claim 54.  *See id.* at M-AGA065091.

error.  If he had, he would have brought the error to the Examiner's attention.  The applicant's parroting of the Examiner's mistake has *no* legal effect with regard to the status of Claim 37 because an applicant cannot withdraw a claim from consideration—it can only *cancel* a claim.

On June 30, 1994, the Examiner conducted a telephonic interview during which all claims were discussed.  *Id*. at M-AGA065095.  Thus, according to the written record of the prosecution (*see* 37 C.F.R. 1.2; 35 U.S.C. § 132), all claims were being examined.  As a result of the interview, the applicant submitted a supplemental amendment on July 28, 1994.  *Id*. at M-AGA065114.

On October 31, 1994, after examining *all* of the pending claims (including the withdrawn claims), the Examiner issued a final rejection of Claims 11-64, confirming that the non-elected species claims were no longer withdrawn pursuant to the restriction requirement.  *See id*. at M-AGA065124.  The body of the October 31 Office Action acknowledges and accepts the applicant's request to withdraw Claim 25 and states that Claim 25—and only Claim 25 (i.e., not Claim 37 or any of the other claims)—was withdrawn.  *See id*. at M-AGA065125.  By making the action *final*, the prosecution was closed, leaving the applicant with only one option:  appeal.  After a final rejection, the only amendments that will be entered are amendments that place the application in condition for allowance.  *See* 37 CFR 1.113; 37 CFR 1.116; MPEP 5th ed. Rev. 16, §§ 714.12 and 714.13.  Thus, as of the Final Rejection, *all* claims were back in the case, and the restriction requirement was withdrawn—i.e., the Examiner acted on all of the claims and rejected them.  If any of the claims were subject to a restriction requirement at the time of the Examiner's Final Rejection, the Examiner would have been required to so state according to MPEP 5th ed. Rev. 16, § 809.02(c).

The applicant's Amendment After Final dated March 9, 1995, attempted to put the case in a condition for allowance.  The applicant specifically acknowledged that after cancellation of Claim 54, all other claims were in the case.

> Claims 11-53 and 55-64 are in this application with claim 25 being withdrawn as being directed to a non-elected species of the invention.  All of the claims presented were rejected under 35 U.S.C. § 112 and/or for double patenting.

'378 File History at M-AGA065137.  In fact, the applicant specifically acknowledged that certain claims "were" (note the applicant's use of the past tense) withdrawn and requested allowance in

6

1   view of the terminal disclaimer.  *See id*. at M-AGA065138.

2          On April 26, 1995, the Examiner issued an Advisory Action, which also confirmed that

3   Claim 37 was pending in the application, and he specifically "objected" to Claim 37.  *See id*. at M-

4   AGA065152.  On June 7, 1995, in an Amendment After Final filed in response to the Advisory

5   Action, the applicant cancelled Claims 11-18 and made amendments in an effort to place all of the

6   remaining claims in the application in condition for allowance and avoid having to appeal.  *See id*.

7   at M-AGA065157.

8          On June 26, 1995, the Examiner participated in a telephonic interview with the applicant.

9   *See id*. at M-AGA065165.  The Examiner and the applicant discussed all of the claims and reached

10  agreement with regard to allowance.  There is no discussion in the written record of the interview of

11  any restriction requirement or requirement of cancellation of claims because of a restriction

12  requirement.  The record is silent as to the reasons the applicant elected to cancel the claims other

13  than to obtain allowance as the applicant did with regard to Claims 11-18.  *See id*. at M-

14  AGA065165-065170.  Because it is a statutory requirement that all transactions be conducted in

15  writing, *see* 35 U.S.C. § 131, (as well as a Patent Office rule, *see* 37 C.F.R. § 1.2) and there is no

16  written statement in the record that the claims were cancelled as a result a restriction requirement,

17  the claims were not cancelled as part of a restriction requirement.  If the applicant believed that the

18  claims were canceled as a result of a restriction requirement, the applicant should have responded to

19  the Examiner's amendment as applicant was invited to do in order to preserve the right to invoke the

20  safe harbor provisions of 35 U.S.C. § 121.  *See id*.  The applicant failed to do so, and as such, the

21  applicant gave up any claim to the protection of 35 U.S.C. § 121 by failing to create a written record

22  of the transaction.

23         In sum, the '378 File History clearly shows that no claims were "carved out" of the '378

24  Application.  Hence, the claims in the '141 patent are not protected by the safe harbor provisions of

25  35 U.S.C. § 121.

26

27

28

## IV.   APPLICABLE LEGAL PRINCIPLES

### A.   Federal Rules of Evidence

#### 1.   Federal Rule of Evidence 201

Federal Rule of Evidence (FRE) 201 explains that courts may take judicial notice of adjudicative facts.  According to Rule 201(b), "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  The Federal Circuit has held that courts may take judicial notice of the provisions of the Manual of Patent Examining Procedure, commonly known as the "MPEP."  The court explained in *Molins Plc v. Textron*, 48 F.3d 1172, 1180 (Fed. Cir. 1995), "The MPEP is commonly relied upon as a guide to patent attorneys and patent examiners on procedural matters. While the MPEP does not have the force of law, it is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith."  (Internal quotations and citations omitted).

#### 2.   Federal Rule of Evidence 402

FRE 402 unequivocally safeguards the Court from having to consider evidence immaterial to any given proceeding:  "Evidence which is not relevant is not admissible."

#### 3.   Federal Rule of Evidence 403

FRE 403 authorizes courts to conduct a balancing test with respect to relevant evidence. According to FRE 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

#### 4.   Federal Rule of Evidence 702

FRE 702 charges the court with excluding unreliable, unsubstantiated expert testimony. According to Rule 702:

> If scientific, technical, or other specialized knowledge **will assist the trier of fact to understand the evidence or to determine a fact in issue**, a witness qualified as an

expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

(Emphasis added).  Testimony that does not concern a disputed fact in issue but instead invades the province of the Court by instructing the jury on what the law is must be excluded from trial.  *See, e.g.*, *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 256 (W.D.N.Y. 2000) (explaining that defendant's expert's proposed testimony regarding the meaning of the "effective filing date" under section 120 and relevant case law and the meaning of "new matter" as it relates to the effective filing date was improper and therefore must be excluded because the testimony amounted to instructing the jury on the law, which is the role of the judge, not the witnesses).  Prof. Janicke's proffered testimony regarding the scope of section 121's safe harbor provision expresses an improper legal conclusion, does not relate to a fact issue to be decided by the trier of fact and will not assist the trier of fact.  Thus, there is no need for Professor Janicke's testimony, and it should be precluded.

**B.**     **"Safe Harbor" for Divisional Applications under Section 121 of the Patent Act**

Section 121 of the Patent Act governs divisional applications and explains, "[i]f two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions."  35 U.S.C. § 121.  The statute also provides a limited "safe harbor" for patents that issue from divisional applications filed in response to a requirement for restriction:

A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as a result of such a requirement, shall not be used as a reference either in the Patent and Trademark Office or in the courts against a ***divisional application*** or against the original application or any patent issued on either of them, if the ***divisional application*** is filed before the issuance of the patent on the other application.

*Id.* (emphasis added).

**1.**     **A "Safe Harbor" Patent Must Issue from a *Divisional* Application**

The Federal Circuit recently addressed the scope of section 121's safe harbor, and the court clearly held that the safe harbor is strictly limited to divisional applications and does not apply to

9

1    continuation applications or continuation-in-part (CIP) applications.  In *Pfizer, Inc. v. Teva Pharms.*

2    *USA, Inc.*, 518 F.3d 1353, 1358 (Fed. Cir. 2008), Teva contended that the claims of Pfizer's '068

3    patent were invalid for obviousness-type double patenting ("OTDP") over the '165 patent.   Teva

4    argued that "section 121 applies exclusively to divisional applications, and that because the '068

5    patent issued on a CIP rather than on a divisional application, it does not fall within the terms of the

6    statute."  *Id*. at 1359.  The court agreed with Teva and characterized Pfizer's unsuccessful argument

7    as follows:

8         Pfizer argues that the terms "divisional" and "continuation-in-part" are merely
         labels used for administrative convenience, and that accordingly, although the
9         '068 is termed a CIP, it is in effect a divisional for purposes of section 121.  In
         other words, ***Pfizer contends that the term "divisional application" as it is used***
10        ***in section 121 refers broadly to any type of continuing application filed as a***
         ***result of restriction, regardless of whether it is labeled by the PTO, for***
11        ***administrative purposes, as a divisional, a continuation, or a CIP.  We disagree***.

12   *Id*. at 1360 (emphasis added).  The court explained that section 121 refers explicitly to "divisional"

13
     applications, and that the "safe harbor" in the third sentence of section 121, "by its literal terms,
14
     protects only 'divisional application[s]' (or the original application) and patents issued on such
15
     applications."  *Id*.
16
            The court thoroughly examined the legislative history of section 121 and unequivocally
17
     concluded, "[t]here is no suggestion . . . in the legislative history of section 121 that the safe-harbor
18
     provision was, or needed to be, directed at anything but ***divisional applications***.  The commentary
19
     and materials published since section 121's enactment similarly contain no suggestion that section
20
     121 was meant to cover any applications other than ***divisionals***."  *Id*. at 1361 (emphasis added).[5]
21
     The court concluded that "the protection afforded by section 121 to applications (or patents issued
22
     therefrom) filed as a result of a restriction requirement is limited to ***divisional applications***."  *Id*. at
23
     1362 (emphasis added).  Thus, it is abundantly clear that section 121's safe harbor only applies to
24
     patents that issued from divisional applications.
25

26

27   _____
     [5] Although the patent at issue in *Pfizer* issued from a CIP rather than a continuation application, the
28   Federal Circuit clearly held that section 121's safe harbor does not apply to patents that issue from
     continuation applications, such as the '141 patent.  *See id.*

                                    10

2.      **The Claims in the Later-Filed Divisional Application Must Have Been Subject to a Restriction Requirement in the Parent Application and Not Elected**

Additionally, section 121 applies only to claims in a later-filed divisional application that, as reflected in the written record, were subject to a restriction requirement in an earlier application and canceled as a result of the restriction requirement.  In *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1378 (Fed. Cir. 2003), the Federal Circuit addressed the district court's finding that there was no restriction requirement that enabled section 121 to act as a shield against GSK's '720 patent, which Geneva contended was invalid for OTDP.  The court explained that GSK faced two obstacles to obtaining protection under section 121:  first, the original application did not contain the same "method of use" claims that later appeared in the issued '720 patent, and second, the examiner "did not issue a formal restriction requirement relating to the claims at issue in any document in the record."  *Id.*  The court rejected GSK's argument that a summary of an interview held in 1979 constitutes a restriction requirement that satisfies the strict requirements of 35 U.S.C. § 121.  *Id.* at 1380-81.  The summary of the interview provided no clear line of demarcation that suggested the claims were subject to a restriction requirement, *see id.* at 1381, and the term "restriction" did not appear in the July 9, 1979 response that the applicants filed in response to the interview.  *Id.*  The court explained, "[t]he quoted passage does not state that the examiner required restriction between those two sets of claims.  Moreover, the passage does not state that any claims are patentably distinct."  *Id.*  Ultimately, the court concluded that section 121's safe harbor applies only to restriction requirements that are documented in clarity and detail by the PTO and that, under the circumstances, the alleged oral restriction requirement at the interview was not sufficiently memorialized.  *Id.* at 1382.

V.      **ARGUMENT**

Medtronic's offered expert in PTO practices and procedures, Prof. Janicke, opines that the claims of the '141 patent are not invalid for OTDP.  Prof. Janicke's opinion is based on two incorrect conclusions:  that the '141 application was a divisional application and that the claims that issued in the '141 patent were subject to a restriction requirement and therefore qualify for the protection of

11

1   the "safe harbor" provision in 35 U.S.C. § 121.  *See generally* Janicke Supplemental Report, Ex. 44

2   to the Lawson Decl.  Prof. Janicke ignores what actually happened during prosecution and instead

3   speculates about what the Examiner may have intended or meant to do.  His opinions are

4   unsubstantiated and should be excluded from trial.  *See, e.g., Applied Materials,* 1995 U.S. Dist.

5   LEXIS 22335, at *8-*11 (granting plaintiff's motion to exclude the testimony of defendant's legal

6   expert, which was irrelevant and speculative and beyond the scope of Patent Office procedure).

7        As explained herein, Prof. Janicke's opinions are inadmissible under Rule 702 for at least

8   two reasons.  First, the '141 application was filed as a continuation application, not a divisional

9   application, and section 121's safe harbor therefore is inapplicable.[6]  Second, the predicate for filing

10  a divisional application under section 121 is that all of the claims in the second patent application

11  must have been presented in the earlier application and must have been the subject of an express

12  restriction requirement appearing in the record and then removed from the application.  Neither is

13  the case here.  The claims of the '141 patent are derived from Claim 37 of the '378 Application,[7] and

14  Claim 37 never was restricted out of the '378 Application.  Thus, section 121's "safe harbor" is

15  inapplicable, and the Court should preclude Medtronic from eliciting testimony at trial regarding the

16  opinions expressed in Prof. Janicke's May 11 report.

17       Additionally, any other evidence that Medtronic hopes to submit on the issue of whether

18  section 121's safe harbor provision applies, beyond the evidence of record in the file histories of the

19  '378 and '141 patents, should be excluded as irrelevant under Rule 402.  As will be discussed below,

20  this issue is a matter of law for the Court to decide, and governing Federal Circuit case law is clear

21  that information contained in pertinent file histories is sufficient and dispositive.

22   **A.    Section 121's "Safe Harbor" Applies Only to Divisional Applications,**
     **and Prof. Janicke's Opinions to the Contrary Should Be Excluded**
23   **under Rules 702 and 403**

24       As an initial matter, any expert opinions (including Prof. Janicke's opinions) regarding the

25  scope and applicability of section 121's safe harbor provision express improper legal conclusions

26  _____

27  [6] During his deposition, Prof. Janicke admitted that merely labeling an application as a "divisional"
    application does not invoke the safe harbor provision of section 121.  *See* Janicke Dep. Tr., Ex. 48 to
    the Lawson Decl., at 197:24-198:4.

28

AGA'S MOTION *IN LIMINE* RE: "SAFE HARBOR" OF
                                         SECTION 121
                                         CASE NO. 3:07-cv-00567 MMC (EMC)

1   and thus are inadmissible under Rule 702.  *See Nationwide Transp. Fin. v. Cass Info. Sys.,* 523 F.3d

2   1051, 1058 (9th Cir. 2008) (holding that "an expert witness cannot give an opinion as to her legal

3   conclusion, *i.e.*, an opinion on an ultimate issue of law.  Similarly, instructing the jury as to the

4   applicable law is the distinct and exclusive province of the court.") (quoting *Hangarter v. Provident*

5   *Life & Accident Ins. Co*., 373 F.3d 998, 1016 (9th Cir. 2004)); *see also Bausch & Lomb, Inc. v.*

6   *Alcon Labs., Inc*., 79 F. Supp. 2d 252, 256 (W.D.N.Y. 2000).  The danger of unfair prejudice that

7   such improper testimony poses far outweighs its minimal probative value, as the fact-finder may be

8   tempted to defer to the so-called "expert's" opinions, which, in the instant case, are unfounded.  *See*

9   Rule 403.

10         Furthermore, Prof. Janicke's opinion that the '141 patent is the result of a "divisional"

11   application that matured into the '378 patent is belied by the face of the '141 patent itself.  The

12   "Related U.S. Application Data" on the face of the '141 patent and the "Cross-Reference to Related

13   Applications" in Col. 1 expressly state that the '141 application was filed as a **continuation**

14   application—not a divisional.  *See* U.S. Patent No. 6,306,141 ("the '141 patent"), Ex. 46 to the

15   Lawson Decl., at  p. 1 and col. 1.  Continuation applications are **not** eligible for the protection

16   afforded by section 121's "safe harbor" provision.  *See Pfizer*, 518 F.3d at 1362 (explaining that "the

17   protection afforded by section 121 to applications (or patents issued therefrom) filed as a result of a

18   restriction requirement is limited to divisional applications").

19         During prosecution, the applicant attempted to amend the specification to convert the

20   application to a divisional application and incorrectly stated that the claims being added were

21   cancelled from the '378 application due to a restriction requirement.  *See* '141 File History Excerpts,

22   Ex. 45 to the Lawson Decl., at M-AGA237081, M-AGA 237083.  The PTO correctly recognized

23   that the claims were not restricted out of the '378 application, and thus the PTO never converted the

24   application into a divisional.  Although Prof. Janicke opined in his supplemental report that the '378

25   application became a divisional application after the applicant filed its request and suggests that the

26   failure to enter the amendment was a clerical error (*see* Janicke Supplemental Report, Ex. 44 to the

27   Lawson Decl., at ¶ 19), he admitted during his deposition that he did not have enough experience in

28   the area to know whether the examiner instructs the issue branch regarding entry of amendments.

AGA'S MOTION *IN LIMINE* RE: "SAFE HARBOR" OF
                                                             SECTION 121
                                                   CASE NO. 3:07-cv-00567 MMC (EMC)

1    Janicke Dep. Tr., Ex. 48 to the Lawson Decl., at 287:7-14.  Moreover, if the applicant truly believed

2    it made an error, it should have filed a Certificate of Correction when the patent issued.  It did not do

3    so because it knew that the '141 Application was not truly a divisional application.

4         Whether or not a patent application is a divisional is a question of law and must be reflected

5    in the record.  It cannot be inferred, but this is exactly what Prof. Janicke attempts to do in his May

6    11 report.  "[Section] 121 only applies to a restriction requirement that is documented by the PTO in

7    enough clarity and detail to show consonance." *Geneva Pharmaceuticals*, 349 F.3d at 1382.  "[T]he

8    earlier application must contain formally entered claims that are restricted and removed, and that

9    claims to the second invention reappear in a separate divisional application after the restriction.  The

10   text of section 121 does not suggest that the original application merely needs to provide some

11   support for claims that are first entered formally in the later divisional application." *Id.* at 1379.

12   There is no evidence in the record to support Prof. Janicke's opinion that the '141 patent issued from

13   a divisional application.  Prof. Janicke's opinion is unfounded, undocumented, and contrary to law,

14   and thus it should be excluded from trial.

15        **B.     Prof. Janicke Admitted During His Deposition that No Claims of the '378
               Application Were Canceled Due to a Restriction Requirement, and Any
16             Opinions to the Contrary Are Unfounded and Should Be Excluded under Rule
               702**
17

18        Although Prof. Janicke opines to the contrary in his supplemental report, Claim 37 of the

19   '378 application never was the subject of a restriction requirement.  The Examiner issued a

20   restriction requirement during the prosecution of the '378 Application, but the restriction

21   requirement applied to only some of the claims:

22        This ['378 patent] application contains claims directed to the following
          patentably distinct species of the claimed inventions: where the shape memory alloy
23        is an IUD, a stent graft, a blood filter, a catheter and a tracheal catheter.
          Applicant is required under 35 U.S.C. § 121 to elect a single disclosed species
24        for prosecution on the merits to which the claims shall be restricted if no generic
          claim is finally held to be allowable. **Currently, claims 12, 19 and 37 are generic.**
25
26   '378 File History, Ex. 47 to the Lawson Decl., at M-AGA065008 (emphasis added).  This is what is

27   called a "genus/species" restriction.  The Examiner found that four groups of dependent claims

28   belonged to four different species—that is, the four groups were patentably distinct from each other.

The Examiner stated that the species claims would be allowed only if one of the generic claims (i.e., one of the independent claims) was allowed.  This means that the Examiner will examine all three independent claims, but will examine only one set of the dependent claims—i.e., the set corresponding to the species that the applicant elects.  Thus, generic Claims 12, 19, and 37 never were restricted out of the '378 application.

Nonetheless, Prof. Janicke maintains that Claim 37 was restricted and withdrawn.  As is evident from the very words of the examiner's restriction, **Claim 37 was never the subject of a restriction requirement.**  Instead, the prosecution history clearly shows that the Examiner proceeded to examine Claim 37.  *See, e.g.*, '378 File History, Ex. 47 to the Lawson Decl., at M-AGA065021 (applicant stating that Claim 37 is to be examined); M-AGA065031 (Office Action rejecting Claim 37); and M-AGA065046 (applicant amending Claim 37).  Later in the prosecution, the applicant **chose** to cancel Claim 37,[8] but the applicant's cancellation was **not** in response to a restriction requirement.  *See id*. at M-AGA065090-94, M -AGA065105, M-AGA065165, M-AGA065168.  The prosecution history of the '378 patent application is entirely devoid of any evidence that Claim 37 was ever the subject of a restriction requirement.

Perhaps most importantly, Prof. Janicke **admitted** during his deposition that (1) the Examiner's February 23, 1993 Office Action provides no reasons or examples to support a withdrawal of Claim 37 in the March 7, 1994 Office Action, and (2) that the sixth edition of the Manual of Patent Examining Procedure (MPEP), which was in force during the prosecution of the '378 application, imposed a heightened requirement on examiners to explain the basis for any restriction requirement.  *See* Janicke Dep. Tr., Ex. 48 to the Lawson Decl., at 195:10-196:9.  Moreover, to the extent Prof. Janicke offers an opinion that the Examiner may have discussed the basis for the supposed restriction of Claim 37 with the applicant during a telephone interview, this opinion is undermined by Patent Office regulations requiring that all business with the Patent Office must be in writing.  *See* 35 U.S.C. § 132, 37 C.F.R. 1.2; *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983) (citing 37 C.F.R. 1.2 and recognizing that "all business with

---

[8] In fact, if the applicant had not voluntarily withdrawn Claim 37 from the '378 application, Claim 37 also would have been the subject of the terminal disclaimer filed in that application.

the PTO is to be transacted in writing and its actions must be based exclusively on the written record"). Thus, contrary to the opinions Prof. Janicke expresses in his May 11 report, Claim 37 could not have been included in a divisional application because it was never subject to restriction. *See, e.g.*, *Geneva Pharmaceuticals*, 349 F.3d at 1373. Prof. Janicke's opinion that the Examiner imposed a restriction requirement for Claim 37 is completely contrary to both the law and the file history, and therefore it should be excluded from trial.

Moreover, none of the claims that were originally subject to the Examiner's May 29, 1993 restriction requirement (*see* '378 File History, Ex. 47 to the Lawson Decl., at M-AGA065008) were cancelled as a result of the restriction requirement. Although the applicant acknowledged in the November 24, 1993 Response to the Examiner's restriction requirement that Claims 15, 16, 22, 23, and 38-40 were withdrawn (*see id.* at M-AGA065049), Claims 15 and 16 were cancelled in order to put the application in a condition for allowance and obviate the Examiner's rejection of those claims based on their "$A_{90}$" limitation. *See* M-AGA065157. Ultimately, Claims 22 and 23 were allowed, even though they previously were restricted, and Claims 38-40 were examined and rejected. *See id.* at M-AGA065174.

In conclusion, Claim 37 of the '378 application was a generic claim and never was restricted and removed from the application. Claims 22 and 23 of the '378 application, though previously restricted, were allowed, and Claims 38-40 were examined and rejected. Under these circumstances, an applicant is not entitled to file a divisional application, and the safe harbor of 35 U.S.C. § 121 does not apply. *See generally, Geneva Pharmaceuticals*, 349 F.3d at 1373. Not only is this outcome clearly required by law, but public policy supports it as well—the alternative would extend Medtronic's monopoly for the alleged invention from 20 years (the expiration of the '378 patent in 2004) to 34 years (until the current expiration of the '141 patent in 2018).

## C.    Evidence Beyond the Pertinent File Histories Is Inadmissible Pursuant to Rule 402 or Rules 702 and 403

As stated above, the Federal Circuit has articulated unambiguously the standard that governs the applicability of section 121's safe harbor provision: "[Section] 121 only applies to a restriction requirement that is documented by the PTO in enough clarity and detail to show consonance."

16

*Geneva Pharmaceuticals*, 349 F.3d at 1382. In this instance, the only sources of PTO documentation relevant to the inquiry are found within the prosecution histories of the '378 and '141 patents. Any evidence beyond what is contained in those files is therefore irrelevant, and should be excluded pursuant to Rule 402.

Moreover, any expert testimony regarding the Examiner's state of mind or intent (including the opinions Prof. Janicke expresses in his Supplemental Rebuttal Expert Report) is inadmissible because it is speculative and is not based on any particularized expertise. Prof. Janicke's opinions regarding the Examiner's state of mind or intent are inadmissible under Rule 702 because they are not—and cannot be—based on his knowledge, skill, experience, training, or education. *See* FRE 702. Medtronic has offered Prof. Janicke as an expert in PTO practices and procedures, but Prof. Janicke is not an expert in a PTO Examiner's thoughts. His opinions regarding what the Examiner may have been thinking during the interview with the applicant are, therefore, inadmissible. Additionally, to the extent that the Court finds that any evidence outside of the prosecution histories of the '378 and '141 patents is relevant, the danger of confusion of the issues and misleading the jury substantially outweigh the minimal probative value that such evidence may have. *See* FRE 403. Only the prosecution histories of the '378 and '141 patents in combination with the clear requirements of section 121 are necessary to inform the jury of the issues at hand, and any testimony outside of the written record of business conducted with the PTO (and, potentially, contrary to that written record) is likely to confuse the issues and mislead the jury.

## VI.   <u>CONCLUSION</u>

For the reasons stated above, AGA requests that the Court enter an Order excluding from trial any testimony that expresses improper legal conclusions that invade the province of the Court by instructing the jury, including, but not limited to, the proper interpretation and scope of 35 U.S.C. § 121. AGA further requests that the Court enter an Order excluding from trial the testimony by Prof. Janicke (or others) that (1) the '141 patent issued from a divisional application, including the opinions expressed in ¶¶ 14-37 of Prof. Janicke's supplemental report, and (2) Claim 37 of the '378 application was subject to a restriction requirement, including the opinions expressed in ¶¶ 10-13 of Prof. Janicke's supplemental report. AGA also requests that the Court take judicial notice of the

1  following publications of the MPEP:  MPEP 5th ed., Rev. 15, which took effect in August 1993;

2  MPEP 5th ed., Rev. 16, which took effect in March 1994 and replaced Rev. 15; and MPEP 6th ed.

3  Rev. 1, which took effect in September 1995, replaced MPEP 5th ed. Rev. 16, and remained in effect

4  until July 1996, when it was replaced by MPEP 6th ed., Rev. 2.

5

6          Respectfully submitted this 9th day of June, 2009.

7

8

9                                         _____/s/ Michael S. Connor_____
                                          Brian F. McMahon (State Bar No. 235373)
10                                        Michael S. Connor (admitted *pro hac vice*)
                                          Lance A. Lawson (admitted *pro hac vice*)
11                                        ALSTON & BIRD LLP
                                          101 South Tryon Street, Suite 4000
12                                        Charlotte, North Carolina  28280-4000
                                          Telephone:     (704) 444-1000
13                                        Facsimile:     (704) 444-1111

14                                        Steven D. Hemminger (State Bar No. 110665)
                                          ALSTON & BIRD LLP
15                                        Two Palo Alto Square
                                          3000 El Camino Real, Suite 400
16                                        Palo Alto, California  94306-2112
                                          Telephone:     (650) 838-2000
17                                        Facsimile:     (650) 838-2001

18                                        Marissa R. Ducca (admitted *pro hac vice*)
                                          ALSTON & BIRD LLP
19                                        950 F Street, N.W.
                                          Washington, DC  20004-1404
20                                        Telephone:     (202) 756-3369
                                          Facsimile:     (202) 654-4982

21                                        Attorneys for Defendant
                                          AGA MEDICAL CORPORATION
22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **AGA'S NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE CERTAIN OPINIONS INCLUDED IN PROF. JANICKE'S MAY 11TH SUPPLEMENTAL EXPERT REPORT** was served upon the following parties on June 9, 2009 by electronic delivery, addressed as follows:

| | |
|---|---|
| James J. Elacqua, Esq. | james.elacqua@dechert.com |
| Noemi C. Espinosa, Esq. | nicky.espinosa@dechert.com |
| Michelle W. Yang, Esq. | michelle.yang@dechert.com |
| Ellen J. Wang, Esq. | ellen.wang@dechert.com |
| Hieu H. Phan, Esq. | hieu.phan@dechert.com |
| Andrew N. Thomases | andrew.thomases@dechert.com |
| Joshua C. Walsh-Benson | joshua.walsh-benson@dechert.com |
| Karen D. McDaniel | kmcdaniel@merchantgould.com |

By /s/    Michael S. Connor
        Michael S. Connor

Attorney for Defendant
AGA MEDICAL CORPORATION

AGA'S MOTION *IN LIMINE* RE: "SAFE HARBOR" OF
SECTION 121
CASE NO. 3:07-cv-00567 MMC (EMC)