James J. Elacqua (CSB No. 187897)
james.elacqua@dechert.com
Noemi C. Espinosa (CSB No. 116753)
nicky.espinosa@dechert.com
Andrew N. Thomases (CSB No. 177339)
andrew.thomases@dechert.com
Michelle W. Yang (CSB No. 215199)
michelle.yang@dechert.com
Hieu H. Phan (CSB No. 218216)
hieu.phan@dechert.com
Joshua C. Walsh-Benson (CSB No. 228983)
joshua.walsh-benson@dechert.com
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, California 94040-1499
Telephone: (650) 813-4800
Facsimile: (650) 813-4848

Attorneys for Plaintiffs
MEDTRONIC, INC., MEDTRONIC USA, INC.,
AND MEDTRONIC VASCULAR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEDTRONIC, INC., a Minnesota corporation, MEDTRONIC USA, INC., a Minnesota corporation, and MEDTRONIC VASCULAR, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AGA MEDICAL CORPORATION, a Minnesota corporation,<br><br>Defendant. | Case No. C07-00567 MMC<br><br>**MEDTRONIC'S OPPOSITION TO AGA'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAUL M. JANICKE REGARDING INEQUITABLE CONDUCT (# 3)**<br><br>Date: June 23, 2009<br>Time: 3:00 p.m.<br>Dept.: Courtroom 7, 19th Floor<br>Judge: Honorable Maxine M. Chesney |

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO
EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE:
INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

## I. INTRODUCTION

AGA's Motion *In Limine* To Exclude The Testimony Of Paul M. Janicke On Inequitable Conduct should be denied because AGA has not shown that Professor Janicke is unqualified to testify as an expert on issues relevant to determining inequitable conduct and AGA has failed to establish that Professor Janicke's testimony would be irrelevant, prejudicial, or cause confusion, undue delay or waste of time.

First, inequitable conduct is a judicially-created doctrine asserted as a defense in litigation. Because it is a legal issue, it is ultimately decided by courts. Thus, neither Professor Janicke nor anyone is an "expert" on inequitable conduct. Rather, a person may be an expert on Patent Office rules and procedure, which aid in understanding whether inequitable conduct has been committed. Professor Janicke is an expert on customs and usages in the procurement of U.S. patents, the rules regarding the duty of candor before the PTO, and the usual practices of U.S. patent attorneys. His areas of expertise are relevant in determining whether a patentee committed inequitable conduct, but Professor Janicke is not and has never claimed to be an expert on inequitable conduct.

Second, contrary to AGA's claim, Professor Janicke *is* qualified as an expert to testify on the issues considered in determining inequitable conduct, such as whether information is material to patentability. Among other things, Professor Janicke has (1) been a registered patent attorney for over 40 years, (2) been a patent law professor for 17 years, (3) written numerous publications in the field of patent law, (4) prosecuted nearly 50 patents, (5) acted as an expert in 13 patent litigations, and (6) acted as a Special Master for many judges, including those in this district, in litigations where he analyzed PTO file histories.

Third, AGA takes Professor Janicke's statement that he does not understand what constitutes a *prima facie* case of unpatentability out of context. Professor Janicke explained that he does not know of any real-life examples of claims that are *prima facie* unpatentable. Professor Janicke made this statement because he understands that inequitable conduct is an issue decide by courts, not the PTO. The language regarding *prima facie* unpatentability appears only in 37 C.F.R. § 1.56 ("Rule 56"), which is a codification of the PTO rules and regulations. Thus, Rule

Dechert LLP
Attorneys At Law
Silicon Valley

- 1 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE: INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

1   56 is a PTO rule, yet inequitable conduct is determined by courts not the PTO. Courts are not

2   required to apply Rule 56 to determine inequitable conduct. In fact, even after Rule 56 was

3   amended in 1992 to add the language regarding *prima facie* unpatentability, the Federal Circuit

4   continued to apply a "reasonable examiner" standard and has stated that other standards also may

5   be applied in determining materiality. Thus, it is not surprising that the definition of "*prima facie*

6   unpatentability" and the bounds of that definition remain undefined. Accordingly, understanding

7   when a case of *prima facie* unpatentability is established is not necessary to determine materiality.

8   Moreover, with respect to the original Jervis '852 application, it is irrelevant whether Professor

9   Janicke understands when a claim is *prima facie* unpatentable because the '852 application was

10  prosecuted before the 1992 amendment to Rule 56 and therefore the amended rule does not apply

11  to that application.

12      Fifth, Professor Janicke has not opined on intent as AGA claims. Rather, he has opined

13  on the usual practices of patent attorneys in procuring a U.S. patent, and his opinions regarding

14  these practices serve to inform whether the evidence of record establishes intent.

15      Fourth, contrary to AGA's allegations, Professor Janicke has not opined on the law of

16  inequitable conduct; he has only opined on PTO rules and procedures. Professor Janicke has

17  clearly stated that inequitable conduct is a question of law and he does not intend to opine

18  regarding conclusions of law at trial.

19      Finally, despite all of AGA's false arguments about Professor Janicke's lack of expertise,

20  AGA has failed to show how his testimony would be irrelevant, prejudicial, or cause confusion,

21  undue delay, or waste of time. Furthermore, because inequitable conduct is an issue tried to the

22  court, there is no danger of jury confusion. Moreover, Professor Janicke is a rebuttal witness

23  whose testimony is contingent on the testimony of Lawrence Goffney, AGA's expert on issues

24  concerning inequitable conduct. After the Court hears Mr. Goffney's testimony, it can decide

25  whether Professor Janicke's testimony is necessary or relevant and can exclude his testimony at

26  that time. The Court need not make this decision now.

27      Because Professor Janicke *is* qualified as an expert to testify regarding issues considered

28  in determining inequitable conduct and AGA has failed to demonstrate that his testimony would

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO
EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE:
INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

be irrelevant, prejudicial, or cause confusion, undue delay or waste of time, AGA's motion *in limine* should be denied.

## II. ARGUMENT

### A. Professor Janicke's Testimony Should Not Be Excluded Because He Is Qualified To Testify Regarding Issues Considered In Determining Inequitable Conduct

AGA argues in its motion that Professor Janicke "does not qualify as an expert on inequitable conduct or issues related thereto … [because] he lacks the necessary knowledge and understanding of inequitable conduct and the underlying rules to provide this Court with expert testimony." Motion at 5:13-16. As an initial matter, inequitable conduct is a judicially-created doctrine. *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006) ("The inequitable conduct doctrine, a judicially created doctrine, was borne out of a series of Supreme Court cases in which the Court refused to enforce patents whereby the patentees had engaged in fraud in order to procure those patents."). As such, it is a legal issue decided by the courts and no one is qualified to act as an "expert" on inequitable conduct. Rather, a person may be an expert on Patent Office rules and procedure, which aid in understanding whether inequitable conduct has been committed.

#### 1. Professor Janicke Is An Expert On Rules And Practice Before The Patent Office.

Professor Janicke is an expert on customs and usages in the procurement of U.S. patents, the rules regarding the duty of candor before the Patent Office, and the usual practices of U.S. patent attorneys. Declaration of Lance A. Lawson in Support of AGA's Motions File on June 9, 2009 ("Lawson Decl."), Ex. 22, ¶ 3. His expertise in these areas is established by his credentials, which include the following:

- Two years as a law clerk under Judge Lane at the Court of Customs and Patent Appeals (predecessor to the modern Court of Appeals for the Federal Circuit);
- Over 40 years as a registered patent attorney, 21 of those years in private practice where he prosecuted and/or supervised the prosecution of approximately 50 patents;

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE: INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

- Distinguished Intellectual Property Law professor at the University of Houston Law Center for the past 17 years, where he taught the school's Patent Bar Review course for 4 years;
- Testified as expert in 13 patent cases;
- Appointed Special Master in five separate patent cases – twice in the Northern District of California (*Chiron Corp. v. F. Hoffman-LaRoche*, Civil Case No. 98-00315 (Wilken J.) and *Ixys Corp. v. Inter'nl Rectifier Corp.*, Civil Case No. 02-00313 (Alsup. J.)) and three times outside the district (*Nor. Amer. Container, Inc. v. Plastipak Packaging, Inc.*, Civil Case No. 99-01749 (N.D. Tex. Kaplan. J.), *Chrimar Sys., Inc. v. Cisco Sys., Inc.*, Civil Case No. 01-71113 (E.D. Mich. Cohn. J.), and *Hochstein v. Microsoft Corp.*, Civil Case No. 04-73071 (E.D. Mich. Borman. J.));
- Member of the Advisory Committee on Model Patent Jury Instructions for the Northern District of California (2001)

Ex. 5[1] to the Declaration of Joshua C. Walsh-Benson ("Walsh-Benson Decl.") at Lawson Decl., Ex. 20 at 7:13-22.  Professor Janicke has more than 40 years of extensive experience in patent law that qualifies him to testify regarding rules and practice before the PTO.  His relevant expertise in this area can aid the Court in determining whether inequitable conduct has been committed.

### 2. AGA's Argument Regarding Professor Janicke's Lack Of Expertise Is Based On Misleading Statements

AGA's argument that Professor Janicke is not qualified to testify regarding issues related to inequitable conduct is unfounded and based on misleading statements.  AGA claims that Professor Janicke does not know whether he is an expert on inequitable conduct.  AGA cites to certain portions of Professor Janicke's deposition transcript, but fails to cite to other portions of his testimony where he explains that he believes he knows as much about the subject as anyone:

> Q. Do you consider yourself an expert in inequitable conduct?
> A. I think I know as much about that law subject as anybody else.

---

[1] All further exhibit references shall be to the Walsh-Benson Decl., unless otherwise stated.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE: INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

Expert, I don't know.

Lawson Decl., Ex. 20 at 14:11-14. Professor Janicke also explains in un-cited portions of his testimony that Patent Office procedure does not deal with inequitable conduct, which is a question of law, and therefore he does not intend to opine on inequitable conduct:

> Q. Does patent office procedure deal with inequitable conduct?
>
> A. It does not. Inequitable conduct is a litigation defense and is not mentioned in the patent office rules.
>
> Q. Do you plan on opining on inequitable conduct?
>
> A. If you mean bottom-line conclusions, I think that is a conclusion of law for the judge. So I have no intention of opining…

*Id*. at 14:15-24.

AGA further makes the spurious claim that Professor Janicke's experience in prosecuting patents in front of the Patent Office is "scarce at best", Motion at 5:20, while ignoring his testimony that he has prosecuted and/or supervised 50 patent applications. Lawson Decl., Ex. 20 at 7:13-22. Moreover, AGA's allegation that Professor Janicke's marking of 24 paragraphs of Mr. Goffney's report with an "IK" is somehow an admission that he has insufficient knowledge and understanding of areas related to inequitable is disingenuous, as the majority of those paragraphs concern the background and organization of the Patent Office and are irrelevant to issues underlying a determination of inequitable conduct. *See generally*, Lawson Decl. Ex. 21.

### 3. Professor Janicke's Understanding Of The Materiality Prong Of Inequitable Conduct Is Based On The "Reasonable Examiner" Standard Applied By The Federal Circuit

AGA's primary argument regarding Professor Janicke's lack of expertise concerns his statement that he does not understand when a *prima facie* case of unpatentability is established under Rule 56. AGA argues that Professor Janicke cannot render a complete opinion on inequitable conduct without knowledge and understanding of a *prima case* of unpatentability. Motion at 7:15-17. AGA, however, takes Professor Janicke's statement that he does not understand a *prima facie* case of unpatentability out of context. Professor Janicke explained that he does not know of any real-life examples of claims that are *prima facie* unpatentable, and that this lack of real-life applicability has made it difficult for practitioners to understand when a

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE: INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

1    *prima facie* case of patentability is established under the amended Rule 56.

2        Q.   And what don't you understand about a prima facie case?

3        MS. YANG: Objection, vague.

4        A.   I can't explain what I don't understand except to say that either through some failing of mine or -- or something, I simply don't know in real-life practice when a claim is prima facie unpatentable in terms of actual examples. This has been a problem in the profession since the rule was promulgated, and that's all I can tell you.

7    Lawson Decl., Ex. 20 at 6:11-18.

8        Professor Janicke made the statement that he does not understand what constitutes a *prima facie* case of unpatentability because he knows that Rule 56 is a PTO rule and courts are not required to apply it in determining materiality. In fact, the Federal Circuit has continued to apply a "reasonable examiner" standard to determine materiality, even after Rule 56 was amended. *Digital Control Inc.*, 437 F.3d at 1316, quoting, *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003) ("For many years, we have held 'that materiality for purposes of an inequitable conduct determination require[s] a showing that 'a reasonable examiner would have considered such prior art important in deciding whether to allow the parent application.'"). The Federal Circuit has further stated that the reasonable examiner standard is the only standard it applies in determining materiality. *Digital Control Inc.*, 437 F.3d at 1316 ("[T]he PTO's 'reasonable examiner' standard … gradually became the sole standard invoked by this court."). Because the Federal Circuit has exclusively used a reasonable examiner standard in determining materiality, there is very little development in the case law explaining what constitutes a *prima facie* case of unpatentability. It is this lack of development in the case law that is the reason for Professor Janicke's lack of knowledge of real-life examples of when a *prima facie* case of unpatentability is established and why in rendering his opinions on materiality Professor Janicke applies the reasonable examiner standard

25       Contrary to AGA's allegations, an understanding of what constitutes a *prima facie* case of unpatentability is not even necessary to properly opine on materiality. The Federal Circuit has made clear that the "arguably narrower" Rule 56 "was not intended to replace or supplant the 'reasonable examiner' standard … [but rather] to present a clearer and more objective definition

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE: INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

of what information the Office considers material to patentability." *Id*. Accordingly, because under the reasonable examiner standard, "material prior art need not even be invalidating prior art … material prior art [also] need not necessarily present a prima facie case of unpatentability." *Agfa Corp. v. Creo Products Inc*., 451 F.3d 1366, 1373 (Fed. Cir. 2006). Moreover, the test for materiality under 37 C.F.R. § 1.56(b) is just one of many that may be used by courts to determine materiality. *Id*. ("[T]he PTO's recent adoption [in 1992] of an arguably narrower standard of materiality does not supplant or replace our case law. Rather, it merely provides an additional test of materiality.").[2]

Finally, even if an understanding of a *prima facie* case of unpatentability were necessary to properly opine on materiality (which it is not), this understanding would be irrelevant in determining whether those involved in prosecuting the original '852 Jervis application committed inequitable conduct because that application was prosecuted before Rule 56 was amended in 1992. Therefore, the amended Rule does not apply to the '852 application. *Ferring B.V. v. Barr Laboratories, Inc*., 437 F.3d 1181, 1187 n.6 (Fed. Cir. 2006), citing, *Dayco Prods*., 329 F.3d at 1363-64 ("Although the PTO amended the language of 37 C.F.R. § 1.56 in 1992, we have continued to use the pre-1992 language regarding materiality for evaluating patents that were prosecuted before the amendment."). Thus, at the very least, Professor Janicke could still properly opine on the materiality of information alleged to have been withheld during prosecution of the '852 application because no understanding of when a *prima facie* case of unpatentability is established is required.

**4. Professor Janicke Does Not Opine On Intent But Instead Provides Opinions On The Usual Practices Of Patent Attorneys, Which Informs Whether The Evidence Of Record Establishes Intent**

AGA alleges that Professor Janicke opines on intent and that his testimony should be precluded because expert testimony on intent is improper. But a closer reading of Professor Janicke's expert report shows that he does not opine intent. Rather, he uses his expertise on the

---

[2] The Federal Circuit has identified three other tests in addition to the reasonable examiner standard and 37 § C.F.R. 1.56(b) that courts have and may continue to use in determining materiality : (1) objective "but for", (2) subjective "but for", and (3) "but it may have". *See Digital Control Inc.*, 437 F.3d at 1314.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE: INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

1   usual practices of patent attorneys in procuring patents to provide an opinion regarding whether
2   Jeffrey Sheldon's actions during prosecution of the '291 application, as reflected in the evidence
3   of record, are indicative of a person intending to deceive the PTO. In paragraph 31 of Professor
4   Janicke's report where AGA alleges he opined on intent, Professor Janicke identifies actions
5   taken by Mr. Sheldon after he received the Cragg II article.[3]  Professor Janicke states that on the
6   same day Mr. Sheldon received the Cragg II article he immediately sent the PTO a letter
7   enclosing the article and citing it as relevant. Lawson Decl. Ex. 22 at ¶31. Mr. Sheldon also took
8   the additional step of requesting an affiliate located near the PTO to hand-carry a copy
9   immediately to the examiner. *Id.* Professor Janicke opined that "these are hardly the actions of
10  someone trying to conceal a reference from the USPTO. On the contrary, they *reflect* an
11  extraordinary effort to disclose the article to the examiner." *Id.* (emphasis added). Professor
12  Janicke thus did not opine on the ultimate question of Mr. Sheldon's intent. Rather, he analyzed
13  whether Mr. Sheldon's actions in submitting the Cragg II article were within the usual practices
14  of patent attorneys prosecuting a patent application and whether they were reflective of an intent
15  to deceive the PTO. The Federal Circuit has held that because direct evidence of intent is rare,
16  intent to deceive may be inferred from circumstantial evidence such as Mr. Sheldon's actions
17  after he received the Cragg II article. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d
18  1357, 1366 (Fed.Cir. 2008) ("Direct evidence of deceptive intent is often unavailable; thus, intent
19  to deceive may be inferred from indirect or circumstantial evidence.").
20      Professor Janicke used his expertise in the usual practices of patent attorneys in procuring
21  a U.S. patent to opine on whether Mr. Sheldon's actions were reflective of an intent to deceive.
22  This opinion is within Professor Janicke's field of expertise, and is not an opinion on the ultimate
23  question of intent. Therefore, Professor Janicke's opinion regarding Mr. Sheldon is proper and
24  should not be excluded.
25      AGA also argues that Professor Janicke's testimony regarding the Examiner's state of

---

[3] Mr. Sheldon received the Hughes document at the same time he received the Cragg II article and took the same actions with respect to the Hughes document as he did with Cragg II article. Thus, although paragraph 31 to which AGA cites does not specifically refer to the Hughes document, the same analysis provided by Professor Janicke applies.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE: INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

1  mind, intent, or mental impressions should be excluded.  Motion at 9:8-9.  The only paragraph of

2  Professor Janicke's report that AGA alleges contains such opinions is paragraph 53.  In that

3  paragraph, Professor Janicke states that "the Middleman declaration did not influence the

4  Examiner because she held to her previous rejection of the claims." Lawson Decl., Ex. 22, ¶ 53.

5  This opinion is not speculative as AGA alleges because Professor Janicke bases it on the fact that

6  the Examiner sustained her previous rejection; thus, there is evidence of record to support the

7  conclusion that the Middleman declaration did not influence the Examiner to change her decision.

8  AGA's argument that Professor Janicke is speculating on the Examiner's state of mind or opining

9  as to her intent is overstated.

10  Professor Janicke's opinions in paragraphs 31 and 53 of his report are based on his

11  expertise in the usual practices of patent attorneys in procuring a U.S. patent and on the evidence

12  of record.  As such, they are properly within Professor Janicke's field of expertise.  These

13  opinions are also not opinions on the ultimate question of intent.  Therefore, Professor Janicke's

14  testimony should not be excluded.

15  **5.    Professor Janicke Opines On PTO Procedures Not Law**

16  AGA argues that Professor Janicke's opinions on the law of inequitable conduct should be

17  excluded and points to two paragraphs of his expert report where Professor Janicke discusses 37

18  C.F.R. § 1.97 and 1.98.  These sections of the Code of Federal Regulations ("CFR") are not law

19  as AGA claims.  They are the Patent Office's rules of procedure thus Professor Janicke can

20  properly opine on them.

21  **6.    AGA Has Failed To Show How Professor Janicke's Testimony Would Be Irrelevant, Prejudicial, Or Cause Confusion, Undue Delay, Or Waste Of Time**
22

23  Finally, AGA's motion should be denied because AGA has failed to show how Professor

24  Janicke's testimony would be irrelevant, prejudicial, or cause confusion, undue delay, or waste of

25  time, as required by Fed. R. Evid. 403.  AGA has not demonstrated how it would be prejudiced

26  by permitting the Court to hear Professor Janicke's testimony.  Because Professor Janicke is a

27  rebuttal witness, his testimony is contingent on the testimony of Mr. Goffney.  If the Court

28  decides after hearing Mr. Goffney's testimony that Professor Janicke's testimony would be

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE: INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

irrelevant or unnecessary, it can decide exclude his testimony at that time. The Court can also disregard any of Professor Janicke's testimony that it believes is unsupported, speculative, or irrelevant after it hears his testimony. The Court is sophisticated enough to decide what evidence or testimony to admit or exclude, and there is no danger of jury confusion because inequitable conduct issues are tried to the Court. Because AGA has not established any of the requirements to exclude evidence under Rule 403, AGA's motion should be denied.

## III. CONCLUSION

For all the foregoing reasons, Medtronic respectfully requests that AGA's Motion *In Limine* To Exclude The Testimony Of Paul M. Janicke On Inequitable Conduct be denied.

Dated: June 16, 2009

Dechert LLP

By: Joshua C. Walsh-Benson
James J. Elacqua
Noemi C. Espinosa
Andrew N. Thomases
Michelle W. Yang
Hieu H. Phan
Joshua C. Walsh-Benson

Attorneys for Plaintiffs
MEDTRONIC, INC., MEDTRONIC USA, INC., AND MEDTRONIC VASCULAR, INC.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PAUL M. JANICKE RE: INEQUITABLE CONDUCT; CASE NO. C07-00567 MMC

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served this 16th day of June, 2009, with an electronic copy of this document via the Court's CM/ECF system.

| | |
|---|---|
| Steven D. Hemminger, Esq. | steve.hemminger@alston.com |
| Michael S. Connor, Esq. | mike.connor@alston.com |
| Lance A. Lawson, Esq. | lance.lawson@alston.com |
| Brian F. McMahon, Esq. | brian.mcmahon@alston.com |
| Marissa R. Ducca, Esq. | marissa.ducca@alston.com |

By:    Joshua C. Walsh-Benson
       Joshua C. Walsh-Benson

Attorney for Plaintiffs
MEDTRONIC, INC., MEDTRONIC USA, INC., AND MEDTRONIC VASCULAR, INC.

13481053