1   James J. Elacqua (CSB No. 187897)
    james.elacqua@dechert.com
2   Noemi C. Espinosa (CSB No. 116753)
    nicky.espinosa@dechert.com
3   Andrew N. Thomases (CSB No. 177339)
    andrew.thomases@dechert.com
4   Michelle W. Yang (CSB No. 215199)
    michelle.yang@dechert.com
5   Hieu H. Phan (CSB No. 218216)
    hieu.phan@dechert.com
6   Joshua C. Walsh-Benson (CSB No. 228983)
    joshua.walsh-benson@dechert.com
7   DECHERT LLP
    2440 W. El Camino Real, Suite 700
8   Mountain View, California  94040-1499
    Telephone:    (650) 813-4800
9   Facsimile:    (650) 813-4848

10  Attorneys for Plaintiffs
    MEDTRONIC, INC., MEDTRONIC USA, INC.,
11  AND MEDTRONIC VASCULAR, INC.

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                SAN FRANCISCO DIVISION

15

16  MEDTRONIC, INC., a Minnesota            Case No. C07-00567 MMC
    corporation, MEDTRONIC USA, INC., a
17  Minnesota corporation, and MEDTRONIC    **MEDTRONIC'S OPPOSITION TO AGA**
    VASCULAR, INC., a Delaware              **MOTION *IN LIMINE* REGARDING THE**
18  corporation,                            **APPLICABILITY OF THE "SAFE**
                                            **HARBOR" OF 35 U.S.C. § 121 (#11)**
19              Plaintiffs,
                                            Date:    June 23, 2009
20  v.                                      Time:    3:00 p.m.
                                            Dept.:   Courtroom 7, 19th Floor
21  AGA MEDICAL CORPORATION, a              Judge:   Honorable Maxine M. Chesney
    Minnesota corporation,
22
                Defendant.
23

24

25

26

27

28

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* RE
"SAFE HARBOR" OF § 121 (#11)
CASE NO. C07-00567 MMC

## I.    **INTRODUCTION**

AGA's Motion in Limine Regarding the Applicability of the "Safe Harbor" of 35 U.S.C. § 121 (#11) is not a really motion in limine at all.  It is a second and belated summary judgment motion on AGA's obviousness-type double patenting (OTDP) defense.  Moreover, AGA's motion is based on circular logic.  AGA asserts that it is entitled to judgment as a matter of law that the "safe harbor" of § 121 does not apply and, therefore, the testimony of Prof. Janicke that would assist the Court in determining whether the "safe harbor" applies should be precluded.  In other words, AGA seeks to preclude the very testimony that will assist the Court in determining the very merits of AGA's motion – *i.e.*, whether the "safe harbor" applies.

AGA does not challenge Prof. Janicke's qualifications to opine on the "safe harbor" provision of § 121 or on the complicated file histories, Patent Office rules, and patent prosecution practices involved in the inquiry.  Prof. Janicke has been a Professor of Patent Law for more than 17 years, has been a licensed patent attorney for more than 40 years, and was a law clerk on the appeals court that heard all appeals from the Patent Office.  Contrary to AGA's assertion, Prof. Janicke's opinions do not invade the province of the Court; rather, Prof. Janicke has analyzed and opined upon the very complicated history of four separate patent applications, including how complex Patent Office rules and practices were applied during the patent prosecution at issue.  Thus, Prof. Janicke's testimony is the exact type of testimony contemplated by Federal Rule of Evidence 702, as it will assist the Court in understanding a dense and intricate set of patent-specific materials.  And, Prof. Janicke will help explain how the "safe harbor" provision of § 121 *does* apply to the instant scenario.

Understandably, AGA does not want the Court to hear Prof. Janicke's opinions because those opinions show that AGA's OTDP defense fails.  Consequently, AGA mischaracterizes the patent files and Patent Office rules and procedures in an effort to argue that Prof. Janicke's opinions are irrelevant because the "safe harbor" cannot apply as a matter of law.  This very mischaracterization of the patent files and rules, however, shows exactly why Prof. Janicke's testimony will be so important in assisting the Court in understanding the true issues.

Moreover, the merits of AGA's arguments are flawed.  The '141 patent did in fact issue

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

MEDTRONIC'S OPP. TO AGA'S MOTION *IN LIMINE* RE
"SAFE HARBOR" OF § 121 (#11)
CASE NO. C07-00567 MMC

1    from a divisional application, as Prof. Janicke opines after a detailed review of the patent papers.

2    Not only is this evident from the patent itself; it is also evident from the file history for the '141

3    patent – the public record in the Patent Office.  Similarly, contrary to AGA's assertion, the patent

4    examiner did issue a restriction requirement during the parent patent application, and claims were

5    withdrawn by the examiner as a result of the applicant's post-restriction election.  The examiner

6    then precluded the applicant from reasserting those withdrawn claims during prosecution of that

7    application, thereby forcing the applicant to pursue such claims in a divisional application.  Thus,

8    the very policy of the "safe harbor" provision is implicated.  If an applicant is forced by an

9    examiner to withdraw claims in response to a restriction requirement (thereby being forced to

10    pursue the claims in a later application), it would be unfair to invalidate the claims in the later

11    application under the judicially-created doctrine of obviousness-type double patenting.  This is

12    why Congress added the "safe harbor" provision to § 121.

13        The existence of the "safe harbor" provision is why the examiner and the Board of Patent

14    Appeals (who are presumed to have done their jobs correctly in reviewing the '141 patent

15    application) never invoked OTDP based on the '378 patent.  In fact, the examiner did initially

16    attempt to assert OTDP based on the '957 patent, but then withdrew that rejection after the

17    applicant correctly pointed out that the claims in the '141 patent application were protected by the

18    "safe harbor" protection of § 121.  AGA's arguments to the contrary entirely lack merit, and its

19    motion should thus be denied.

20    **II.    LEGAL PRINCIPLES**

21        Section 121 of the Patent Act is entitled "Divisional Applications."  35 U.S.C. § 121.  The

22    first sentence of that section explains that the Patent Office can issue a restriction requirement if it

23    believes that two or more independent and distinct inventions are claimed in one application:

24                    If two or more independent and distinct inventions are claimed in
                    one application, the Director may require the application to be
25                    restricted to one of the inventions.

26    *Id*.  The second sentence of Section 121 explains that the other invention can be pursued in a

27    "divisional application," and, if that divisional application is filed before the issuance of the

28    earlier application as a patent, the divisional application is "entitled to the benefit of the filing

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1    date of the original application":

2          If the other invention is made the subject of a divisional
       application which complies with the requirements of section 120 of
3          this title it shall be entitled to the benefit of the filing date of the
       original application.
4

5    *Id.*

6          Note that the statute does not define what it means to be a "divisional application."

7    However, the Federal Circuit has recently provided some guidance, explaining a divisional

8    application is "[a] later application for an independent or distinct invention, carved out of a

9    pending application and disclosing and claiming only subject matter disclosed in the earlier or

10   parent application . . .."  *Pfizer, Inc. v. Teva Pharms. USA, Inc*., 518 F.3d 1353, 1360 (Fed. Cir.

11   2008).  There is no requirement that the face of the patent state that an application is a

12   "divisional"; rather, if the following requirements are met, the application should be considered a

13   divisional:  (1) a later application for an independent or distinct invention; (2) carved out of a

14   pending application; and (3) disclosing and claiming only subject matter disclosed in the earlier

15   application (in other words, no "new matter is added to the written description, as is done in

16   continuation-in-part applications).  *Id*. at 1360 *citing* MPEP § 201.06.  Moreover, it is important

17   to note that the statute does not require that the issued patent labeled a "divisional"; instead, it

18   only states that the *application* (filed by the applicant) be a divisional application.

19         The third sentence of Section 121 contains the "safe harbor" provision, which explains in

20   broad terms that, where a restriction requirement was made, an earlier patent "shall not be used as

21   a reference" against a divisional application or any patent issued on a divisional application:

22         A patent issuing on an application with respect to which a
       requirement for restriction has been made, or an application filed
23         as a result of such a requirement, shall not be used as a reference
       either in the Patent and Trademark Office or in the courts against a
24         divisional application or against the original application or any
       patent issued on either of them, if the divisional application is filed
25         before the issuance of the patent on the other application.

26   35 U.S.C. § 121.

27         The policy underlying the "safe harbor" is succinctly put in Judge Newman's

28   concurrence in *Studiengesellschaft Kohle mbH v. Northern Petrochemical Co.*, stating

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1

2    Since the 1952 Patent Act, § 121 has protected patentees from the
     need to prove, before the PTO or the courts, that the claims of the
     divisional application were to an independent and distinct
3    invention, when the patent examiner had determined during
     examination that the inventions were independent and distinct, and
     by requiring restriction had refused to examine the claims to any
4    non-elected invention.  The patent applicant thereafter had either to
     place the non-elected claims in a new patent application, or to
5    abandon them.  Section 121[3] effects a form of estoppel that
     shields the applicant from having to prove the correctness of the
6    restriction requirement in order to preserve the validity of the
     second patent.

7

8    784 F.2d 351, 360-361 (Fed. Cir. 1986) (Newman, J., concurring).

9          The claims in the divisional application do not have to be verbatim of the claims that were

10   restricted out of the earlier patent application in order for the later claims to have the benefit of

11   the "safe harbor."  *Applied Materials, Inc. v. Advanced Semiconductor Materials, Inc*, 98 F.3d

12   1563, 1568 (Fed. Cir. 1996) ("A restriction requirement does not prohibit subsequent

13   amendments to the claims," rather, "the examiner's demarcation among the separate inventions

14   should be preserved") *citing Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165,

15   1179 (Fed. Cir. 1993).  In other words, the claims in the divisional will be protected by the "safe

16   harbor" even if they are amended versions of the claims that were restricted out of the earlier

17   application or claims of similar scope.  *Id.*

18         It should also be noted that the Federal Circuit has explained that the filing of a divisional

19   application in response to a restriction requirement is expressly allowed by statute, even when a

20   divisional application might be deferred and thus extend the length of time a patentee has patent

21   coverage for his inventions:

22   Filing a divisional application in response to a requirement for
     restriction is [a] legitimate reason for refilling a patent application.
23   Given one's entitlement to claim an invention in various ways, and
     the PTO's practice of limiting its examination of an application to
24   only one of what it considers to be several inventions, it cannot,
     without more, be an abuse of the system to file divisional
25   applications on various aspects that the PTO has considered to be
     separate and distinct from each other.  That is so even when one
26   defers the filing of a divisional application until just before the
     issuance of the parent application.  Such action is expressly
27   allowed by statute.

28

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1   *Symbol Techs. v. Lemelson Med., Educ. & Research Found.*, 422 F.3d 1378, 1385 (Fed. Cir.

2   2005) *citing* 35 U.S.C. § 121 (2000); 37 C.F.R. 1.142 (2005); Manual of Patent Examining

3   Procedure ("MPEP") §§ 803, 818 (8th ed., rev. 2 2004).

4        Moreover, this Court has relied on patent law experts to assist in determining substantive

5   issues of patent law.  *Therasense, Inc. v. Becton, Dickinson and Co.*, 2008 WL 2037732 at *4

6   (N.D. Cal. May 12, 2008) (Alsup, J.).  In fact, in the context of OTDP, other courts have relied

7   upon the assistance of patent law experts.  *See Smith & Nephew, Inc. v. Biomet, Inc.*, 2005 WL

8   3132313 at *2 (D. Or. Nov. 21, 2005).  *See also*, *Ortho Pharma. Co. v. Smith*, 1990 WL 121353

9   at *8 (E.D. Pa. Aug. 17, 1990).

10  **III.**    **FACTUAL BACKGROUND**

11       Prof. Janicke is extremely well qualified to assist the Court in its determinations regarding

12  the applicability of the safe harbor provision of § 121 to the claims at issue.  Prof. Janicke

13  possesses substantial experience with respect to restriction practice at the United States Patent and

14  Trademark Office ("USPTO") and with the corresponding double patenting issues.  Ex. 38 at 3.

15  In fact, Prof. Janicke spent two years working as a law clerk under Judge Lane at the Court of

16  Customs and Patent Appeals (predecessor to the modern Court of Appeals for the Federal Circuit)

17  spending the majority of his time dealing with appeals from the USPTO where issues surrounding

18  requirements for restriction and double patenting frequently emerged.  Ex. 38 at 3.  Also, Prof.

19  Janicke practiced patent law for 21 years and has taught patent law at the University of Houston

20  for the past 17 years teaching the schools Patent Bar Review course for 4 of those years.  Ex. 5.

21  Additionally, Prof. Janicke has been appointed Special Master in five separate patent cases –

22  twice in the Northern District of California (*Chiron Corp. v. F. Hoffman-LaRoche*, Civil Case No.

23  98-00315 (Wilkens, J.) and *Ixys Corp. v. Inter'nl Rectifier Corp.*, Civil Case No. 02-00313

24  (Alsup, J.)) and three times in other districts (*Nor. Amer. Container, Inc. v. Plastipak Packaging,*

25  *Inc.*, Civil Case No. 99-01749 (N.D. Tex. Kaplan, J.), *Chrimar Sys., Inc. v. Cisco Sys., Inc.*, Civil

26  Case No. 01-71113 (E.D. Mich. Cohn, J.), and *Hochstein v. Microsoft Corp.*, Civil Case No. 04-

27  73071 (E.D. Mich. Borman, J.)).

28  / / /

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    In an effort to assist the Court, Prof. Janicke will provide testimony analyzing and

2    explaining four complicated file histories that include a large amount of correspondence between

3    counsel for the patent applicant, Mr. James Jervis, and the Patent Office.  These file histories span

4    a number of years and involve numerous complex Patent Office procedures.  He will also provide

5    insight into other patent prosecution practice.

6    For example, Prof. Janicke will explain that during the prosecution of an earlier Jervis

7    patent application (Application No. 07/252,019 which led to the '957 patent), the patent examiner

8    issued a restriction requirement under § 121.  Ex. 39, M-AGA 238073-76.  This restriction

9    requirement grouped the claims into two distinct inventions – one pertaining to medical devices

10   and the other pertaining to a method of using the medical device.  *Id.*  The patent examiner also

11   noted that the medical device group of claims included claims directed to a number of "patentably

12   distinct species of the claimed invention."  *Id.*  The examiner stated that, if the medical device

13   group of claims were elected, the applicant must also elect to proceed with just one of the

14   "patentably distinct" species.  *Id.*

15   The applicant traversed the restriction requirement (argued it was incorrect), but also

16   elected to proceed with a species of the method claims.  Ex. 40, M-AGA 238148-51.  The

17   examiner maintained the restriction requirement and identified the non-elected claims as

18   "withdrawn."  Ex. 41, M-AGA 238187-88.  As Prof. Janicke will explain, it is only the examiner

19   that can identify claims as "withdrawn," and, once claims are withdrawn as non-elected,

20   prosecution on those claims ceases.  Ex. 38 at 5, ¶10; Ex. 42 at 175:17-176:1.  This application

21   matured into the '957 patent, and that patent issued without any of the non-elected claims that

22   were withdrawn by the examiner.  Ex. 43.

23   Prior to issuance of the '957 patent, the applicant filed a divisional application

24   (Application No. 07/682,243, which later issued at the '546 patent), and that application included

25   the claims restricted out of the prior patent application.  Ex. 44, M-AGA 236805-36.  The patent

26   examiner issued another restriction requirement and incorporated by reference the restriction from

27   the application that matured into the '957, acknowledging the previous election by the applicant

28   and withdrawing the non-elected claims.  Ex. 45, M-AGA 236844-45.  The applicant again

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1   attempted to traverse the restriction requirement and elected the method claims. Ex. 46, M-AGA

2   236927-29. This application matured into the '546 patent, and that patent issued without any of

3   the non-elected claims that were withdrawn by the examiner. Ex. 47.

4          Prior to the issuance of the '546 patent, the applicant filed another divisional application

5   (Application No. 07/956,653), which eventually issued as the '378 patent. This divisional

6   application included claims that were restricted out of, and thus withdrawn from, the prior

7   applications. Ex. 48, M-AGA064939. In this divisional application, the examiner again issued a

8   restriction requirement. Ex. 49, M-AGA 065008-11. This restriction requirement identified two

9   groups of claims representing different inventions – a set of claims drawn to medical devices and

10  a claim drawn to a method of compressing two bones together. *Id*. The examiner additionally

11  determined that the medical device claims were directed to "patentably distinct species," where

12  the shape memory alloy is an IUD, a stent graft, a blood filter, a catheter, and a tracheal catheter,

13  respectively. *Id*. The examiner explained that, if the applicant were to pursue the medical device

14  set of claims, the applicant must elect a single disclosed species. *Id*.

15         In response, the applicant elected to pursue the claims directed to medical devices and

16  specifically elected the catheter species, with traverse. Ex. 50, M-AGA 065021-23. The

17  applicant identified the catheter claims as 11-14, 17-21, 24-37, and 41-53. Ex. 50, M-AGA

18  065021. In the next office action, the examiner identified the non-elected claims 15, 16, 22, 23,

19  38-40, and 54 as "withdrawn." Ex. 51, M-AGA 065031-36 (Notably, the withdrawn claims

20  include claim 39, which later became claim 2 in the '141 patent, and AGA is asserting that OTDP

21  invalidates that claim). In another office action (dated 3/7/94), the examiner added claim 37 to

22  the list of claims "withdrawn from consideration." Ex. 52, M-AGA 065090-94. Although AGA

23  asserts that this inclusion of application claim 37 in the list of "withdrawn" claims was simply a

24  hand-written error on the office action cover page, it is important to note that claim 37 was never

25  addressed on the merits within the body of the office action. *Id*. This indicates that claim 37 fell

26  within the scope of the non-elected claims and would no longer be considered in the '653

27  application. Ex. 38 at 5. In fact, under section 132(a) of the Patent Act, an examiner must

28  include reasons why any claim is rejected or subject to objection. 35 U.S.C. § 132(a). Thus, the

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1  fact that the body of the office action did not include any rejection or objection to claim 37 shows

2  that the examiner had considered it withdrawn from prosecution.

3       In a July 14, 1994 response to the office action, the applicant confirmed that the examiner

4  had withdrawn claims from consideration, including claims 37 and 39, which were both later filed

5  in the application that matured into the '141 patent.  Ex. 53, M-AGA065105.

6       AGA points to the October 31, 1994 office action as including a rejection of claim 37

7  because the cover page on that office action identifies all claims as pending and rejected.  Dkt.

8  No. 542 at 6.  However, there is no indication anywhere in that office action that the prior

9  withdrawal of claims from consideration was being retracted.  Ex. 54, M-AGA065124-27.  More

10 importantly, the office action cannot as a matter of law include a rejection of claim 37, claim 39,

11 or any of the previously withdrawn claims because the body of that office action does not include

12 any reasons for a rejection of such claims, as would be required under § 132(a).  *Id.*  These claims

13 could have only been reinstated if the examiner withdrew the restriction requirement.  Ex. 88.

14      Moreover, in the very next paper filed by the applicant, he actually attempted to get the

15 previously withdrawn claims (including claim 37 and 39) considered by the examiner.  Ex. 55,

16 M-AGA065138.  The examiner declined to do so.  Ex. 56, M-AGA 065152.  Indeed, claim 39

17 was never mentioned by the examiner again.  *Id.*

18      On June 26, 1995, the examiner and the applicant's counsel had a telephonic interview,

19 and the examiner's record of that interview says that "[t]he attached Examiner's Amdt

20 [Amendment] will place case into condition for allowance."  Ex. 57, M-AGA065165.  The

21 accompanying Notice of Allowability includes an Examiner's Amendment that cancels claims

22 37-40, 43, and 54.  Ex. 58, M-AGA065166-69.  Importantly, the MPEP provision operative at the

23 time explained that the examiner was authorized to cancel claims drawn to a non-elected

24 invention in order to put the application in a condition for allowance.  Ex. 38 at 5-6, ¶12.  This is

25 further evidence that the examiner considered claims 37-40 and 43 to have been withdrawn as a

26 result of the restriction requirement he issued earlier.  In fact, there is no evidence in the file

27 history that the examiner ever withdrew his earlier restriction requirement.  Ex. 38 at 6, ¶ 13.

28 / / /

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1    Prior to the Notice of Allowance in the prosecution of the application that became the

2    '378 patent, the applicant had filed a new patent application (Application No. 08/483,291, which

3    later became the '141 patent).  This application was filed on June 7, 1995, was identified as a

4    continuation, and was accompanied by a Preliminary Amendment.  Ex. 59, M-AGA 237057-65.

5    As explained above, the Notice of Allowability in the parent '653 application (which would

6    become the '378 patent) was signed on June 28, 1995 – after this new application had been filed.

7    Ex. 58, M-AGA65166-69.  It was in this Notice of Allowability that the examiner included an

8    Examiner's Amendment that cancelled claims 37-40, 43, and 54 in that application.  Ex. 58, M-

9    AGA065168.  Less than one month later, on July 17, 1995, as a result of this Notice of

10    Allowability in the prior application, the applicant filed a Supplemental Preliminary Amendment

11    in the '291 application.  Ex. 60, M-AGA 237081-83.  In the Supplemental Preliminary

12    Amendment, the applicant added the very claims that were cancelled by the Examiner's

13    Amendment in the '653 application – namely, claims 37-40 and 43 of the '653 application.

14    *Compare* Ex. 60, M-AGA 237081-83 *with* Ex. 69, M-AGA064990-91.  The applicant also

15    specifically requested that the patent specification of the '291 application be amended to

16    designate that application as a "divisional of the parent application."  Ex. 60, M-AGA 237081.

17    Additionally, the applicant stated as follows:

18
          The claims added to this application are claims that were cancelled
19        in the parent application as not being examined, as being directed
          to a non-elected species. ***Due to the addition of these claims to***
20        ***this application, the present application is now a divisional***
          ***application.***
21

22    Ex. 60, M-AGA 237083 (emphasis added).

23    In the very next Office Action from the examiner, the examiner acknowledged the

24    Supplemental Preliminary Amendment and the addition of the claims added as part of that

25    amendment.  Ex. 61, M-AGA 237086-90.  Later during the prosecution of that patent, the

26    examiner confirmed the preliminary amendment filed on July 17, 1995.  Ex. 62, M-AGA 237233.

27    In the Office Action on May 29, 1996, the examiner again issued a restriction requirement

28    that identified three "distinct" inventions in three groups of claims.  Ex. 61, M-AGA237086-90.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1   For one of the groups, the examiner also identified "patentably distinct species" and again request

2   an election.  Ex. 61, M-AGA237088-89.  In response, the applicant elected the medical device

3   group of claims and specifically elected the "stent graft" species.  Ex. 63, M-AGA 237091-92.

4   Notably, this was a different election than the "catheter" election made during the prosecution of

5   the application that led to the '378 patent, as discussed above.  This is further evidence that the

6   claims that eventually issued from the '291 application (in the '141 patent) are patentably distinct

7   from the claims of the parent '378 patent.

8          Prosecution of these "stent" claims continued, and the examiner never withdrew the

9   restriction requirement.  Ex. 38, 14-15.

10         Importantly, although the examiner issued a large number of rejections of the pending

11  claims that eventually issued in the '141 patent, not once did the examiner ever reject the claims

12  as invalid under the theory of obviousness-type double patenting due to the claims of the '378

13  patent.  Ex. 38 at 12, ¶ 39.  In fact, the examiner did temporarily issue an OTDP rejection, but

14  based on the claims of the '957 patent.  Ex. 64, M-AGA 237098-99.  However, in the response to

15  that office action, the applicant correctly pointed out that the OTDP rejection is flawed because

16  there was a restriction requirement in the prosecution of the '957 patent. Ex. 65, M-AGA237299.

17  This is because of the "safe harbor" of § 121.  The examiner acquiesced and withdrew that OTDP

18  rejection in the next office action.  Ex. 66, M-AGA237235-240.  The fact that the examiner

19  withdrew the rejection is an acknowledgement that the examiner considered the '291 application

20  (which led to the '141 patent) a divisional application that was protected by the "safe harbor"

21  provision of § 121.

22         Additionally, because of other rejections of the claims, the '291 application went up on

23  appeal to the Patent Board of Patent Appeals and Interferences.  Ex. 67, M-AGA 237402-413.

24  The Board overturned another OTDP rejection made by the examiner, and overturned the

25  examiner's other rejections.  Ex. 67, M-AGA 237404-411.  Notably, although the Board had the

26  authority to impose new grounds for rejections of the claims (*see* 37 CFR § 141.50(b), formerly §

27  1.196(b)), the Board never rejected the '141 claims for obviousness-type double patenting based

28  on the claims of either the '378 patent or the '957 patent.  Ex. 38, 12, ¶ 39.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1   The '141 patent issued on October 23, 2001.  All but one of the claims specifically have

2   the word "stent" in the claims.  Ex. 68.  The one claim that does not include that term, includes

3   the requirement for a "guide wire" – a limitation that does not appear in any claim in the '378 or

4   '957 patents.

5   **IV.   ARGUMENT**

6   All of AGA's arguments for excluding the testimony of Prof. Janicke are flawed.  First,

7   contrary to AGA's assertion, Prof. Janicke will not be providing testimony on statutory

8   interpretation and will not attempt to instruct the jury on the law.  Rather, if the Court even

9   permits AGA's OTDP defense to proceed, Prof. Janicke will provide rebuttal testimony that will

10  assist the Court in understanding a complex set of facts involving four intricate file histories,

11  Patent Offices rules at the time, and patent prosecution practice.  Second, AGA mischaracterizes

12  Prof. Janicke's opinions and argues that his opinions are incorrect.  However, this is not a basis to

13  exclude expert testimony; instead, AGA should raise these issues, if at all, during cross-

14  examination.  Third, AGA makes gross misstatements regarding the record in order to argue that

15  the § 121 "safe harbor" must fail as a matter of law, and Prof. Janicke will assist the Court in

16  understanding and analyzing the record under the proper application of the law so that the Court

17  will not be led astray by AGA's mischaracterizations.  This is why AGA is so desperate to

18  exclude Prof. Janicke's testimony – because Prof. Janicke's opinions actually establish that the

19  "safe harbor" immunizes the '141 patent claims from OTDP.  AGA cannot use circular logic,

20  attorney speculation, or misstatements to exclude the very evidence that shows the flaws in its

21  own arguments.  Thus, AGA's motion should be denied in its entirety.

22      **A.      Contrary To AGA's Assertions, Prof. Janicke Will Not Be Testifying On
                  Statutory Interpretation, Nor Will He Be Instructing The Jury On The Law**
23

24  AGA suggests that Prof. Janicke will only be testifying on statutory interpretation.  Dkt.

25  No. 542 at 2:12-13.  This is simply not true.  In fact, AGA provides absolutely no citation to Prof.

26  Janicke's expert report or deposition where Prof. Janicke allegedly states he will be testifying on

27  statutory construction.  To the contrary, as evidenced by the disclosure of his Supplemental

28  Rebuttal Report, Prof. Janicke will be providing rebuttal testimony that will assist the Court by

- 11 -

offering an analysis of a complicated set of patent file history materials so that the Court can apply the law to the facts in this case to reach a determination as to whether the "safe harbor" of § 121 applies.  Ex. 38.

This is exactly the type of expert testimony contemplated under the rules.  Federal Rule of Evidence 702 states, in pertinent part, that "[i]f . . . other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . .."  Fed. R. Evid. 702.  Similarly, Federal Rule of Evidence 704 states that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Fed. R. Evid. 704.  *See also*, *Therasense, Inc. v. Becton, Dickinson and Co.*, 2008 WL 2037732, at *4 (N.D. Cal. May 12, 2008) (Alsup.J.); *Smith & Nephew, Inc. v. Biomet, Inc.*, 2005 WL 3132313, at *2 (D. Or. Nov. 21, 2005); *Ortho Pharma. Co. v. Smith*, 1990 WL 121353, at *8 (E.D. Pa. Aug. 17, 1990).

AGA also attempts to support its motion by suggesting that Prof. Janicke is merely instructing the jury as to the applicable law.  Dkt. No. 542 at 13.  AGA's assertion is wholly unsupported.  Prof. Janicke is not attempting to invade the Court's province to interpret statutes or instruct the jury on the law, as can be seen from his expert report.  Ex. 38.  In fact, as AGA now concedes, its defense of OTDP will not even be tried to a jury.  Dkt. No. 548 at 2:9-12.

### B.   Just Because AGA Disagrees With Prof. Janicke's Opinions Does Not Mean Those Opinions Should Be Excluded

Throughout its Motion, AGA mischaracterizes Prof. Janicke's opinions.  For example, AGA asserts that "Prof. Janicke ignores what actually happened during prosecution."  Dkt. No. 542 at 12.   However, even a cursory review of Prof. Janicke's Supplemental Rebuttal Expert Report reveals that Prof. Janicke reviewed and analyzed in detail the contents of the relevant file histories.  Ex. 38.  AGA attempts to discredit Prof. Janicke's opinion by pointing out that the face of the '141 patent provides that it is a continuation and not a divisional.   Dkt. No. 542 at 13.  However, Prof. Janicke does not rely on the face of the *patent*, rather the prosecution history of the *application* that led to the '141 patent to form his opinions.  Ex. 38 at 6-9.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    Even if AGA had not mischaracterized Prof. Janicke's opinions, AGA has provided

2    absolutely no legal authority for the proposition that simply because AGA disagrees with Prof.

3    Janicke's opinions, such testimony must be excluded.  There is no legal basis for AGA's position.

4    If AGA truly thinks Prof. Janicke's testimony is incorrect, it will have the right to cross-examine

5    Prof. Janicke when he testifies.  *Engineered Products Co. v. Donaldson Co., Inc.*, 313 F. Supp. 2d

6    951, 1008 (N.D. Iowa 2004) ("Rule 705 permits [the party who is not offering the expert] to

7    challenge during cross-examination the basis for [the expert's] opinion regarding [the] 'ultimate

8    issue' in [the] litigation").

9         **C.     Prof. Janicke's Opinions Will Counter AGA's Pure Unsubstantiated Attorney
            Argument Assertion That The "Safe Harbor" Fails As A Matter Of Law**

10

11   AGA essentially argues (through mere attorney argument) that the "safe harbor" cannot

12   apply as a matter of law and, thus, the Court should exclude the very testimony from Prof.

13   Janicke that addresses whether the "safe harbor" applies based on the file histories in record.  In

14   support of this circular effort to avoid the very testimony that shows the weaknesses in its

15   position, AGA grossly mischaracterizes the relevant record and Patent Office rules and practices.

16   This conduct by AGA highlights the fact that the Court will be greatly assisted by Prof. Janicke's

17   analysis of the record and patent prosecution rules and practices.

18        **1.     The '141 Patent *Did* Issue From A Divisional Application, As Prof.
            Janicke's Analysis Shows**

19

20   A central premise to AGA's motion is that "The '141 Patent Did Not Issue from a

21   Divisional Application."  Dkt. No. 542 at 3.  Contrary to AGA's assertion, the '141 patent *did*

22   issue from a divisional application.  In fact, the cover page of the '141 patent itself shows that

23   there are at least two divisional applications that led to the '141 patent:

24        Continuation of application No. 07/956,653, filed on Oct. 2, 1992,
          which is a ***division*** of application No. 07/682,243, filed on Apr. 9,

25        1991, now Pat. No. 5,190,546, which is a ***division*** of application
          No. 07/252,019, tiled on Sep. 27, 1988, now Pat. No. 5,067,957,

26        which is a continuation of application No. 07/177,817, tiled on
          Mar. 30, 1988, now abandoned, which is a continuation of

27        application No. 07/047,824, filed on May8,1987, now abandoned,
          which is a continuation of application No. 06/865,703, filed on

28        May 21, 1986, now Pat. No. 4,665,906, which is a continuation of

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 13 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1    application No. 06/541,852, tiled on Oct. 14, 1983, now
     abandoned.

2

3   Ex. 68.

4        Additionally, Prof. Janicke performed an extensive analysis of the papers in the four

5   relevant file histories (including the materials summarized above) and determined that the '141

6   patent issued from a chain that included three divisional applications, each the result of a

7   restriction requirement issued by an examiner.  Ex. 38, at 6-9, 13-15.  This fact rebuts AGA's

8   contentions that both the '957 patent and the '378 patent invalidate the claims of the '141 patent

9   for obviousness-type double patenting.

10       More specifically, Prof. Janicke studied the file histories and found restriction

11  requirements in each of the file histories.  *Id*.  Each restriction requirement identified "patentably

12  distinct" inventions, and forced the applicant to elect one set of claims to pursue.  *Id*.  In each

13  instance, the examiner designated the non-elected claims as "withdrawn from consideration."  *Id*.

14  Prior to issuance of each patent, the non-elected claims were cancelled in order to place the

15  application in condition for allowance.  *Id*.  The applicant then pursued the restricted-out claims

16  in a new application designated as a "divisional application."  *Id*.  At no point in any of the

17  prosecution of these patent applications did the examiner ever retract the restriction requirement,

18  and retraction of the restriction requirement must be explicit.  *Id*; Ex. 88; Ex. 89.

19       With respect to the third and most recent divisional application, AGA asserts that this

20  application must only be a continuation application because the face of the '141 patent identifies

21  its as a "continuation."  Dkt. No. 542 at 3.  AGA cites to no law for this proposition that the word

22  on the face of the patent controls above all else, and none exists.  Section 121 itself does not

23  include a requirement that the patent itself be labeled a divisional; instead, the focus of the statute

24  is whether the *application* filed by the applicant can properly be considered a divisional.  35

25  U.S.C. § 121.  As the Federal Circuit indicated in *Pfizer*, the relevant inquiry is whether the

26  application meets the criteria of a "divisional application," which criteria are set out in the MPEP.

27  *Pfizer*, 518 F.3d at 1360-62.  Prof. Janicke analyzed the relevant file histories, applied those

28  criteria, and concluded that the application that led to the '141 patent (like its parent applications)

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 14 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

was a divisional application filed after a restriction requirement that was not retracted.  Ex. 38 at

6-9.  This fact is confirmed by the applicant's own statement in the file history where, in the

Supplemental Preliminary Amendment, he specifically amended the patent specification to

designate it as a "divisional of the parent application."  Ex. 60, M-AGA 237081.  Additionally,

the applicant stated as follows:

> The claims added to this application are claims that were cancelled
> in the parent application as not being examined, as being directed
> to a non-elected species.  ***Due to the addition of these claims to
> this application, the present application is now a divisional
> application.***

Ex. 60, M-AGA 237083 (emphasis added).  This very language in the public record alone

establishes that the application filed by the applicant was a divisional application.

Moreover, in the very next Office Action from the examiner, the examiner acknowledged

the Supplemental Preliminary Amendment and the addition of the claims added as part of that

amendment.  Ex. 61, M-AGA 237086-90.  Later during the prosecution of that patent, the

examiner confirmed that the Supplemental Preliminary Amendment filed on July 17, 1995, was

controlling.  Ex. 62, M-AGA 237233.

Prof. Janicke provided further analysis as to why the application that led to the '141 patent

was a divisional application.  He examined the restriction requirement in the parent patent

application and compared the restricted out claims to the claims filed in the '141 patent

application.  Ex. 38 at 6-8.  He determined that the claims filed in the '141 patent were consistent

with the "stent" species, which was not elected in the parent patent application.  *Id*.  He also

confirmed the applicant's statement that the claims being added to the '141 patent application

were carved out of the parent patent application and that, consistent with Federal Circuit case law,

no "new matter" was added to the application.  Ex. 38 at 9.  He also determined that the examiner

never retracted his restriction requirement and even refused to reconsider the claims that he

previously identified as "withdrawn from consideration."  *Id*.  Based on this analysis of multiple

file histories, Prof. Janicke confirmed that the patent that matured into the '141 patent met all of

the requirements of a divisional application.  *Id*.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 15 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1    AGA's sole rebuttal to Prof. Janicke is pure, unsupported attorney argument.  AGA

2    asserts, without citation to any record evidence or case law, that "[t]he PTO correctly recognized

3    that the claims were not restricted out of the '378 application, and thus the PTO never converted

4    the application to a divisional."  Dkt. No. 542 at 13.  In addition to being pure speculation, AGA's

5    assertion is incorrect.  First, there is no requirement that the PTO must have converted the

6    application to a divisional, and AGA cites none.  The applicant specifically designated the

7    application as a division in the Supplemental Preliminary Amendment.  Ex. 60, M-AGA 237083

8    ("***Due to the addition of these claims to this application, the present application is now a***

9    ***divisional application***.") (emphasis added).  AGA has not pointed to any regulation or law that

10   requires more or requires conversion by the PTO.  Second, twice the examiner specifically

11   referenced the Supplemental Preliminary Amendment in which the above statement was made –

12   once when he issued a restriction requirement on the claims added in that amendment (Ex. 61, M-

13   AGA 237086-90) and again in a written record of an interview with the applicant (Ex. 62, M-

14   AGA237233).  Third, neither the examiner nor the Board of Patent Appeals ever rejected any of

15   the claims of the '141 patent based on the claims of the '378 patent because the Patent Office

16   treated the application that led to the '141 patent as a divisional application protected by the "safe

17   harbor" of § 121.  Finally, the examiner actually temporarily issued an OTDP rejection of the

18   '141 patent claims based on the '957 patent, but, in response to the applicant reminding the

19   examiner of the restriction requirement in the earlier application, the examiner then removed that

20   OTDP rejection.  Ex. 64, at M-AGA 237098-99; Ex. 66, M-AGA237235-240.  By removing the

21   rejection, the examiner implicitly agreed that the application that led to the '141 patent was, in

22   substance, a divisional application.

23       Therefore, contrary to AGA's assertion, the '141 patent was issued off a divisional

24   application.  Thus, AGA's assertion that the "safe harbor" fails as a matter of law is flawed.  At a

25   minimum, the Court should hear Prof. Janicke's analysis as it will assist the Court in reaching its

26   conclusions.

27   / / /

28   / / /

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 16 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1

### 2.   Claims In The Parent Application Were Cancelled As A Result Of A Restriction Requirement, And Prof. Janicke Never "Admitted" Otherwise

2

3   AGA's next argument is quite tortured.  AGA admits that a restriction requirement

4   occurred during the prosecution of the '378 patent (Dkt. No. 542 at 14-16), but then suggests that

5   the examiner somehow silently retracted that requirement.  Similarly, although the applicant was

6   forced to elect certain claims as a result of the restriction requirement and the examiner

7   subsequently identified the non-elected claims as "withdrawn from consideration," AGA asserts

8   that the applicant was somehow free to pursue those claims in that application.  *Id.* AGA further

9   argues – again without support – that the withdrawn claims were voluntarily cancelled and, thus,

10  cannot be protected by the "safe harbor," even though the record is clear that the examiner

11  cancelled those claims in an Examiner's Amendment (which he is allowed to do only if the

12  claims were non-elected claims following a restriction requirement) in order to place the

13  application in condition for allowance.  *Id.*  AGA's arguments are flawed and certainly do not

14  support AGA's contention that the "safe harbor" fails as a matter of law.

15  With respect to claims 38-40 and 43 in the application that led to the '378 patent, AGA

16  concedes that these were non-elected claims after the examiner issued his restriction requirement

17  and that these claims were then properly withdrawn from consideration by the examiner. Dkt. No.

18  542 at 4-5.  AGA then argues that a later office action by the examiner somehow silently retracted

19  the restriction requirement, retracted the examiner's withdrawal of those claims, and then silently

20  rejected those claims without comment.  Dkt. No. 542 at 6.[1]  There is no support for this

21  contention in either fact or law.  In the office action referenced by AGA, the examiner never

22  substantively mentioned claims 38-40 or 43.  Ex. 54, M-AGA065124-27.  Under the mandate

23  from Congress, the examiner is prohibited from retracting a withdrawal of claims and then

24  rejecting those claims on the merits without providing an explanation.  35 U.S.C. §132(a).

25

---

26  [1] In fact, AGA states that "[c]laims 38-40 were examined and rejected."  Dkt. No. 542 at 16. However, this is plainly false.  There is no written explanation in the record that explains that the claims were examined; nor is there any statement giving detailed reasons for a rejection, as

27  required by § 132(a).  Again, such misleading statements by AGA establish that, at a minimum, Prof. Janicke's testimony will assist the Court in understanding the true facts surrounding the

28  prosecution of these patent applications.

Dechert LLP
Attorneys At Law
Silicon Valley

- 17 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1    Indeed, in the next action by the examiner, he does not identify claims 38-40 or 43 as rejected or

2    objected to.  Ex. 56, M-AGA065152-53.  Moreover, claims that are withdrawn from

3    consideration by the examiner can only be reinstated in the event that the requirement for

4    restriction is withdrawn or overruled.  37 C.F.R. 1.142(b) ("Claims to the invention or inventions

5    not elected, if not cancelled, are nevertheless withdrawn from further consideration by the

6    examiner by the election, subject however to reinstatement in the event the requirement for

7    restriction is withdrawn or overruled").  Therefore, those claims remained withdrawn from

8    consideration.  Thus, when the application was ready for allowance, the examiner issued his

9    Examiner's Amendment cancelling, among others, claims 38-40 and 43 to put the application in

10   condition for allowance.  Ex. 58, M-AGA065166-69.

11           Thus, contrary to AGA's attorney arguments, claims 38-40 and 43 were not voluntarily

12   cancelled; rather, they were cancelled as a direct result of the restriction requirement because

13   those claims were directed toward non-elected inventions.  Consequently, the applicant properly

14   added these claims verbatim to the '291 application and indicated that the application was

15   accordingly a divisional application.  *Compare* Ex. 60, M-AGA 237081-83 *with* Ex. 69, M-

16   AGA064990-91.  Specifically, the applicant stated, "***Due to the addition of these claims to this***

17   ***application, the present application is now a divisional application***."  Ex. 60, M-AGA 237083

18   (emphasis added).  Therefore, at a minimum, the "safe harbor" of § 121 must apply to immunize

19   these claims from AGA's assertion of OTDP.  Moreover, any claims of similar substantive scope

20   are also immunized, including claims directed to the non-elected "stent" species of the parent

21   application.  *Applied Materials*, 98 F.3d at 1568 ("A restriction requirement does not prohibit

22   subsequent amendments to the claims," rather, "the examiner's demarcation among the separate

23   inventions should be preserved") *citing Texas Instruments, Inc.*, 988 F.2d at 1179.

24           With respect to claim 37 of the application that led to the '378 patent, AGA's arguments

25   are equally flawed.  First, AGA asserts that claim 37 was never the subject of a restriction

26   requirement.  Dkt. No. 542 at 15.  This is not supported by the record.  Claim 37 was certainly

27   discussed in the restriction requirement of February 22, 1993.  Ex. 49, M-AGA065008-11.  In

28   that document, when the examiner stated that claim 37 was "currently" deemed generic, this was

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 18 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1   not a final determination. *Id*. In fact, the examiner later withdrew claim 37 from consideration,

2   evidently concluding that claim 37 was more properly categorized as being directed toward a

3   non-elected species. Ex. 52, M-AGA065090-94.[2]  Importantly, after this decision by the

4   examiner, claim 37 was never considered again on the merits. There were no written explanation

5   of rejections or objections to claim 37, and AGA has pointed to none. In fact, the applicant

6   specifically attempted to have claim 37 (and others) considered again (*i.e.*, removed from

7   "withdrawn" status), but the examiner declined. Ex. 55, M-AGA065138.

8         As with AGA's arguments concerning claims 38-40 and 43, AGA's assertion that the

9   applicant voluntarily cancelled claim 37 is equally flawed. As part of the Examiner's

10  Amendment accompanying the Notice of Allowability, the *examiner* cancelled that claim as being

11  directed to a non-elected species. Ex. 58, M-AGA065166-69. The applicant then promptly

12  added claim 37 to the next pending application, which he designated as a "divisional application"

13  – the very application that matured into the '141 patent. Thus, the resulting claim of the '141

14  patent (claim 1) is also protected by the "safe harbor" provision of § 121, as are substantively

15  similar claims in that patent. *Applied Materials*, 98 F.3d at 1568.

16        Prof. Janicke explains how the examiner forced claims out of the '653 application as a

17  result of the election after his restriction requirement. Ex. 38 at 11, ¶34. Prof. Janicke also

18  explained how the examiner cancelled the non-elected claims as part of his Examiner

19  Amendment. Ex. 38 at 5-6. Thus, contrary to AGA's misleading assertion, Prof. Janicke never

20  "admitted" that the claims were not cancelled due to a restriction requirement. Dkt. No. 542 at

21  14-15.

22                         *   *   *

23        Accordingly, there is no merit to AGA's assertion that the Court should preclude Prof.

24  Janicke's testimony because there is no merit to AGA's argument that the "safe harbor" fails as a

25  matter of law. To the contrary, the record establishes that the claims of the '141 patent are

26  immune from an OTDP attack under the "safe harbor" protection of § 121. Thus, if anything, the

27  _____

28  [2] Notably, there is no requirement for a written explanation for withdrawal of non-elected claims
    after an election following a restriction requirement. Such withdrawal is completely within the
    examiner's authority. 37 C.F.R. 1.142(b).

Dechert LLP
Attorneys At Law
Silicon Valley

- 19 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1   Court should dismiss AGA's entire OTDP defense as a matter of law.  At a minimum, if the

2   Court does not dismiss AGA's defense, Prof. Janicke's rebuttal testimony at trial will assist the

3   Court in analyzing the patent prosecution record and in determining whether the "safe harbor"

4   applies.  Certainly, AGA's request for the Court to rely only on the file histories and AGA's own

5   attorney argument should be denied, because AGA has shown that it intends to misconstrue those

6   complicated patent file histories.  Thus, if AGA's defense is not dismissed, Prof. Janicke's useful

7   testimony should be admitted.  If AGA believes Prof. Janicke's testimony is incorrect, AGA can

8   challenge it on cross-examination.  Thus, AGA's motion in limine should be denied in its

9   entirety.

10  **V.    CONCLUSION**

11         For the foregoing reasons, Medtronic respectfully requests that AGA's motion in limine

12  #11 be denied in its entirety.

13

14

    Dated: June 16, 2009                          Dechert LLP

15

16                                                By:   Joshua C. Walsh-Benson
                                                        James J. Elacqua
17                                                      Noemi C. Espinosa
                                                        Andrew N. Thomases
18                                                      Michelle W. Yang
                                                        Hieu H. Phan
19                                                      Joshua C. Walsh-Benson

20                                                Attorneys for Plaintiffs
                                                  MEDTRONIC, INC., MEDTRONIC USA,
21                                                INC., AND MEDTRONIC VASCULAR,
                                                  INC.
22

23

24

25

26

27

28

Dechert LLP
Attorneys At Law
Silicon Valley

- 20 -

MEDTRONIC'S OPP TO AGA'S MOTION *IN LIMINE* TO
"SAFE HARBOR" OF § 121 (#11);
CASE NO. C07-00567 MMC

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that all counsel of record, who are deemed to have consented to electronic

3 service, are being served this 16th day of June, 2009, with an electronic copy of this document via

4 the Court's CM/ECF system.

5        Steven D. Hemminger, Esq.   steve.hemminger@alston.com

6        Michael S. Connor, Esq.     mike.connor@alston.com

7        Lance A. Lawson, Esq.      lance.lawson@alston.com

8        Brian F. McMahon, Esq.    brian.mcmahon@alston.com

9        Marissa R. Ducca, Esq.     marissa.ducca@alston.com

10

11                         By:   Joshua C. Walsh-Benson
                           Joshua C. Walsh-Benson

12                         Attorney for Plaintiffs

13                         MEDTRONIC, INC., MEDTRONIC USA,
                        INC., AND MEDTRONIC VASCULAR,

14                         INC.

15

16

17 13481853

18

19

20

21

22

23

24

25

26

27

28

Dechert LLP
Attorneys At Law
Silicon Valley

- 21 -