1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MEDTRONIC, INC., a Minnesota
corporation,

                    Plaintiff,

v.

AGA MEDICAL CORPORATION, a
Minnesota corporation,

                    Defendant.

Case No. C07-00567

**JURY INSTRUCTIONS**

# TABLE OF CONTENTS

**Page**

INSTRUCTION NO. 1 - INTRODUCTION ............................................................... 1

INSTRUCTION NO. 2 - JURIES' DUTIES ............................................................... 2

INSTRUCTION NO. 3 - BURDENS OF PROOF ...................................................... 3

INSTRUCTION NO. 4 - EVIDENCE DEFINED ....................................................... 4

INSTRUCTION NO. 5 - WHAT IS NOT EVIDENCE .............................................. 5

INSTRUCTION NO. 6 - DIRECT AND CIRCUMSTANTIAL EVIDENCE................. 6

INSTRUCTION NO. 7 - CREDIBILITY OF WITNESSES....................................... 7

INSTRUCTION NO. 8 - EXPERT WITNESSES....................................................... 8

INSTRUCTION NO. 9 - DEPOSITION TESTIMONY .............................................. 9

INSTRUCTION NO. 10 - STIPULATIONS OF FACT ............................................ 10

INSTRUCTION NO. 11 - REDACTED EXHIBITS ................................................. 11

INSTRUCTION NO. 12 - DEMONSTRATIVE EXHIBITS...................................... 12

INSTRUCTION NO. 13 - USE OF INTERROGATORIES ...................................... 13

INSTRUCTION NO. 14 - SUMMARY OF CONTENTIONS .................................. 14

INSTRUCTION NO. 15 - SUMMARY OF PATENT ISSUES ................................. 16

INSTRUCTION NO. 16 - THE ASSERTED CLAIMS............................................. 17

INSTRUCTION NO. 17 - HOW A CLAIM DEFINES WHAT IT COVERS.............. 18

INSTRUCTION NO. 18 - INDEPENDENT AND DEPENDENT CLAIMS................ 20

INSTRUCTION NO. 19 - APPARATUS AND METHOD CLAIMS......................... 21

INSTRUCTION NO. 20 - CONSTRUCTION OF CLAIMS...................................... 22

INSTRUCTION NO. 21 - PATENT INFRINGEMENT - GENERALLY .................. 24

INSTRUCTION NO. 22 - DIRECT INFRINGEMENT - KNOWLEDGE OF
PATENT OR INTENT TO INFRINGE IS IMMATERIAL .......................... 25

INSTRUCTION NO. 23 - LEVEL OF ORDINARY SKILL IN THE ART................. 26

INSTRUCTION NO. 24 - DIRECT INFRINGEMENT.............................................. 27

# TABLE OF CONTENTS
## (continued)

Page

INSTRUCTION NO. 25 - CONTRIBUTORY INFRINGEMENT .............................................. 28

INSTRUCTION NO. 26 - INFRINGEMENT THROUGH THE SUPPLY OF
   COMPONENTS OF THE PATENTED INVENTION TO ANOTHER
   COUNTRY ........................................................................................................... 29

INSTRUCTION NO. 27 - CLAIM CONSTRUCTION ON VALIDITY ISSUES ..................... 30

INSTRUCTION NO. 28 - PRIOR ART DEFINED ......................................................... 31

INSTRUCTION NO. 29 - DATE OF INVENTION ........................................................ 33

INSTRUCTION NO. 30 - ANTICIPATION .................................................................. 34

INSTRUCTION NO. 31 - OBVIOUSNESS ................................................................. 35

INSTRUCTION NO. 32 - SCOPE AND CONTENT OF THE PRIOR ART ........................... 37

INSTRUCTION NO. 33 - DIFFERENCES OVER THE PRIOR ART .................................. 38

INSTRUCTION NO. 34 - LEVEL OF ORDINARY SKILL IN THE ART ............................. 39

INSTRUCTION NO. 35 - ADDITIONAL CONSIDERATIONS .......................................... 40

INSTRUCTION NO. 36 - DAMAGES - BURDEN OF PROOF ......................................... 41

INSTRUCTION NO. 37 - REASONABLE ROYALTY - DEFINITION .................................. 42

INSTRUCTION NO. 38 - TIMEFRAMES FOR CALCULATING DAMAGES ........................ 45

INSTRUCTION NO. 39 - CALCULATING THE ROYALTY .............................................. 46

INSTRUCTION NO. 40 - DUTY TO DELIBERATE ...................................................... 47

INSTRUCTION NO. 41 - COMMUNICATION WITH COURT .......................................... 48

INSTRUCTION NO. 42 - RETURN OF VERDICT ........................................................ 49

JURY INSTRUCTIONS
CASE NO. C07-00567

# INSTRUCTION NO. 1

## INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

I will explain some rules that you must use in evaluating particular testimony and evidence.

And last, I will explain the rules you must follow during your deliberations in the jury room.

Please listen very carefully to everything I say.

JURY INSTRUCTIONS
CASE NO. C07-00567

**INSTRUCTION NO. 2**

**JURIES' DUTIES**

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you and apply it to the facts. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

All of the instructions are important, and you should consider them together as a whole. They are all important.

## INSTRUCTION NO. 3

### BURDENS OF PROOF

In any legal action, facts must be proved by a required standard of evidence known as the "burden of proof." In a patent case such as this, there are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.

The first burden of proof standard is the preponderance of the evidence standard. In this case, Medtronic is charging AGA with patent infringement and has the burden of proving its patent infringement and damages claims by a preponderance of the evidence. When a party has the burden of proof on any claim by a preponderance of the evidence, it means that you must be persuaded by the evidence that the claim is more likely true than not true.

The second burden of proof standard is the clear and convincing evidence standard. In this case, AGA has asserted that the Asserted Claims in Medtronic's patents are invalid and has the burden of proving that the Asserted Claims are invalid by clear and convincing evidence. When a party has the burden of proving any claim or affirmative defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you, therefore, should put it out of your mind in considering whether or not Medtronic or AGA have met their burdens of proof.

3

## INSTRUCTION NO. 4

### EVIDENCE DEFINED

You must make your decision based only on the evidence that you see and hear here in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

The evidence you are to consider in deciding what the facts are in this case includes only:

1. the sworn testimony of the witnesses,

2. the exhibits which are received into evidence, and

3. any facts to which the lawyers have agreed and any facts that I have judicially noticed.

4

**INSTRUCTION NO. 5**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

4.      Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

5

## INSTRUCTION NO. 6

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is proof of one or more facts from which you could find another fact.  If you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

1

**INSTRUCTION NO. 7**

2

**CREDIBILITY OF WITNESSES**

3      You are the sole judges of the credibility of the witnesses.  In deciding the facts in this

4  case, you may have to decide which testimony to believe and which testimony not to believe. You

5  may believe everything a witness says, or part of it, or none of it. Proof of a fact does not

6  necessarily depend on the number of witnesses who testify about it.

7      In considering the testimony of any witness, you may take into account:

8      1.     the opportunity and ability of the witness to see or hear or know the things testified

9  to;

10     2.     the witness's memory;

11     3.     the witness's manner while testifying;

12     4.     the witness's interest in the outcome of the case and any bias or prejudice;

13     5.     whether other evidence contradicted the witness's testimony;

14     6.     the reasonableness of the witness's testimony in light of all the evidence; and

15     7.     any other factors that bear on believability.

16     The weight of the evidence as to a fact does not necessarily depend on the number of

17  witnesses who testify about it.  What is more important is how believable the witnesses were, and

18  how much weight you think their testimony deserves.

19

20

21

22

23

24

25

26

27

28

7

1

## INSTRUCTION NO. 8

2

### EXPERT WITNESSES

3        When knowledge of technical subject matter may be helpful to the jury, a person who has

4    special training or experience in that technical field—called an expert witness—is permitted to

5    state his opinion on those technical matters and the reasons for that opinion. However, you are

6    not required to accept that opinion.

7        Expert testimony should be judged just like any other testimony. You may accept it or

8    reject it, and give it as much weight as you think it deserves, considering the witness's education

9    and experience, the reasons given for the opinion, and all the other evidence in the case.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTION NO. 9**

2

**DEPOSITION TESTIMONY**

3      A deposition is the sworn testimony of a witness taken before trial. The witness is placed

4 under oath to tell the truth and lawyers for each party may ask questions. The questions and

5 answers are recorded.  When a person is unavailable to testify at trial, the deposition of that

6 person may be used at the trial.

7      During the trial, certain testimony was presented to you by the reading of a deposition

8 transcript or the playing of videotape excerpts from a deposition.  This testimony is entitled to the

9 same consideration you would give it had the witnesses personally appeared in court.  Like the

10 testimony of a live witness, the statements made in a deposition are made under oath and are

11 considered evidence which may be used to prove particular facts.

12      Like the testimony of a live witness, it is up to you to determine the credibility of the

13 deposition testimony.  For example, if a witness's deposition testimony is inconsistent with live

14 testimony, you can take this into account when evaluating the witness's credibility.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 10**

**STIPULATIONS OF FACT**

During the course of the trial, you heard that certain stipulations of facts had been agreed to between the parties.  A stipulation of fact is an agreement between the parties that a certain fact is true.  You must regard such agreed facts as true.

The parties have agreed to certain facts that I will now read to you.  You should therefore treat these facts as having been proved.

1.  Medtronic, Inc. is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.

2.  AGA Medical Corporation is a Minnesota corporation with its principal place of business in Plymouth, Minnesota.

3.  The patents-in-suit are owned by Medtronic, Inc.

4.  U.S. Patent No. 5,067,957 was issued by the United States Patent & Trademark Office ("PTO") on November 26, 1991 and identifies James Jervis as the sole inventor.

5.  U.S. Patent No. 6,306,141 was issued by the PTO on October 23, 2001 and identifies James Jervis as the sole inventor.

6.  Both of the patents-in-suit have an effective filing date of October 14, 1983.

7.  U.S. Patent No. 5,067,957 expired on May 19, 2004.

JURY INSTRUCTIONS
CASE NO. C07-00567

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 11

### REDACTED EXHIBITS

During the course of the trial, you may have noticed that some documents have been partially redacted, meaning that some parts have been omitted. These parts have been omitted by agreement of the parties or at the request of the Court. In considering the exhibits, you should consider only that which has been introduced into evidence. You should not try to guess or make any assumptions regarding any redacted portions of exhibits. Instead, you should consider any exhibits containing redactions just as you would consider any other exhibit in this case and you should not draw any inference from the fact that some portions of the documents are omitted.

11

1

2

3

4

5

6

7

8

9

10

## INSTRUCTION NO. 12

### DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of those exhibits were admitted as evidence. You will have those admitted exhibits available to you in the jury room for your deliberations. The remainder of the exhibits (including charts and animations) were offered to help illustrate the testimony of the various witnesses and the documents that have been admitted into evidence. Those illustrative exhibits, called demonstrative exhibits, have not been admitted, are not evidence, and should not be considered as evidence. It is the underlying documents and testimony of the witnesses that you heard when you saw the demonstrative exhibits that is the evidence in this case.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INSTRUCTION NO. 13

2

### USE OF INTERROGATORIES

3        Evidence was presented to you in the form of answers of one of the parties to written

4   interrogatories submitted by the other side. These answers were given in writing and under oath,

5   before the actual trial, in response to questions that were submitted in writing under established

6   court procedures. You should consider the answers, insofar as possible, in the same way as if they

7   were made from the witness stand.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 14**

**SUMMARY OF CONTENTIONS**

I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Medtronic contends that AGA has infringed Medtronic's patents by making, selling, using, or offering to sell products that Medtronic contends are covered by certain claims of Medtronic's patents. The products that are accused of infringement are the AMPLATZER® Septal Occluder, the Multi-Fenestrated Septal Occluder, the PFO Occluder, the Duct Occluder I, the Duct Occluder II, the Membranous VSD Occluder, the Muscular VSD Occluder, the P.I. Muscular VSD Occluder, the Vascular Plug, the Vascular Plug II, and the Vascular Plug III, and any delivery systems used in conjunction with these products. For convenience, I will refer to these products and corresponding delivery systems as the "Accused Products."

Medtronic contends that AGA has infringed Claims 1, 2, 5, 17, 18, and 21 of the '141 patent and has infringed Claims 1, 5, 6, 10, 11, 16, and 17 of the '957 patent. Collectively, I will refer to these claims as the "Asserted Claims." While there are other claims in these patents, these are the only claims that are at issue in this case.

Specifically, Medtronic contends that AGA has directly infringed Claim 18 of the '141 patent with respect to AGA's Occluder products. I will explain the law of direct infringement in a few minutes.

Medtronic also contends that AGA has contributorily infringed the Asserted Claims of the '141 patent with respect to AGA's Occluder products. In addition, Medtronic contends that AGA has contributorily infringed Claims 1 and 17 of the '141 patent with respect to AGA's Vascular Plug products. Medtronic also contends that AGA has contributorily infringed the Asserted Claims of the '957 patent with respect to certain AGA Occluder and Vascular Plug products. I will explain the law of contributory infringement in a few minutes.

Medtronic also contends that AGA is liable for infringement through the supply of components of the patented invention of the '957 patent to another country. I will explain the law of this type of infringement in a few minutes.

JURY INSTRUCTIONS
CASE NO. C07-00567

1    Finally, Medtronic contends that as a result of AGA's infringement, AGA owes damages

2  in the form of a reasonable royalty.

3    With respect to all of the Asserted Claims of Medtronic's patents, AGA denies that it has

4  infringed and contends that Medtronic cannot prove that AGA has directly infringed,

5  contributorily infringed, or infringed through the supply of components of the patented invention

6  of the '957 patent to another country.

7    In addition, AGA contends that the Asserted Claims are invalid because they are

8  anticipated and/or obvious in view of the prior art, including prior public use. Invalidity is a

9  defense to liability for infringement. Medtronic contends that AGA cannot prove that any claim

10 is invalid. I will explain the law of anticipation and obviousness in a few minutes.

11   Your job is to decide whether any of the Asserted Claims have been infringed and whether

12 any of the Asserted Claims are invalid. If you decide that any claim of the patents has been

13 infringed and is not invalid, you will then need to decide the amount of money damages that

14 should be awarded to Medtronic. If you determine that the Asserted Claims are not infringed or

15 are invalid, AGA is not liable for any money damages.

16

17

18

19

20

21

22

23

24

25

26

27

28

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 15

### SUMMARY OF PATENT ISSUES

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following three main issues:

      1.      Whether Medtronic has proved that AGA infringed (either directly or indirectly) any of the Asserted Claims.

      2.      Whether AGA has proved that any of the Asserted Claims are invalid.

      3.      If you find any of the Asserted Claims to be infringed and not invalid, what amount of damages, if any, Medtronic has proved.

16

**INSTRUCTION NO. 16**

**THE ASSERTED CLAIMS**

Before you can decide whether AGA has infringed the Asserted Claims or whether any of the Asserted Claims are invalid, you will have to understand the patent claims. The patent claims are the numbered sentences at the end of the patents.

The patent claims involved here are Claims 1, 2, 5, 17, 18 and 21 of the '141 patent and Claims 1, 5, 6, 10, 11, 16 and 17 of the '957 patent. As I stated previously, we refer to these as the Asserted Claims.

The claims are intended to define, in words, the boundaries of the invention. Only the claims of the patents can be infringed. Neither the written description nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

JURY INSTRUCTIONS
CASE NO. C07-00567

**INSTRUCTION NO. 17**

**HOW A CLAIM DEFINES WHAT IT COVERS**

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or less requirements. The coverage of a patent is assessed claim-by-claim.

In patent law, the requirements of a claim are often referred to as "claim requirements." When a thing (such as a product) or a method (such as a process) meets all of the requirements of a claim, the claim is said to "cover" that thing or method, and that thing or method is said to "fall within the scope of that claim." In other words, a claim covers a product or process where each of the claim requirements are present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you. Some terms used in a claim may have a specific meaning in patent law. For example, a claim that reads: "A product comprising a seat and legs" covers all products that have both a seat and legs. The word "comprising" is interpreted the same as "including the following but not excluding others" or "including but not limited to." The word "comprising" in this claim is a special word in patent law meaning that the claim covers all products that have a seat and legs, regardless of whether or not they also have additional features. For example, if a patent claim covers a table "comprising" four legs, a table with five legs still infringes the claim. The extra leg does not avoid infringement. The claims in this case are more complicated than this simple example, but the same principles apply.

18

1    By understanding the meaning of the words in the claim and by understanding that the

2  words in a claim set forth the requirements that must be met in order to be covered by that claim,

3  you will be able to understand the scope of coverage for each claim.  Once you understand what

4  each claim covers, then you are prepared to decide the issues that you are asked to decide, such as

5  infringement and invalidity.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 18**

**INDEPENDENT AND DEPENDENT CLAIMS**

This case involves two types of patent claims:  independent claims and dependent claims. An independent claim does not refer to any other claim of the patent and sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine its scope.  In this case, the following claims are independent claims:

      1.      Claims 1 and 18 of the '141 patent; and

      2.      Claims 1, 5, 10 and 16 of the '957 patent.

The remaining claims at issue in this case are dependent claims.  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim to which it refers.

For example, Claim 5 of the '957 patent is an independent claim.  You know this because this claim mentions no other claim.  Thus, the words of this claim are read by themselves in order to determine what the claim covers.  Claim 6 of the '957 patent, on the other hand, is a dependent claim that relates back to Claim 5.  Therefore, the words of Claim 5 and Claim 6 must be read together in order to determine what the dependent claim, Claim 6, covers.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 19

### APPARATUS AND METHOD CLAIMS

Patent claims are classified into two categories depending on what they claim—apparatus claims and method claims.  A method claim recites a series of steps or acts for performing a function or accomplishing a result, while an apparatus claim recites a tangible item.

The claims of the '141 patent are apparatus claims and the claims of the '957 patent are method claims.

**INSTRUCTION NO. 20**

**CONSTRUCTION OF CLAIMS**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you as correct and use them when you decide whether any claim of the patents has been infringed and whether any claim is invalid. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

I will now tell you the meanings of the following words and groups of words from the patent claims.

1.      the phrase "**shape memory alloy which displays stress-induced martensite behavior at body temperature**" means "a shape memory alloy that actually exhibits stress-induced martensite at body temperature."

2.      the phrase "**pseudoelastic shape memory alloy . . . display/displays/displaying reversible stress-induced martensite at about body/human body temperature**" means "pseudoelastic shape memory alloy . . . that exhibits reversible stress-induced martensite at about body/human body temperature."

3.      the term "**stent**" means "a supporting device."

4.      the term "**guide wire**" means "a wire or catheter that assists in positioning another device."

5.      the term "**hollow restraining member**" means "a hollow device that prevents the transformation of the shape memory alloy element back into its original shape."

6.      the term "**hollow placement device**" means "a hollow device for positioning an object within the body."

7.      the term "**stress induced martensite**" means "martensite that forms from austenite due to stress."

8.      the terms "**reversible stress induced martensite**" and "**reversible stress induced martensitic state**" mean "stress induced martensite that can revert to austenite."

1    9.    the terms **"extruding"** and **"extruded"** mean "forced out."

2    10.    the terms **"restraining means"** and **"restraint"** mean "a device component that

3   prevents the transformation of the shape memory alloy element back into its original shape."

4    You should give the rest of the words in the claims their ordinary meaning in the context

5   of the patent specification and prosecution history.

JURY INSTRUCTIONS
CASE NO. C07-00567

**INSTRUCTION NO. 21**

**PATENT INFRINGEMENT - GENERALLY**

I will now instruct you how to decide whether or not AGA infringes any of the Asserted Claims. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another.

In this case, there are three possible ways that a claim may be infringed. I will explain the requirements for each of these three types of infringement to you. The three types of infringement are called: (1) direct infringement; (2) contributory infringement; and (3) infringement through the supply of components of the patented invention to another country.

In this case, Medtronic has alleged that AGA directly infringes the Asserted Claims of the '141 patent. In addition, Medtronic has alleged that certain of AGA's customers, namely physicians, directly infringe the Asserted Claims of the '141 and '957 patents, and that AGA is liable for contributing to that direct infringement by physicians. Medtronic also has alleged that AGA is liable for infringement of the '957 patent through the supply of components of the patented invention to another country.

In order to prove infringement, Medtronic must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 22**

**DIRECT INFRINGEMENT - KNOWLEDGE OF PATENT OR INTENT TO INFRINGE
IS IMMATERIAL**

In this case, Medtronic asserts that AGA has directly infringed the '141 patent. AGA would be liable for directly infringing Medtronic's '141 patent if you find that Medtronic has proven that it is more likely than not that AGA has made, used, offered to sell, or sold the invention defined in at least one Asserted Claim of Medtronic's patent.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 23**

**LEVEL OF ORDINARY SKILL IN THE ART**

The person of ordinary skill is presumed to know all relevant prior art. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

Medtronic contends that the level of ordinary skill in the art in 1983 was that of a person who possessed a degree in material science or a related engineering degree and had some familiarity with implantable medical devices in 1983. AGA contends that the level of ordinary skill in the art in 1983 was that of a person that either had a Bachelors of Science degree in Mechanical Engineering or in Metallurgy and Materials Science, and had at least one year of experience working with shape memory alloys, or had read and understood at least one of many review articles in the art that were available in 1983.

It is for you to decide what the level of ordinary skill was at the time the inventions were made based on the evidence presented to you in this case. In doing so, you may consider any evidence relating to this issue that is introduced at trial, including in particular any evidence introduced of:

    1.    the levels of education and experience of persons working in the field;

    2.    the types of problems encountered in the field at the time the inventions were made;

    3.    the sophistication of the technology in the field at the time the inventions were made;

    4.    the teachings and disclosures of prior art references such as patents and publications; and

    5.    the teachings and disclosures of any references that, while not prior art to the inventions, nonetheless contain teachings or disclosures of what the level of ordinary skill in the art may have been at the time the inventions were made.

26

**INSTRUCTION NO. 24**

**DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the asserted patent claim. I have already made this decision, and I have already instructed you as to the meaning of the claims. The second step is to decide whether AGA has made, used, sold or offered for sale within the United States a product covered by any Asserted Claim of the '141 patent. You, the jury, make this decision.

To determine direct infringement of the Asserted Claims of the '141 patent, which are apparatus claims, you must compare each of the Accused Products with each Asserted Claim in the '141 patent, using my instructions as to the meaning of the patent claims. The same element of the Accused Product may satisfy more than one element of a claim.

A claim is directly infringed only if AGA's Accused Products include each and every requirement in that patent claim. If any one of AGA's Accused Products does not contain one or more requirements recited in an Asserted Claim of the '141 patent, then that AGA Accused Product does not directly infringe that claim.

**INSTRUCTION NO. 25**

**CONTRIBUTORY INFRINGEMENT**

Medtronic asserts that AGA has contributed to another's infringement.  To show contributory infringement, it is not necessary for Medtronic to show that AGA has directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by another, then AGA cannot have contributed to the infringement of Medtronic's patents.  However, Medtronic can prove direct infringement by others through either direct or circumstantial evidence.

For each asserted apparatus claim of the '141 patent, Medtronic must show that someone other than AGA makes or uses the claimed invention with the AGA Accused Products in the United States.  For each asserted method claim of the '957 patent, Medtronic must show that someone other than AGA performs all of the method steps of the claimed invention using AGA's Accused Products in the United States.  If you find that someone other than AGA has directly infringed the '957 or '141 patents, then contributory infringement exists if:

    (1)    AGA sold or offered for sale;

    (2)    a material component of the patented invention that is not a staple article of commerce capable of substantial non-infringing use;

    (3)    with knowledge of the patent and knowledge that the component was especially made or adapted for use in an infringing product or method.

A "staple article of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

With respect to the knowledge requirement, Medtronic must show that AGA knew of Medtronic's patents.  Evidence that AGA knew of Medtronic's patents can be shown through AGA's direct knowledge, or through the knowledge of AGA's lawyers.

**INSTRUCTION NO. 26**

**INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS OF THE PATENTED INVENTION TO ANOTHER COUNTRY**

Medtronic asserts that AGA has infringed the '957 patent under a statutory provision involving the supply of components of an invention covered by at least one of the Asserted Claims of the '957 patent from the United States to a foreign country.

To prove infringement under this theory, Medtronic must present evidence showing that:

1.    AGA actually supplied the components from the United States to a foreign country or caused them to be supplied from the United States to a foreign country;

2.    AGA knew that the components were especially made or especially adapted for use in a method that infringes at least one of the Asserted Claims of the '957 patent;

3.    Those components are not staple articles or commodities of commerce suitable for substantial non-infringing use;

4.    The components are uncombined in whole or in part; and

5.    AGA intended for the components to be combined outside of the United States in a manner that would have infringed the '957 patent if such combination occurred within the United States.

It is not necessary for you to find that the components actually were combined into an infringing method, as long as you find that AGA intended the components to be combined into a method that would have infringed the '957 patent if they had been combined in the United States.

## INSTRUCTION NO. 27

## CLAIM CONSTRUCTION ON VALIDITY ISSUES

As I stated earlier, claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses. Therefore, for purposes of evaluating validity, you must use the same interpretation I previously gave you for purposes of evaluating infringement.

1

**INSTRUCTION NO. 28**

2

**PRIOR ART DEFINED**

3      Prior art includes any of the following items received into evidence during trial:

4      1.      a prior use of the claimed invention by others in the United States before the date

5              of invention of Medtronic's patents;

6      2.      printed publications before the date of invention of Medtronic's patents;

7      3.      an issued United States patent that was based on a patent application filed before

8              the date of invention of Medtronic's patents.

9      To establish "prior use" of a claimed invention, AGA must prove by clear and convincing

10  evidence that another person or entity used each and every requirement of the claim and such use

11  was accessible to the public before the date of invention.  Here the "public" does not refer to the

12  general public; rather, it means persons of skill in the art.  In addition, the use must be accessible

13  to such persons of skill in the art.  The "accessibility" requirement may be satisfied by work done

14  openly and in the ordinary course of business activities.  The fact that a building is publicly

15  accessible is not necessarily sufficient to meet the "accessibility" requirement, however.  Rather,

16  evidence of access to the actual work or use must be shown.  One who performs or has access to

17  an alleged prior use need not appreciate or recognize the claimed invention.

18      Furthermore, testimony concerning a witness's own prior activities must be corroborated.

19  The need for corroboration exists even though the person testifying concerning the invalidating

20  activity does not have an interest in the outcome of the litigation.

21      Corroborating evidence can take many forms and may be either direct or circumstantial.

22  Documentary evidence that is contemporaneous with the prior activities may serve to corroborate

23  those activities.  Oral testimony may also serve to corroborate the prior activities.  In assessing

24  corroboration by oral testimony, you should consider the following factors:

25      1.      the relationship between any corroborating witness and the alleged prior user;

26      2.      the time period between the event and trial;

27      3.      the interest of any corroborating witness in the subject matter of this suit;

28      4.      contradiction or impeachment of the witness' testimony;

31

5.   the extent and details of the corroborating testimony;

6.   the witness' familiarity with the subject matter of the patented invention and the prior use;

7.   the probability that a prior use could occur considering the state of the art at the time; and

8.   the impact of the invention on the industry, and the commercial value of its practice.

A "printed publication" is considered "publicly accessible" upon a showing that the document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence can locate it. The document need not be available or accessible to the public as a whole, only those members of the public who would be interested in its contents.  If a document only indicates a month and year, the date of public accessibility is the last day of that month unless AGA established an earlier date of "public accessibility."

JURY INSTRUCTIONS
CASE NO. C07-00567

**INSTRUCTION NO. 29**

**DATE OF INVENTION**

The law presumes that the date of invention is the date of the filing of the earliest patent application in the chain of patents. In this case, that date is October 14, 1983.

However, the date of invention can be an earlier date if Medtronic proves by a preponderance of the evidence that the inventor conceived of the invention earlier and that he or his attorney worked diligently to reduce the invention to practice, for example, by working diligently toward getting a patent application on file with the Patent Office.

"Conception" is the mental part of an inventive act—in other words, the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that a person of ordinary skill in the art of the technology would be able to reduce the invention to practice without extensive research or experimentation. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

An inventor's prior conception must be proven by corroborating evidence, such as by showing contemporaneous disclosures.

To be diligent, constant work toward filing the patent application is not required, and the inventor or his attorney need not spend all their time devoted to drafting the patent application. So long as they are doing the things reasonably necessary to get the application on file, then they were diligent even if they did not actually work on the application each day. It is not necessary that an inventor or his attorney should drop all other work and concentrate on the particular application involved; and if the attorney has a reasonable backlog of work which he takes up in chronological order and carries out expeditiously, that is sufficient. An attorney's work on related patent applications may be considered reasonable diligence.

JURY INSTRUCTIONS
CASE NO. C07-00567

**INSTRUCTION NO. 30**

**ANTICIPATION**

A patent claim is invalid if the claimed invention was not new.  For a claim to be invalid because it is not new, AGA must show by clear and convincing evidence that all of the requirements of a claim were present in a single "prior use," as I have defined that term for you, or were described in a single publication or patent that predates the claimed invention.  In patent law, these publications or patents are called "prior art references."  If a patent claim was not new, we say it is "anticipated" by either a prior use or a prior art reference.

AGA contends that the Asserted Claims of Medtronic's patents are invalid in view of the following:

- The work performed by Dr. Andrew Cragg and his colleagues, including Mr. Joseph Rysavy, at the University of Minnesota

- Cragg, *et al., A New Percutaneous Vena Cava Filter*, American Journal of Roentgenology ("Cragg II")


The description in the prior art reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the art looking at that one reference would be able to make and use the claimed invention without undue experimentation.

You may not combine two or more items of prior art to find anticipation.

34

**INSTRUCTION NO. 31**

**OBVIOUSNESS**

A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the art at the time of the invention. This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim, a person of ordinary skill in the art who knew about all of this prior art would have come up with the claimed invention.

In evaluating whether such a claim would have been obvious, you may consider whether AGA has identified a reason that would have prompted a person of ordinary skill in the art to combine the elements or concepts from the prior art in the same way as the claimed invention. There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.

You must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the art at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

AGA contends that the Asserted Claims are invalid in view of at least one of the following:

- Japanese Patent Application S56-144326 to Miyauchi *et al.* ("Miyauchi") in combination with Cragg *et al., Nonsurgical Placement of Arterial Endoprostheses: A New Technique Using Nitinol Wire*, Radiology ("Cragg I")

35

- Miyauchi in combination with U.S. Patent No. 4,512,338 to Balko ("Balko")

- Miyauchi in combination with Palestrant, et al., *Comparative In Vitro Evaluation of the Nitinol Inferior Vena Cava Filter*, Radiology ("Palestrant")

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions. First, you must decide the level of ordinary skill in the art that someone would have had at the time the claimed invention was made. Second, you must decide the scope and content of the prior art. Third, you must decide what difference, if any, existed between the claimed invention and the prior art. Finally, you must determine whether there are certain additional considerations relating to obviousness or non-obviousness of the invention, which I will explain in a moment.

You must make this determination separately for each of the inventions described in each of the Asserted Claims. I will now explain each of the four factors in more detail.

36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 32

### SCOPE AND CONTENT OF THE PRIOR ART

In arriving at your decision on the issue of whether or not the invention disclosed by an individual claim is obvious to a person of ordinary skill in the art, you must first determine the scope and content of the prior art at issue.

You must determine what is the prior art that may be considered in determining whether any claim of Medtronic's patents is obvious. I have already defined what constitutes a "prior art reference." A prior art reference may be considered if it discloses information designed to solve the same problems faced by the inventor or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problems faced by the inventors.

Once you decide whether or not specific references are prior art, you must also decide what those references would have disclosed or taught to one having ordinary skill in the art of technology of the patent at the time the inventions were made.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 33**

**DIFFERENCES OVER THE PRIOR ART**

In reaching your conclusion as to whether or not any of the Asserted Claims would have been obvious at the time the claimed invention was made, you should consider any difference or differences between the combinations on which AGA relies and the claimed requirements.

Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it. A patent claim is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art.

**INSTRUCTION NO. 34**

**LEVEL OF ORDINARY SKILL IN THE ART**

The third question you must answer in determining whether the inventions were obvious at the time they were made is what was the level of ordinary skill in the art at the time. Earlier I explained that it is for you to decide what the level of ordinary skill was at the time the inventions were made based on the evidence presented to you in this case.

## INSTRUCTION NO. 35

### ADDITIONAL CONSIDERATIONS

In making your decision as to the obviousness or non-obviousness of the claimed invention, you should consider any of the following factors that you find have been shown by the evidence:

1.  commercial success of a product due to the merits of the claimed invention;

2.  a long felt need for the solution provided by the claimed invention;

3.  unsuccessful attempts by others to find the solution provided by the claimed invention;

4.  copying of the claimed invention by others;

5.  unexpected and superior results from the claimed invention;

6.  acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

7.  the inventions proceeded in a direction contrary to accepted wisdom in the field;

8.  other evidence tending to show nonobviousness;

9.  other evidence tending to show obviousness.

The presence of any of factors 1-8 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made. The presence of factor 9 may be considered by you as an indication that the claimed invention would have been obvious at such time. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 36**

**DAMAGES – BURDEN OF PROOF**

Now I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that AGA infringed any valid Asserted Claim, you must then determine the amount of money damages to be awarded to Medtronic to compensate it for the infringement.

The amount of those damages must be adequate to compensate Medtronic for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Medtronic has the burden to persuade you of the amount of its damages. You should award only those damages that Medtronic more likely than not suffered. While Medtronic is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Medtronic is not entitled to damages that are remote or speculative.

**INSTRUCTION NO. 37**

**REASONABLE ROYALTY - DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at the time when the infringement first began. For this case, assume that the hypothetical negotiation would have occurred in February 1998.

In considering this hypothetical negotiation, you should focus on what the expectations of Medtronic and AGA would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must also assume that both parties believed that the patents were valid and infringed. In addition, you must assume that Medtronic and AGA were willing to enter into an agreement. Your role is to determine what that agreement would have been. The measure of damages is what royalty would have resulted from the hypothetical negotiation, and not simply what royalty either party would have preferred.

In this trial, you have heard evidence of things that happened after the allegedly infringing sales first began. That evidence can be considered only to the extent that that evidence aids in you assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits AGA made may aid you in determining the anticipated profits at the time of the hypothetical negotiation, you may not limit or increase the royalty based on the actual profits AGA made.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1.    Any royalties received by Medtronic for the licensing of the patents-in-suit, proving or tending to prove an established royalty.

2.    The rates paid by AGA to license other patents comparable to the '141 and '957 patents.

JURY INSTRUCTIONS
CASE NO. C07-00567

1        3.      The nature and scope of the license, as exclusive or non-exclusive, or as restricted

2  or non-restricted in terms of its territory or with respect to whom the manufactured product may

3  be sold.

4        4.      Medtronic's established policy and marketing program to maintain its right to

5  exclude others from using the patented invention by not licensing others to use the invention, or

6  by granting licenses under special conditions designed to preserve that exclusivity.

7        5.      The commercial relationship between Medtronic and AGA, such as whether or not

8  they are competitors in the same territory in the same line of business.

9        6.      The effect of selling the patented product in promoting sales of other products of

10  AGA; the existing value of the invention to Medtronic as a generator of sales of its non-patented

11  items; and the extent of such collateral sales.

12        7.      The duration of the '141 and '957 patents and the term of the license.

13        8.      The established profitability of the products made under the '141 and '957 patents;

14  their commercial success; and their current popularity.

15        9.      The utility and advantages of the patented invention over the old modes or devices,

16  if any, that had been used for achieving similar results.

17        10.     The nature of the patented invention; the character of the commercial embodiment

18  of it as owned and produced by Medtronic; and the benefits to those who have used the invention.

19        11.     The extent to which AGA has made use of the invention; and any evidence that

20  shows the value of that use.

21        12.     The portion of the profit or of the selling price that may be customary in the

22  particular business or in comparable businesses to allow for the use of the invention or analogous

23  inventions.

24        13.     The portion of the profit that arises from the patented invention itself as opposed to

25  profit arising from unpatented features, such as the manufacturing process, business risks, or

26  significant features or improvements added by AGA.

27        14.     The opinion testimony of qualified experts.

28

15   The amount that a licensor and a licensee (such as AGA) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. The final factor establishes the framework which you should use in determining a reasonable royalty, *i.e.*, the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringement first began.

## INSTRUCTION NO. 38

### TIMEFRAMES FOR CALCULATING DAMAGES

If any damages are to be awarded to Medtronic, you must consider the timeframes for which the damages are to be calculated. For the '957 patent, the timeframe applicable to any award of damages is from January 29, 2001 to May 19, 2004. For the '141 patent, the timeframe applicable to any award of damages is from January 29, 2007 to March 31, 2009.

JURY INSTRUCTIONS
CASE NO. C07-00567

**INSTRUCTION NO. 39**

**CALCULATING THE ROYALTY**

A royalty is calculated by multiplying (1) a royalty rate and (2) a royalty base.  For

example, if the royalty rate is 10% and the royalty base is $1,000, then the royalty would be $100.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 40**

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**INSTRUCTION NO. 41**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

JURY INSTRUCTIONS
CASE NO. C07-00567

## INSTRUCTION NO. 42

## RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.