STEVEN D. HEMMINGER (Bar No. 110665)
ALSTON & BIRD LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA 94306-2112
Telephone: (650) 838-2029
Facsimile: (650) 838-2001
steve.hemminger@alston.com

MICHAEL S. CONNOR (*pro hac vice*)
LANCE A. LAWSON (*pro hac vice*)
BRIAN F. McMAHON (Bar No. 235373)
MIRANDA M. OLVERA (*pro hac vice*)
JESSICA J. SIBLEY (*pro hac vice*)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Telephone: (704) 444-1000
Facsimile: (704) 444-1770
mike.connor@alston.com
lance.lawson@alston.com

Attorneys for Defendant
AGA MEDICAL CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

MEDTRONIC, INC., a Minnesota
corporation,

                              Plaintiff,

        v.

AGA MEDICAL CORPORATION, a
Minnesota corporation,

                              Defendant.

Case No. 3:07-cv-00567 MMC (EMC)

**AGA'S MOTION *IN LIMINE* TO
PRECLUDE PROF. JANICKE'S
TESTIMONY AND OPINIONS (1)
REGARDING INEQUITABLE
CONDUCT, AND (2) INCLUDED IN
HIS SUPPL. REBUTTAL EXPERT
REPORT REGARDING FILE
HISTORIES, OBVIOUSNESS-TYPE
DOUBLE PATENTING, AND
APPLICABILITY OF 35 U.S.C. § 121**

Date:    December 7, 2009
Time:    9:00 a.m.
Place:   Courtroom 7, 19th Floor
Judge:   Honorable Maxine M. Chesney

LEGAL02/31354228v5

AGA'S MOT. *IN LIMINE* TO EXCL. TEST. OF JANICKE RE:
INEQ. CONDUCT AND RESTR. OF CLAIM 37
CASE NO. 3:07-CV-00567-MMC (EMC)

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 4

II.    LEGAL STANDARDS ................................................................................. 6

    A.     Legal Standards for Inequitable Conduct .................................. 6

    B.     legal Standards for Restriction Requirements ......................... 7

    C.     Legal Standards for the Admissibility of Expert Testimony ....................... 8

III.   FACTUAL BACKGROUND:  PROSECUTION OF THE '378
      PATENT ....................................................................................................... 8

IV.    MR. JANICKE IS NOT QUALIFIED TO OPINE ON ISSUES
      RELATED TO INEQUITABLE CONDUCT BECAUSE HE DOES
      NOT UNDERSTAND THE PRIMA FACIE CASE OF
      UNPATENTABILITY ............................................................................... 12

V.     MR. JANICKE IMPERMISSIBLY PROVIDES UNQUALIFIED
      CONCLUSIONS REGARDING THE APPLICANT'S AND THE
      EXAMINER'S ALLEGED INTENT ....................................................... 15

VI.    MR. JANICKE'S OPINIONS REGARDING THE LAW OF
      INEQUITABLE CONDUCT SHOULD BE EXCLUDED ......................... 17

VII.   MR. JANICKE SHOULD BE PRECLUDED FROM TESTIFYING
      THAT ANY CLAIMS OF THE '141 PATENT WERE CANCELLED
      DUE TO A RESTRICTION REQUIREMENT ....................................... 18

VIII.  CONCLUSION ............................................................................................ 21

1

AGA'S MOT. *IN LIMINE* TO EXCL. TEST. OF JANICKE RE:
INEQ. CONDUCT AND RESTR. OF CLAIM 37
CASE NO. 3:07-cv-00567-MMC (EMC)

1

## **TABLE OF AUTHORITIES**

2

3

## **CASES**

*Anagram Intern., Inc. v. Mayflower Distributing Co.*, 2008 WL 5500764 ........................................ 18

*Anagram Intern., Inc. v. Mayflower Distributing Co.*, 2008 WL 5500764, at
    *1 (D. Minn. 2008) ............................................................................................................ 17

*Applied Materials*, Inc. v. *Advanced Semiconductor Materials America, Inc.*,
    1995 US Dist. LEXIS 22335, at *8-*11 (N.D. Cal. April 25, 2005) ................................... 18

*AstraZeneca v. Tap Pharmaceutical Prods., Inc.*, 444 F. Supp. 2d 278, 293-94
    (D. Del. 2006) ................................................................................................................... 16

*Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 256 (W.D.N.Y.
    2000) ................................................................................................................................. 18

*Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998) ........................................ 5

*Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d at 1327 ...................................................................... 7

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1994) .................................................. 9

*Geneva Pharmaceuticals*, 349 F.3d at 1373 ................................................................................ 21

*Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1378
    (Fed. Cir. 2003) ................................................................................................................. 8

*Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1358 (Fed. Cir.
    2006) ................................................................................................................................. 9

*Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir.
    2004) ................................................................................................................................. 19

*Keytrak Inc. v. Key Register*, 2004 WL 2944043 ......................................................................... 17

*Keytrak Inc. v. Key Register, L.L.C.*, 2004 WL 2944043, at *4 (N.D. Cal. Mar.
    30, 2004) ........................................................................................................................... 16

*Klaczak v. Consolidated Medical Transport*, No. 96 C 6502, 2005 WL
    1564981, at * 5 (N.D. Ill. May 26, 2005) ........................................................................... 6

*Kumho Tire Co., Ltd., et al. v. Carmichael, et al.*, 526 U.S. 137, 152 (1999) ................................. 9

*Kumho Tire*, 526 U.S. at 151-152 ................................................................................................. 9

*Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995) ................................................ 7

*N.V. Akzo v. E.I. Dupont de Nemours*, 810 F.2d 1148, 1153 (Fed. Cir. 1987) ................................ 7

*Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir.
    2008) ................................................................................................................................. 19

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

AGA'S MOT. *IN LIMINE* TO EXCL. TEST. OF JANICKE RE:
INEQ. CONDUCT AND RESTR. OF CLAIM 37
CASE NO. 3:07-cv-00567-MMC (EMC)

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*,
    324 U.S. 806, 814-816 (1945)...................................................................... 7

*Refac Int'l, Ltd. v. Forward Reference Systems, Ltd.*, 81 F.3d 1576, 1581 (Fed.
    Cir. 1996) ....................................................................................................... 7

*Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572 (Fed. Cir.
    1983) ............................................................................................................. 21

*Se-Kure Controls, Inc. v. Diam USA, Inc.*, 2009 WL 77463 ................................ 18

*Se-Kure Controls, Inc. v. Diam USA, Inc.*, 2009 WL 77463, at *3 (N.D. Ill.
    2009) ............................................................................................................. 17

*Smith v. Rasmussen*, 57 F. Supp. 2d 736, 766 (N.D. Iowa 1999) ....................... 14

*Therasense, Inc. v. Becton, Dickinson and Co.*, 2008 WL 2037732 .................... 18

*Therasense, Inc. v. Becton, Dickinson and Co.*, 2008 WL 2037732, at *4
    (N.D. Cal. 2008) ........................................................................................... 17

*United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002)............................... 9

*United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986)......................... 9

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d
    706, 715 (8th Cir. 2001)................................................................................ 14

## **STATUTES**

35 U.S.C. § 112 ..................................................................................................... 12

35 U.S.C. § 121 ...............................................................................................passim

35 U.S.C. § 131 ..................................................................................................... 13

35 U.S.C. § 132 ..................................................................................................... 21

37 C.F.R. § 1.2 ...................................................................................................... 13

37 CFR §1.56 ..................................................................................................passim

U.S.C. § 132 .......................................................................................................... 11

## **OTHER AUTHORITIES**

MPEP § 808 .......................................................................................................... 10

MPEP § 809 .......................................................................................................... 10

MPEP § 809.02(a).................................................................................................. 10

MPEP § 817 .......................................................................................................... 11

3

AGA'S MOT. *IN LIMINE* TO EXCL. TEST. OF JANICKE RE:
INEQ. CONDUCT AND RESTR. OF CLAIM 37
CASE NO. 3:07-cv-00567-MMC (EMC)

MPEP 5th ed. Rev. 16, § 809.02(c) ................................................................ 12

MPEP 5th ed. Rev. 16, §§ 714.12 and 714.13 ................................................ 12

MPEP 5th ed., Rev. 15 §§ 806.04(a)-(i); 808, and 809 ................................... 10

*The New Wigmore: Evidence: Expert Evidence*, § 2.2 .................................. 14

**<u>RULES</u>**

37 C.F.R. 1.2 ............................................................................................. 11, 21

37 CFR § 1.97-1.98 ......................................................................................... 19

Fed. R. Evid. 702 ..................................................................................... 6, 19, 22

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant AGA Medical Corporation ("AGA") will and hereby does move this Court for an order *in limine* precluding any testimony of Paul M. Janicke regarding inequitable conduct, in particular, any expert testimony concerning the applicable law, or his conclusions as to materiality, the applicant's intent, or the patent examiner's state of mind, intent or mental impressions. AGA also moves for an order precluding Mr. Janicke from testifying that Claim 37 of the '378 patent was subject to a restriction requirement. This motion is based upon this Notice of Motion, Memorandum of Points and Authorities, Declaration of Steven D. Hemminger, the Expert Reports of Professor Paul M. Janicke, the Deposition of Paul M. Janicke, and other papers and pleadings on file and on such other argument and evidence as may be presented to this Court at or prior to the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Paul M. Janicke has been designated as Medtronic's expert concerning topics related to AGA's inequitable conduct defenses. Inequitable conduct requires a determination of materiality, and the determination of materiality requires an understanding of a prima facie case of unpatentability. *See Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998); 37 CFR §1.56. Mr. Janicke stated "I have never been able to understand [a *prima facie* case of unpatentability]."[1] Additionally, Mr. Janicke stated, "I can't explain what I don't understand except to say that either through some failing of mine or – or something, I simply don't know in real-life practice when a claim is prima facie unpatentable in terms of actual examples." Ex. 1 to the Hemminger Decl. at p. 86:11-15. Thus, Mr. Janicke has admitted that he is without knowledge and does not understand critical rules (such as Rule 56) and issues related to inequitable conduct. Expert testimony is only admissible if it is helpful to the fact-finder and is based on the expert's

---

[1] *See* Excerpts from the Deposition Transcript of Paul M. Janicke (the "Janicke Dep. Tr."), attached to the Declaration of Steven D. Hemminger ("Hemminger Decl.") in Support of AGA's Motion *in Limine* to Preclude the Testimony of Paul M. Janicke Regarding Inequitable Conduct as Exhibit 1 at 84:7.

5

AGA's Mot. *in Limine* to Excl. Test. of Janicke Re:
Ineq. Conduct and Restr. of Claim 37
Case No. 3:07-cv-00567-MMC (EMC)

own specialized knowledge and/or training.  Fed. R. Evid. 702.  The Court's "gatekeeping function" under Rule 702 exists to prevent such unfounded testimony.  With his admission on his lack of knowledge of issues relating to inequitable conduct, his opinions suffer from major flaws, and therefore, are inadmissible and should be excluded.

Even more concerning is Mr. Janicke's opinion related to the subjective intent of the patent applicants.  Mr. Janicke has stated, "I'm not here to opine on any particular person's intent . . ." Ex. 1 to the Hemminger Decl. at p. 65:15-16.  Moreover, Mr. Janicke stated, "I don't know what was in Jeffrey Sheldon's mind."  Ex. 1 to the Hemminger Decl. at p. 116:8-9.  Despite these statements, Mr. Janicke opines on intent.  *See e.g.,* Ex. 1 to the Hemminger Decl. at pp. 115:24 – 116:2.  It is well established that expert testimony on legal conclusions or on fundamental factual issues, such as intent, is prohibited.  *See Klaczak v. Consolidated Medical Transport*, No. 96 C 6502, 2005 WL 1564981, at * 5 (N.D. Ill. May 26, 2005).  It is also well established that experts may not testify as to what the law is.  Nonetheless, Mr. Janicke gives his opinions on what the law is for the defense of inequitable conduct.

Finally, Mr. Janicke's opinion (as expressed in paragraphs 10-13 of his supplemental expert report, Ex. 4 to the Hemminger Decl.) that Claim 37 of the '378 patent was subject to a restriction requirement during prosecution is contrary to the prosecution history, Patent Office practice and procedure, and Federal Circuit authority.  The Court therefore should preclude Mr. Janicke from offering such testimony.

Accordingly, because Mr. Janicke's proposed testimony is nothing more than an adversarial legal brief on inequitable conduct submitted under the guise of an expert report, Mr. Janicke's Report should be stricken, and he should be barred from testifying on any of these topics. Alternatively, if this Court determines that Mr. Janicke's entire opinion and testimony should not be excluded, then this Court should not permit any testimony by Mr. Janicke related to the intent of the applicants.  The Court also should exclude from trial all opinions and testimony in Mr. Janicke's Supplemental Expert Report, particularly opinions and testimony concerning whether the claims in the '141 patent are protected by 35 U.S.C. § 121 and whether Claim 37 of the '378 patent

1   was subject to a restriction requirement.

2   **II.   LEGAL STANDARDS**

3       **A.   LEGAL STANDARDS FOR INEQUITABLE CONDUCT**

        All inventors named on a patent application, all attorneys and agents involved in preparing

4   and prosecuting the application, and other associated persons who are substantially involved with

5   the filing and prosecution of a patent application are required to prosecute the patent application

6   with candor, good faith, and honesty.  37 CFR §1.56; *see also Precision Instrument Mfg. Co. v.*

7   *Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814-816 (1945).  Each individual with

8   such a duty must disclose all information known to that individual to be material.  The intentional

9   failure to meet this duty of candor and good faith constitutes inequitable conduct.

10           The determination of inequitable conduct is a two-step factual inquiry.  *Baxter Int'l, Inc. v.*

11   *McGaw, Inc.*, 149 F.3d at 1327.  First, the trier of fact must determine whether the conduct meets a

12   threshold level of materiality.  *Id.*  Second, the trier of fact must then also determine whether the

13   evidence shows a threshold level of intent to mislead the patent examiner.  *Id.*  Only a threshold

14   level of materiality and intent must be proven by clear and convincing evidence.  *Refac Int'l, Ltd.*

15   *v. Forward Reference Systems, Ltd.*, 81 F.3d 1576, 1581 (Fed. Cir. 1996).  Once the threshold level

16   of materiality and intent is proven, the Court must then determine whether the conduct is

17   inequitable, so as to render the patent unenforceable, by balancing the materiality of the

18   information with the evidence of intent.  *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.

19   Cir. 1995).  A greater showing of one factor allows for a lesser showing of the other.  *See N.V.*

20   *Akzo v. E.I. Dupont de Nemours*, 810 F.2d 1148, 1153 (Fed. Cir. 1987).

21           37 CFR §1.56 has changed over time, and on March 16, 1992, 37 CFR §1.56(b) stated:

22       (b) Under this section, information is material to patentability

23       when it is not cumulative to information already of record or being
    made of record in the application, and

24       (1) It establishes, by itself or in combination with other

25       information, a *prima facie* case of unpatentability of a claim; or

26       (2) It refutes, or is inconsistent with, a position the applicant takes

27       in:

28

(i) Opposing an argument of unpatentability relied on by the Office, or

(ii) Asserting an argument of patentability.

A *prima facie* case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

Thus, under this provision, one way information is material to patentability is if it establishes a prima facie case of unpatentability.

**B.     LEGAL STANDARDS FOR RESTRICTION REQUIREMENTS**

The "safe harbor" for double patenting, 35 U.S.C. § 121, applies only to claims in a later-filed divisional application that, as reflected in the written record, were subject to a restriction requirement in an earlier application and cancelled as a result of the restriction requirement.  In *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1378 (Fed. Cir. 2003), the Federal Circuit addressed the district court's finding that there was no restriction requirement that enabled section 121 to act as a shield against GSK's '720 patent, which Geneva contended was invalid for OTDP.  The court explained that GSK faced two obstacles to obtaining protection under section 121: first, the original application did not contain the same "method of use" claims that later appeared in the issued '720 patent, and second, the examiner "did not issue a formal restriction requirement relating to the claims at issue in any document in the record." *Id*.  The court rejected GSK's argument that a summary of an interview held in 1979 constitutes a restriction requirement that satisfies the strict requirements of 35 U.S.C. § 121.  *Id*. at 1380-81.  The summary of the interview provided no clear line of demarcation that suggested the claims were subject to a restriction requirement, *see id*. at 1381, and the term "restriction" did not appear in the July 9, 1979 response that the applicants filed in response to the interview.  *Id*.  The court explained, "[t]he quoted passage does not state that the examiner required restriction between those two sets of claims.  Moreover, the passage does not state that any claims are patentably

distinct." *Id*. Ultimately, the court concluded that section 121's safe harbor applies only to restriction requirements that are documented in clarity and detail by the PTO and that, under the circumstances, the alleged oral restriction requirement at the interview was not sufficiently memorialized. *Id*. at 1382.

### C.   LEGAL STANDARDS FOR THE ADMISSIBILITY OF EXPERT TESTIMONY

The law of the Ninth Circuit Court of Appeals governs the admission of expert testimony because the admission of expert testimony is a procedural matter not unique to patent law. *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1358 (Fed. Cir. 2006). Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court has "assign[ed] to the trial judge the task of ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1994); *see also Kumho Tire Co., Ltd., et al. v. Carmichael, et al.*, 526 U.S. 137, 152 (1999). This standard of reliability and relevancy applies to all experts, regardless of specialty. *See Kumho Tire*, 526 U.S. at 151-152. The burden is on the proponent to show that the witness has sufficient expertise. *United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986); *see also United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002).

### III.   FACTUAL BACKGROUND:  PROSECUTION OF THE '378 PATENT

James Jervis filed U.S. Patent Application No. 07/956,653, which eventually issued as U.S. Patent No. 5,597,378, on October 2, 1992. *See* '378 File History, Ex. 5 to the Hemminger Decl., at MAGA064938. On February 22, 1993, the Examiner issued an Office Action, stating that the application had been examined and that Claims 11-54 were pending in the application and subject to a restriction or election requirement. *See id*. at M-AGA065008. The Examiner stated that the

application was directed to two separate inventions, and thus restriction was required under 35 U.S.C. § 121. *See id.* at M-AGA065009. The restriction required the applicant to elect to prosecute either Claims 11-53, which were drawn to medical devices incorporating SIM alloy elements, or Claim 54, which was drawn to a method for compressing together two mammalian bones. *Id.*

In accordance with the requirements of the MPEP 5th ed., Rev. 15 §§ 806.04(a)-(i); 808, and 809, the Examiner also stated in the February 22 Office Action that the applicant was required to provisionally elect one of the following four species of the shape memory alloy element: an IUD, a stent graft, a catheter, or a tracheal catheter, and, as MPEP § 808 requires, the Examiner stated his reasons for the provisional election requirement. *See* Ex. 5 to the Hemminger Decl. at M-AGA065010. The Examiner also found that Claims 12, 19, and 37 are generic. *See id.*; MPEP § 809. Thus, Claim 37 was not subject to a species restriction as a result of the February 22 Office Action. *See* Deposition Transcript of Paul M. Janicke ("Janicke Dep. Tr."), Ex. 1 to the Hemminger Decl., at 216:17-24. The Examiner further noted that if one or more of the generic claims were allowed, the non-elected species might be allowable. MPEP § 809.02(a). In response to the Examiner's February 22 Office Action, the applicant elected to prosecute Claims 11-53 and provisionally elected to proceed with the generic and species claims directed to a catheter, i.e., Claims 11-14, 17-21, 24-37, and 41-53. *See* '378 file history, Ex. 5 to the Hemminger Decl., at M-AGA065021.3

In an Office Action dated June 13, 1993, the Examiner acknowledged the applicant's election, stated that Claims 15, 16, 22, 23, 38-40, and 54 were withdrawn from consideration, examined the claims, and rejected the pending claims, including Claim 37. *See id.* at MAGA065031. On November 24, 1993, the applicant responded by amending Claim 37 (among others) and adding Claims 54-56. *See id.* at M-AGA065040-065056. Thus, it is undisputed that Claim 37 was examined on the merits after the only restriction requirement issued by the Examiner.

The Examiner then issued an Office Action on March 7, 1994, listing on the summary sheet

that Claims 11-14, 17-21, 24-36, 41, 42, 44-53, and 55-574 were rejected and that Claims 15, 16, 22, 23, 37-40, 43, and 54 were withdrawn from consideration. *See id.* at M-AGA065090. Contrary to the prior Office Action, this Office Action incorrectly noted that Claim 37 had been withdrawn from consideration in the summary sheet. As evidenced by the species election requirement and subsequent communications, Claim 37 was identified as a generic claim.  It is undisputed that neither the March 7, 1994 Office Action nor any other paper in the prosecution history of the '378 patent included a requirement that Claim 37 be restricted from the case or withdrawn from consideration. *See* Janicke Dep. Tr., Exhibit 1 to the Lawson Decl., at 195:10-196:9.  Further evidence that the listing of Claim 37 on the summary sheet as being withdrawn was an error is the fact that the March 7, 1994 Office Action does not include a letter explaining the Examiner's election requirement and requiring the applicant's provisional election of species as required by MPEP § 817.

On June 24, 1994, in response to the Examiner's March 7 Office Action, the applicant argued for reconsideration and parroted the Examiner's recitation of the status of the claims, including the incorrect notation that Claim 37 had been withdrawn. *See* '378 file history, Ex. 5 to the Hemminger Decl., at M-AGA065105. The applicant also added Claims 58-64 by amendment and indicated that he wanted to withdraw Claim 25 from consideration. *Id.*  Obviously, the applicant did not notice the error.  If he had, he would have brought the error to the Examiner's attention. The applicant's parroting of the Examiner's mistake has *no* legal effect with regard to the status of Claim 37 because an applicant cannot withdraw a claim from consideration—it can only *cancel* a claim.

On June 30, 1994, the Examiner conducted a telephonic interview during which all claims were discussed. *Id.* at M-AGA065095.  Thus, according to the written record of the prosecution (*see* 37 C.F.R. 1.2; 35 U.S.C. § 132), all claims were being examined.  As a result of the interview, the applicant submitted a supplemental amendment on July 28, 1994. *Id.* at M-AGA065114. On October 31, 1994, after examining *all* of the pending claims (including the withdrawn claims), the Examiner issued a final rejection of Claims 11-64, confirming that the non-elected species

1   claims were no longer withdrawn pursuant to the restriction requirement.  *See id.* at M-

2   AGA065124.  The body of the October 31 Office Action acknowledges and accepts the applicant's

3   request to withdraw Claim 25 and states that Claim 25—and only Claim 25 (i.e., not Claim 37 or

4   any of the other claims)—was withdrawn.  *See id.* at M-AGA065125.  By making the action *final*,

5   the prosecution was closed, leaving the applicant with only one option: appeal.  After a final

6   rejection, the only amendments that will be entered are amendments that place the application in

7   condition for allowance.  *See* 37 CFR 1.113; 37 CFR 1.116; MPEP 5th ed. Rev. 16, §§ 714.12 and

8   714.13.  Thus, as of the Final Rejection, *all* claims were back in the case, and the provisional

9   restriction requirement was withdrawn—i.e., the Examiner acted on all of the claims and rejected

10  them.  If any of the claims were subject to a restriction requirement at the time of the Examiner's

11  Final Rejection, the Examiner would have been required to so state according to MPEP 5th ed.

12  Rev. 16, § 809.02(c).

13          The applicant's Amendment After Final dated March 9, 1995, attempted to put the case in a

14  condition for allowance.  The applicant specifically acknowledged that after cancellation of Claim

15  54, all other claims were in the case:  "Claims 11-53 and 55-64 are in this application with claim

16  25 being withdrawn as being directed to a non-elected species of the invention.  All of the claims

17  presented were rejected under 35 U.S.C. § 112 and/or for double patenting."  '378 File History,

18  Ex. 5 to the Hemminger Decl., at M-AGA065137.  In fact, the applicant specifically acknowledged

19  that certain claims "were" (note the applicant's use of the past tense) withdrawn and requested

20  allowance in view of the terminal disclaimer.  *See id.* at M-AGA065138.

21          On April 26, 1995, the Examiner issued an Advisory Action, which also confirmed that

22  Claim 37 was pending in the application, and he specifically "objected" to Claim 37.  *See id.* at

23  MAGA065152.  On June 7, 1995, in an Amendment After Final filed in response to the Advisory

24  Action, the applicant cancelled Claims 11-18 and made amendments in an effort to place all of the

25  remaining claims in the application in condition for allowance and avoid having to appeal,

26  including claim 37.  *See id.* at M-AGA065157.

27          On June 26, 1995, the Examiner participated in a telephonic interview with the applicant.

28

AGA'S MOT. *IN LIMINE* TO EXCL. TEST. OF JANICKE RE:
INEQ. CONDUCT AND RESTR. OF CLAIM 37
CASE NO. 3:07-cv-00567-MMC (EMC)

*See id*. at M-AGA065165.  The Examiner and the applicant discussed all of the claims and reached agreement with regard to allowance.  There is no discussion in the written record of the interview of any restriction requirement or requirement of cancellation of claims because of a restriction requirement.  The record is silent as to the reasons the applicant elected to cancel the claims other than to obtain allowance as the applicant did with regard to Claims 11-18.  *See id*. at  M-AGA065165-065170.  Because it is a statutory requirement that all transactions be conducted in writing, *see* 35 U.S.C. § 131, (as well as a Patent Office rule, *see* 37 C.F.R. § 1.2) and there is no written statement in the record that the claims were cancelled as a result a restriction requirement, the claims were not cancelled as part of a restriction requirement.  If the applicant believed that the claims were cancelled as a result of a restriction requirement, the applicant should have responded to the Examiner's amendment as applicant was invited to do in order to preserve the right to invoke the safe harbor provisions of 35 U.S.C. § 121.  *See id*.  The applicant failed to do so, and as such, the applicant gave up any claim to the protection of 35 U.S.C. § 121 by failing to create a written record of the transaction.

In sum, the '378 File History clearly shows that no claims were "carved out" of the '378 application.  Hence, the claims in the '141 patent are not protected by the safe harbor provisions of 35 U.S.C. § 121, and Mr. Janicke's opinions to the contrary are speculative and not based on any particularized knowledge or expertise.

## IV. MR. JANICKE IS NOT QUALIFIED TO OPINE ON ISSUES RELATED TO INEQUITABLE CONDUCT BECAUSE HE DOES NOT UNDERSTAND THE PRIMA FACIE CASE OF UNPATENTABILITY

One of the most basic premises of the inequitable conduct inquiry is whether withheld information constitutes a prima facie case of unpatentability at the patent office.  *See* 37 CFR §1.56(b)(1).  Yet, Mr. Janicke, who purports to be Medtronic's "expert" on patent office practice and procedure has testified that he does not even understand the prima facie case of unpatentability.  Ex. 1 to the Hemminger Decl. at p. 84:5-6, 86:8-15.  It is well-established that an expert cannot opine on issues outside of the scope of his or her expertise.  "A person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond

1  that area of expertise, or that are not founded on a reliable methodology." *Smith v. Rasmussen*, 57

2  F. Supp. 2d 736, 766 (N.D. Iowa 1999) (citations omitted). The opinions of an expert witness

3  must not exceed his stated expertise. *See Wheeling Pittsburgh Steel Corp. v. Beelman River*

4  *Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) ("Once initial expert qualifications and

5  usefulness to the jury are established, … a district court must continue to perform its gatekeeping

6  role by ensuring that the actual testimony does not exceed the scope of the expert's expertise,

7  which if not done can render expert testimony unreliable"); *see also The New Wigmore: Evidence:*

8  *Expert Evidence*, § 2.2 ("No matter how well credentialed an expert is on a particular issue, he

9  may not testify beyond his expertise.").

10  While Mr. Janicke may qualify as an expert in other areas of patent law, he does not qualify

11  as an expert on inequitable conduct or issues related thereto. Mr. Janicke lacks the necessary

12  knowledge and understanding of inequitable conduct and the underlying rules to provide this Court

13  with expert testimony. Before this case, Mr. Janicke has never given any deposition or trial

14  testimony on issues related to inequitable conduct. Ex. 1 to the Hemminger Decl. at p. 30:8-10,

15  30:17-20. Moreover, Mr. Janicke is not even sure if he is an expert on issues related to inequitable

16  conduct. Ex. 1 to the Hemminger Decl. at p. 14:11-14. Furthermore, his experience in prosecuting

17  patents in front of the patent office is scarce at best. Ex. 1 to the Hemminger Decl. at p. 7:14,

18  31:6-24 (testifying that he spent less than five percent of his career in patent prosecution).[2] Given

19  his lack of expertise in the required area, any evidence that he may testify to at trial would be a

20  mere recitation of arguments propounded by Medtronic's counsel, as opposed to helpful expert

21  testimony by someone skilled and experienced in inequitable conduct and patent office practices

22  and procedures related to inequitable conduct.

23  Mr. Janicke, by his own admissions, has insufficient knowledge and understanding in the

24  areas related to inequitable conduct, including patent office and procedure. At his deposition, Mr.

---

25  [2] Despite his assertion that he is an expert in patent practice, Mr. Janicke cannot locate past versions
26  of the MPEP: "I can't find and I don't know of anyone who can find the 1998 edition of the MPEP
   at this point in human history, other than Mr. Goffney perhaps." Ex. 1 to the Hemminger Decl. at p.
27  63:19-21. All experts in patent practice recognize that past versions of the MPEP are readily
   available online and easily accessible at the USPTO website:
28  http://www.uspto.gov/web/offices/pac/mpep/old/index.htm.

AGA'S MOT. *IN LIMINE* TO EXCL. TEST. OF JANICKE RE:
INEQ. CONDUCT AND RESTR. OF CLAIM 37
CASE NO. 3:07-cv-00567-MMC (EMC)

Janicke produced an annotated copy of Commissioner Goffney's expert report.[3]  Mr. Janicke placed an "IK" next to at least twenty-four different paragraphs of Commissioner Goffney's expert report.  *See* Ex. 2 to the Hemminger Decl.  The "IK," as indicated by Mr. Janicke, stands for insufficient knowledge to respond to the paragraph. Ex. 2 to the Hemminger Decl. at p. 52:2-6.  Thus, Mr. Janicke lacks the requisite knowledge to respond to ***more than twenty percent*** of the paragraphs he annotated.  *See* Ex. 2 to the Hemminger Decl.

But most troubling of all is the established fact that Mr. Janicke does not understand when a prima facie case of unpatentability is established under 37 CFR §1.56(b).  Ex. 1 to the Hemminger Decl. at p. 84:5-6.  Yet, this is just the type of information that will be the subject of his trial testimony.  At his deposition, Mr. Janicke repeatedly stated that he does not understand what a prima facie case of unpatentability is:

> Q.   In your opinion, when is a prima facie case of unpatentability established?
>
> A.   I have never been able to understand that.

Ex. 1 to the Hemminger Decl. at p. 84:5-6.  Furthermore, when given the opportunity to explain what he doesn't understand about the prima facie case of unpatentability, Mr. Janicke admitted that it was ***a failure of his*** that led to his lack of understanding:

> Q.   And what don't you understand about a prima facie case?
>
> A.   I can't explain what I don't understand except to say that either through some failing of mine or – or something, I simply don't know in real-life practice when a claim is prima facie unpatentable in terms of actual examples.

Ex. 1 to the Hemminger Decl. at p. 86:8-15 (objections omitted).

Clearly, Mr. Janicke does not currently understand, nor has he ever understood, when a prima facie case of unpatentability is established.  When pressed with examples, Mr. Janicke still could not explain a prima facie case of unpatentability.  Ex. 1 to the Hemminger Decl. at p. 89:9-

---

[3] Commissioner Larry Goffney is AGA Medical's expert in patent office and procedure. Commissioner Goffney is the former Acting Commissioner of Patents and Trademarks of the United States, and the former Acting Deputy Assistant Secretary of Commerce and Deputy Commissioner of Patents and Trademarks of the United States.  The annotated copy of Commissioner Goffney's expert report is attached to the Hemminger Decl. as Exhibit 2.

1    10 ("I don't know if that's a prima facie case.  It might be."); Ex. 1 to the Hemminger Decl. at p.

2    89:19 ("It could be.  I'm not disputing it.").  An expert witness is supposed to have sufficient

3    specialized knowledge to assist the finder of fact in deciding the specific issues in the case.  *See*

4    *Kumho Tire*, 526 U.S. at 156.  Given his inability to identify and explain examples of a prima facie

5    case of unpatentability at his deposition, Mr. Janicke also will be unable to provide the Court with

6    accurate and reliable opinions regarding whether there is a prima facie case of unpatentability if

7    the Court permits him to testify at trial.  *See* Ex. 1 to the Hemminger Decl. at p. 86:8-18.  Mr.

8    Janicke is unable to assist the Court in deciding the inequitable conduct issue.

9        In conclusion, one of the key elements of inequitable conduct is materiality, and one of the

10    keys to materiality is a prima facie case of unpatentability.  *See* 37 CFR §1.56.  If Mr. Janicke does

11    not understand a prima facie case of unpatentability (which he repeatedly admitted), then he does

12    not understand materiality.  It is impossible for Mr. Janicke to render a complete opinion on

13    inequitable conduct without knowledge and understanding of a prima facie case of unpatentability.

14    Because of his lack of knowledge, Mr. Janicke's testimony and expert report are unhelpful to the

15    Court.  Mr. Janicke is testifying beyond his scope of expertise, and the Court therefore should

16    preclude Mr. Janicke from testifying, and his expert report should be stricken.

17    **V.    MR. JANICKE IMPERMISSIBLY PROVIDES UNQUALIFIED CONCLUSIONS**
       **REGARDING THE APPLICANT'S AND THE EXAMINER'S ALLEGED INTENT**
18

19        Even if the Court does not strike Mr. Janicke's entire expert report and preclude all of his

20    testimony, Mr. Janicke nonetheless should be precluded from testifying on whether or not those

21    involved in the prosecution of the Jervis patents possessed the requisite level of intent necessary

22    for a finding of inequitable conduct.  "Expert witnesses are not permitted to testify … regarding

23    … intent, motive or state of mind, or evidence by which such state of mind may be inferred."

24    *AstraZeneca v. Tap Pharmaceutical Prods., Inc.*, 444 F. Supp. 2d 278, 293-94 (D. Del. 2006)

25    (internal citations omitted).  Mr. Janicke's testimony regarding the applicant's intent should be

26    precluded because his opinions on intent are not admissible, relevant, or even reliable.  *See*

27    *Keytrak Inc. v. Key Register, L.L.C.*, 2004 WL 2944043, at *4 (N.D. Cal. Mar. 30, 2004).

28

AGA'S MOT. *IN LIMINE* TO EXCL. TEST. OF JANICKE RE:
INEQ. CONDUCT AND RESTR. OF CLAIM 37
CASE NO. 3:07-cv-00567-MMC (EMC)

1  According to the weight of authority, no expert of any kind should be permitted to speculate as to

2  anyone's subjective intent or knowledge. *Therasense, Inc. v. Becton, Dickinson and Co.*, 2008 WL

3  2037732, at *4 (N.D. Cal. 2008); *see Se-Kure Controls, Inc. v. Diam USA, Inc.*, 2009 WL 77463,

4  at *3 (N.D. Ill. 2009); *Anagram Intern., Inc. v. Mayflower Distributing Co.*, 2008 WL 5500764, at

5  *1 (D. Minn. 2008).

6          Mr. Janicke is not a mind reader, and he does not purport to be.  In fact, Mr. Janicke admits

7  that he does not have expertise in psychology, character judging, or anything other field that would

8  give him the ability to determine someone's intent.  *See* Expert Rebuttal Report of Paul Janicke at

9  ¶ 55 (Exhibit 3 to the Hemminger Decl.).  Therefore, any opinions he may render on intent are at

10  best, irrelevant.  *See Keytrak Inc. v. Key Register,* 2004 WL 2944043, at *4.  At worst, Mr.

11  Janicke's opinions are damaging and prejudicial.

12          Mr. Janicke repeatedly states he will not opine on intent and that he recognizes that experts

13  are not to opine on intent.  *See e.g.,* Ex. 1 to the Hemminger Decl. at p. 65:15-17 ("I'm not here to

14  opine any particular person's intent; but Rule 56, since 1992, has an 'intent' prong to it.").  Despite

15  his statements that he is not offering opinions on intent, he does so anyway:

16          Q.     You're opining on intent in this paragraph[4], aren't you?

17          A.     That's what it reflects to me from the evidence, yes.

18          Q.     But you're not here to opine on intent.

19          A.     No.  But these – these are not actions that reflect an intent

20  to conceal.

21          Q.     In paragraph 32 – but that's your opinion that they're not

22  actions.

23          A.     This evidence doesn't reflect it.  **I don't know what was in**

24  **Jeffrey Sheldon's mind**.

25          Q.     This evidence doesn't reflect it in your opinion.

26          A.     You can say that, but I think it as solid as night follows the

27
28

---

[4] This paragraph refers to ¶ 31 of Inequitable Conduct Expert Rebuttal Report of Paul Janicke,
attached to the Hemminger Decl. as Exhibit 3.

1    day.

2         Q.    And you're not here to opine on intent, correct?

3         A.    No.

4    Ex. 1 to the Hemminger Decl. at p. 115:24 – 116:16 (emphasis added).  Such opinions on intent

5    are completely improper and should not be permitted.  *See Therasense, Inc. v. Becton, Dickinson*

6    *and Co.*, 2008 WL 2037732, at *4; *Se-Kure Controls, Inc. v. Diam USA, Inc.*, 2009 WL 77463, at

7    *3; *Anagram Intern., Inc. v. Mayflower Distributing Co.*, 2008 WL 5500764 , at *1.

8         Moreover, any expert testimony regarding the Examiner's state of mind, intent, or mental

9    impressions (including, but not limited to, the opinions Mr. Janicke expresses in his Inequitable

10   Conduct Expert Rebuttal Report, Ex. 3 to the Hemminger Decl., at ¶ 53) is inadmissible because it

11   is speculative and is not based on any particularized expertise.  *See, e.g., Applied Materials*, Inc. v.

12   *Advanced Semiconductor Materials America, Inc.*, 1995 US Dist. LEXIS 22335, at *8-*11 (N.D.

13   Cal. April 25, 2005) (granting plaintiff's motion to exclude the testimony of defendant's legal

14   expert, which was irrelevant and speculative and beyond the scope of Patent Office procedure).

15   Prof. Janicke's opinions regarding the Examiner's state of mind, intent, or mental impressions are

16   inadmissible under Rule 702 because they are not—and cannot be—based on his knowledge, skill,

17   experience, training, or education.  *See* FRE 702.  Medtronic has offered Prof. Janicke as an expert

18   in inequitable conduct, but Prof. Janicke is not an expert in PTO Examiner's thoughts and mental

19   impressions.  His opinions regarding what the Examiner may have been thinking therefore are

20   inadmissible.

21   **VI.    MR. JANICKE'S OPINIONS REGARDING THE LAW OF INEQUITABLE
         CONDUCT SHOULD BE EXCLUDED**

22

23        The law clearly holds that experts may not testify as to what the law is.  Indeed, testimony

24   that does not concern a disputed fact in issue but instead invades the province of the Court by

25   instructing the jury on what the law is should be excluded from trial.  *See, e.g., Bausch & Lomb,*

26   *Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 256 (W.D.N.Y. 2000) (explaining that proposed

27   testimony of defendant's expert regarding the meaning of the "effective filing date" under section

28   120 and relevant case law and the meaning of "new matter" as it relates to the effective filing date

AGA'S MOT. *IN LIMINE* TO EXCL. TEST. OF JANICKE RE:
INEQ. CONDUCT AND RESTR. OF CLAIM 37
CASE NO. 3:07-cv-00567-MMC (EMC)

1   should be excluded because the testimony amounted to instructing the jury on the law, which is the

2   role of the judge, not witnesses); *see also Nationwide Transp. Fin. v. Cass Info. Sys.,* 523 F.3d

3   1051, 1058 (9th Cir. 2008) ("an expert witness cannot give an opinion as to her legal conclusion,

4   i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is

5   the distinct and exclusive province of the court.") (quoting *Hangarter v. Provident Life & Accident*

6   *Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *see also* Fed. R. Evid. 702 (requiring that expert

7   opinion evidence "assist the trier of fact to understand the evidence or to determine a fact in issue").

8   Nonetheless, Mr. Janicke improperly opines on the law concerning the safe harbor provisions under

9   37 CFR § 1.97-1.98. *See* Ex. 3 to the Hemminger Decl., Inequitable Conduct Expert Rebuttal

10   Report of Paul Janicke, at ¶¶ 32-34; *see also, id.* at ¶¶ 54-55 (improperly opining on legal

11   conclusions concerning intent). These exemplary statements in Mr. Janicke's report, along with all

12   statements and testimony in which Mr. Janicke improperly opines regarding legal conclusions

13   should be excluded from trial.

14   **VII.   MR. JANICKE SHOULD BE PRECLUDED FROM TESTIFYING THAT ANY CLAIMS OF THE '141 PATENT WERE CANCELLED DUE TO A RESTRICTION REQUIREMENT**

15

16

17         Although Prof. Janicke opines to the contrary in his supplemental report (*see* Janicke

18   Supplemental Expert Report (5/11/09), Ex. 4 to the Hemminger Decl.), Claim 37 of the '378 application

19   never was the subject of a restriction requirement. The Examiner issued a restriction requirement during

20   the prosecution of the '378 Application, but the restriction requirement applied to only some of the

21   claims:

22              This ['378 patent] application contains claims directed to the
              following patentably distinct species of the claimed inventions: where
23              the shape memory alloy is an IUD, a stent graft, a blood filter, a
              catheter and a tracheal catheter. Applicant is required under 35 U.S.C.
24              § 121 to elect a single disclosed species for prosecution on the merits
              to which the claims shall be restricted if no generic claim is finally
25              held to be allowable. **Currently, claims 12, 19 and 37 are generic.**

26

27

28

'378 File History, Ex. 5 to the Hemminger Decl., at M-AGA065008 (emphasis added). This is what is called a "genus/species" restriction. The Examiner found that four groups of dependent claims belonged to four different species—that is, the four groups were patentably distinct from each other. The Examiner stated that the species claims would be allowed only if one of the generic claims (i.e., one of the independent claims) was allowed. This means that the Examiner will examine all three independent claims, but will examine only one set of the dependent claims—i.e., the set corresponding to the species that the applicant elects. Thus, generic Claims 12, 19, and 37 never were restricted out of the '378 application.

Nonetheless, Prof. Janicke maintains that Claim 37 was restricted and withdrawn. As is evident from the very words of the examiner's restriction, **Claim 37 was never the subject of a restriction requirement.** Instead, the prosecution history clearly shows that the Examiner proceeded to examine Claim 37. *See, e.g.*, '378 File History, Ex. 4 to the Hemminger Decl., at MAGA065021 (applicant stating that Claim 37 is to be examined); M-AGA065031 (Office Action rejecting Claim 37); and M-AGA065046 (applicant amending Claim 37). Later in the prosecution, the applicant **chose** to cancel Claim 37,[8] but the applicant's cancellation was **not** in response to a restriction requirement. *See id.* at M-AGA065090-94, M -AGA065105, M-AGA065165, MAGA065168.

The prosecution history of the '378 patent application is entirely devoid of any evidence that Claim 37 was ever the subject of a restriction requirement. Perhaps most importantly, Prof. Janicke **admitted** during his deposition that (1) the Examiner's February 23, 1993 Office Action provides no reasons or examples to support a withdrawal of Claim 37 in the March 7, 1994 Office Action, and (2) that the sixth edition of the Manual of Patent Examining Procedure (MPEP), which was in force during the prosecution of the '378 application, imposed a heightened requirement on examiners to explain the basis for any restriction requirement. *See* Janicke Dep. Tr., Ex. 1 to the Hemminger Decl., at 195:10-196:9.

Moreover, to the extent Prof. Janicke offers an opinion that the Examiner may have discussed the basis for the supposed restriction of Claim 37 with the applicant during a telephone interview, this opinion is undermined by Patent Office regulations requiring that all business with the Patent

1  Office must be in writing. *See* 35 U.S.C. § 132, 37 C.F.R. 1.2; *Rohm & Haas Co. v. Crystal Chem.*

2  *Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983) (citing 37 C.F.R. 1.2 and recognizing that "all business

3  with the PTO is to be transacted in writing and its actions must be based exclusively on the written

4  record"). Thus, contrary to the opinions Prof. Janicke expresses in his May 11 report, Claim 37 could

5  not have been included in a divisional application because it was never subject to restriction. *See, e.g.*,

6  *Geneva Pharmaceuticals*, 349 F.3d at 1373. Prof. Janicke's opinion that the Examiner imposed a

7  restriction requirement for Claim 37 is completely contrary to both the law and the file history, and

8  therefore it should be excluded from trial.

9        Importantly, none of the claims that were originally subject to the Examiner's May 29, 1993

10  restriction requirement (*see* '378 File History, Ex. 4 to the Hemminger Decl., at M-AGA065008) were

11  cancelled as a result of the restriction requirement. Although the applicant acknowledged in the

12  November 24, 1993 Response to the Examiner's restriction requirement that Claims 15, 16, 22, 23,

13  and 38-40 were withdrawn (*see id*. at M-AGA065049), Claims 15 and 16 were cancelled in order to

14  put the application in a condition for allowance and obviate the Examiner's rejection of those claims

15  based on their "A$_{90}$" limitation. *See id.* At M-AGA065157. Ultimately, Claims 22 and 23 were allowed,

16  even though they previously were restricted, and Claims 38-40 were examined and rejected. *See id.*

17  at M-AGA065174.

18        In conclusion, Claim 37 of the '378 application was a generic claim and never was restricted

19  and removed from the application. Claims 22 and 23 of the '378 application, though previously

20  restricted, were allowed, and Claims 38-40 were examined and rejected. Under these circumstances,

21  an applicant is not entitled to file a divisional application, and the safe harbor of 35 U.S.C. § 121

22  does not apply. *See generally, Geneva Pharmaceuticals*, 349 F.3d at 1373. Not only is this outcome

23  clearly required by law, but public policy supports it as well—the alternative would extend

24  Medtronic's monopoly for the alleged invention from 20 years (the expiration of the '378 patent in

25  2004) to 34 years (until the current expiration of the '141 patent in 2018). Mr. Janicke's opinion that

26  Claim 37 of the '378 patent was subject to a restriction requirement is speculative and inadmissible

27

28

1 | pursuant to Rule 702.  *See* Fed. R. Evid. 702.  The Court therefore should preclude Mr. Janicke from

2 | offering such an opinion at trial.

3 | **VIII.   CONCLUSION**

4 | For the foregoing reasons, AGA respectfully requests that this Court preclude Mr.

5 | Janicke's testimony regarding inequitable conduct, including his improper legal conclusions

6 | concerning inequitable conduct as well as improper findings of fact regarding materiality and

7 | intent.  Alternatively, if this Court permits Mr. Janicke to testify, then this Court should not permit

8 | him to testify regarding the intent of the applicants, or the examiner's state of mind, intent or

9 | mental impressions.  AGA further requests that the Court exclude from trial all opinions and

10 | testimony in Mr. Janicke's Supplemental Expert Report, particularly opinions and testimony

11 | concerning whether the claims in the '141 patent are protected by 35 U.S.C. § 121 and whether

12 | Claim 37 of the '378 patent was subject to a restriction requirement.

Dated: November 23, 2009

Respectfully submitted,

/s/ Steven D. Hemminger
Steven D. Hemminger

Attorneys for Defendant
AGA MEDICAL CORP.

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that all counsel of record, who are deemed to have consented to electronic

3  service, are being served this November 23, 2009, with a copy of this document via the Court's

4  CM/ECF system.

5      James J. Elacqua, Esq.              james.elacqua@dechert.com

6      Noemi C. Espinosa, Esq.             nicky.espinosa@dechert.com

7      Michelle W. Yang, Esq.              michelle.yang@dechert.com

8      Ellen J. Wang, Esq.                 ellen.wang@dechert.com

9      Hieu H. Phan, Esq.                  hieu.phan@dechert.com

10     Andrew N. Thomases                  andrew.thomases@dechert.com

11   Joshua C. Walsh-Benson               joshua.walsh-benson@dechert.com

12     Karen D. McDaniel                   kmcdaniel@dechert.com

13

14                              By /s/ Steven D. Hemminger
                                  Steven D. Hemminger
15
                                  Attorneys for Defendant
16                                AGA MEDICAL CORPORATION

17

18

19

20

21

22

23

24

25

26

27

28

AGA's Mot. *IN LIMINE* to Excl. Test. of Janicke Re:
Ineq. Conduct and Restr. of Claim 37
Case No. 3:07-cv-00567-MMC (EMC)