James J. Elacqua (CSB No. 187897)
james.elacqua@dechert.com
Noemi C. Espinosa (CSB No. 116753)
nicky.espinosa@dechert.com
Andrew N. Thomases (CSB No. 177339)
andrew.thomases@dechert.com
Michelle W. Yang (CSB No. 215199)
michelle.yang@dechert.com
Hieu H. Phan (CSB No. 218216)
hieu.phan@dechert.com
Joshua C. Walsh-Benson (CSB No. 228983)
joshua.walsh-benson@dechert.com
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, California 94040-1499
Telephone: (650) 813-4800
Facsimile: (650) 813-4848

Attorneys for Plaintiff
MEDTRONIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEDTRONIC, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AGA MEDICAL CORPORATION, a Minnesota corporation,<br><br>Defendant. | Case No. C07-00567 MMC<br><br>**MEDTRONIC'S OPPOSITION TO AGA'S MOTION *IN LIMINE* TO EXCLUDE PROFESSOR JANICKE'S TESTIMONY AND OPINIONS (1) REGARDING INEQUITABLE CONDUCT, AND (2) INCLUDED IN HIS SUPPLEMENTAL REBUTTAL REPORT REGARDING FILE HISTORIES, OBVIOUSNESS-TYPE DOUBLE PATENTING, AND APPLICABILITY OF 35 U.S.C. § 121**<br><br>Date: December 7, 2009<br>Time: 9:00 a.m.<br>Dept.: Courtroom 7, 19th Floor<br>Judge: Honorable Maxine M. Chesney |

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO
EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE
CONDUCT AND OTDP; CASE NO. C07-00567 MMC

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1
II. SUMMARY OF ARGUMENT ......................................................................................... 1
III. PROFESSOR JANICKE SHOULD BE PERMITTED TO TESTIFY REGARDING ISSUES CONSIDERED IN DETERMINING INEQUITABLE CONDUCT ........................................................................................................................ 4
    A. Professor Janicke Qualifies As An Expert On Issues Relating To Inequitable Conduct .................................................................................................... 4
        1. Professor Janicke Is An Expert On Rules And Practice Before The Patent Office ............................................................................................... 5
    B. AGA's Argument Regarding Professor Janicke's Lack Of Expertise Is Based On Misleading Statements ............................................................................ 6
    C. Professor Janicke's Understanding Of The Materiality Prong Of Inequitable Conduct Is Based On The "Reasonable Examiner" Standard Applied By The Federal Circuit ............................................................................. 7
    D. Professor Janicke Does Not Opine On Intent But Instead Provides Opinions On The Usual Practices Of Patent Attorneys, Which Informs Whether The Evidence Of Record Establishes Intent .............................................. 9
    E. Professor Janicke Properly Opines On PTO Procedures, Not Law ...................... 10
    F. AGA Has Failed To Show How Professor Janicke's Testimony Would Be Irrelevant, Prejudicial, Or Cause Confusion, Undue Delay, Or Waste Of Time ...................................................................................................................... 10
IV. PROFESSOR JANICKE SHOULD BE PERMITTED TO TESTIFY REGARDING THE OPINIONS IN HIS SUPPLEMENTAL REBUTTAL EXPERT REPORT RELATING TO AGA'S OBVIOUSNESS-TYPE DOUBLE PATENTING DEFENSE ................................................................................................. 11
    A. Professor Janicke Will Assist The Court In Determining Whether The Safe Harbor Provision of 35 U.S.C. § 121 Is Applicable ............................................ 12
    B. Claims In The Parent '378 Application Were Cancelled As A Result Of A Restriction Requirement, And Professor Janicke Never "Admitted" Otherwise .............................................................................................................. 13
V. CONCLUSION ................................................................................................................ 15

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Page

Agfa Corp. v. Creo Products Inc.,
  451 F.3d 1366 (Fed. Cir. 2006) ........................................................................................ 8

Dayco Prods., Inc. v. Total Containment, Inc.,
  329 F.3d 1358 (Fed. Cir. 2003) ........................................................................................ 8

Digital Control Inc. v. Charles Machine Works,
  437 F.3d 1309 (Fed. Cir. 2006) ................................................................................ *passim*

Engineered Products Co. v. Donaldson Co., Inc.,
  313 F. Supp. 2d 951 (N.D. Iowa 2004) .......................................................................... 13

Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,
  537 F.3d 1357 (Fed.Cir. 2008) ....................................................................................... 10

**STATE CASES**

Ortho Pharma. Co. v. Smith,
  1990 WL 121353 (E.D. Pa. Aug. 17, 1990) .................................................................. 14

Smith & Nephew, Inc. v. Biomet, Inc.,
  2005 WL 3132313 (D. Or. Nov. 21, 2005) ................................................................... 14

Therasense, Inc. v. Becton, Dickinson and Co.,
  2008 WL 2037732 (N.D. Cal. May 12, 2008) ........................................................ *passim*

**DOCKETED CASES**

Chiron Corp. v. F. Hoffman-LaRoche,
  Civil Case No. 98- 00315 (Wilken J.) .............................................................................. 5

Chrimar Sys., Inc. v. Cisco Sys., Inc.,
  Civil Case No. 01-71113 (E.D. Mich. Cohn. J.) ........................................................... 6, 7

Ixys Corp. v. Inter'nl Rectifier Corp.,
  Civil Case No. 02-00313 (Alsup. J.) ................................................................................ 6

Nor. Amer. Container, Inc. v. Plastipak Packaging, Inc.,
  Civil Case No. 99-01749 (N.D. Tex. Kaplan. J.) ............................................................. 6

**FEDERAL STATUTES**

37 C.F.R. § 1.56 .................................................................................................................. 2, 9

37 C.F.R. § 1.97 ..................................................................................................................... 10

37 C.F.R. § 1.142(b) ........................................................................................................... 3, 13

Fed. R. § Evid. 402 ................................................................................................................ 11

Dechert LLP
Attorneys At Law
Silicon Valley

ii

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

## I. INTRODUCTION

Medtronic hereby opposes AGA's Motion *In Limine* To Exclude Professor Janicke's Testimony And Opinions (1) Regarding Inequitable Conduct, And (2) Included In His Supplemental Rebuttal Report Regarding File Histories, Obviousness-Type Double Patenting, And Applicability Of 35 U.S.C. § 121. AGA's motion should be denied because AGA has not shown that Professor Janicke is unqualified to testify as an expert on issues relevant to determining inequitable conduct or obviousness-type double patenting ("OTDP") and AGA has failed to establish that Professor Janicke's testimony would be irrelevant, prejudicial, or cause confusion, undue delay or waste of time.

## II. SUMMARY OF ARGUMENT

As an initial matter, inequitable conduct is a judicially-created doctrine asserted as a defense in litigation. Because it is a legal issue, it is ultimately decided by courts. Thus, neither Professor Janicke nor anyone is an "expert" on inequitable conduct. Rather, a person may be an expert on Patent Office rules and procedure, which can aid the trier of fact in understanding whether inequitable conduct has been committed. Professor Janicke is an expert on customs and usages in the procurement of U.S. patents, the rules regarding the duty of candor before the United States Patent and Trademark Office ("PTO"), and the usual practices of U.S. patent attorneys. His areas of expertise are relevant in determining whether a patentee committed inequitable conduct, but Professor Janicke is not and has never claimed to be an expert on inequitable conduct.

Contrary to AGA's claim, Professor Janicke *is* qualified as an expert to testify on the issues considered in determining inequitable conduct, such as whether information is material to patentability. Among other things, Professor Janicke has (1) been a registered patent attorney for over 40 years, (2) been a patent law professor for 17 years, (3) written numerous publications in the field of patent law, (4) prosecuted nearly 50 patents and examined over 1000 file histories, (5) acted as an expert in 13 patent litigations, and (6) acted as a Special Master for many judges, including those in this district, in litigations where he analyzed PTO file histories.

AGA's main argument for excluding Professor Janicke's testimony regarding inequitable

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO
EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE
CONDUCT AND OTDP; CASE NO. C07-00567 MMC

1 conduct rests on his statement that he does not understand what constitutes a *prima facie* case of
2 unpatentability. But AGA takes Professor Janicke's statement out of context. Professor Janicke
3 explained that he does not know of any real-life examples of claims that are *prima facie*
4 unpatentable. Professor Janicke made this statement because he understands that inequitable
5 conduct is an issue decided by courts, not the PTO. The language regarding *prima facie*
6 unpatentability appears only in 37 C.F.R. § 1.56 ("Rule 56"), which is a codification of the PTO
7 rules and regulations. Thus, Rule 56 is a PTO rule but inequitable conduct is determined by
8 courts not the PTO. Courts are not required to apply Rule 56 to determine inequitable conduct.
9 In fact, even after Rule 56 was amended in 1992 to add the language regarding *prima facie*
10 unpatentability, the Federal Circuit continued to apply a "reasonable examiner" standard and has
11 stated that other standards also may be applied in determining materiality. Thus, it is not
12 surprising that the definition of "*prima facie* unpatentability" and the bounds of that definition
13 remain undefined. Accordingly, understanding when a case of *prima facie* unpatentability is
14 established is not necessary to determine materiality. Therefore, AGA's primary argument for
15 excluding Professor Janicke's testimony regarding inequitable conduct fails.

16 AGA's other arguments for excluding Professor Janicke's testimony regarding inequitable
17 conduct also fail. Professor Janicke has not opined on intent, as AGA claims. Rather, he has
18 opined on the usual practices of patent attorneys in procuring a U.S. patent, and his opinions
19 regarding these practices serve to inform whether the evidence of record establishes intent.
20 Further, contrary to AGA's allegations, Professor Janicke has not opined on the law of
21 inequitable conduct; he has only opined on PTO rules and procedures. Professor Janicke has
22 clearly stated that inequitable conduct is a question of law and he does not intend to opine
23 regarding conclusions of law at trial. Most importantly, despite all of AGA's false arguments
24 about Professor Janicke's lack of expertise, AGA has failed to show how his testimony would be
25 irrelevant, prejudicial, or cause confusion, undue delay, or waste of time. Moreover, Professor
26 Janicke is a rebuttal witness whose testimony is contingent on the testimony of Lawrence
27 Goffney, AGA's expert on issues concerning inequitable conduct. After the Court hears Mr.
28 Goffney's testimony, it can decide whether Professor Janicke's testimony is necessary or relevant

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO
EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE
CONDUCT AND OTDP; CASE NO. C07-00567 MMC

and can exclude his testimony at that time. The Court need not make this decision now.

AGA's arguments for excluding Professor Janicke's testimony regarding OTDP are also flawed. As an initial matter, AGA's motion is really a second and belated summary judgment motion on its OTDP defense disguised as a motion *in limine*. Further, AGA's requested relief is overly broad. AGA seeks to exclude in its entirety Professor Janicke's testimony regarding the opinions in his supplemental rebuttal expert report (which include opinions relating to claim 39) when the arguments in AGA's motion concern only those opinions related to claim 37 of the '378 application. At a minimum, Professor Janicke should be permitted to testify regarding those opinions that do not concern claim 37.

However, even AGA's arguments for excluding Professor Janicke's testimony regarding claim 37 are wrong. AGA alleges that claim 37 was not withdrawn from consideration by the examiner, thereby including that claim within the group of non-elected claims. As Professor Janicke will explain, in an office action dated March 7, 1994, the examiner withdrew claim 37 from consideration, thus including it within the group of non-elected claims. *See* Declaration of Joshua C. Walsh-Benson ("Walsh-Benson Decl."), Ex. 1 at M-AGA 254984[1]. Professor Janicke will also explain that, under the Patent Office rules in effect at the time, only the examiner has the power to withdraw claims from consideration and only after the applicant has made an election in response to a requirement for restriction. 37 C.F.R. § 1.142(b) ("[c]laims to the invention or inventions not elected, if not cancelled, are nevertheless withdrawn from further consideration by the examiner by the election…"). Thus, by withdrawing claim 37 from consideration, the examiner included that claim with the non-elected claims and AGA's arguments to the contrary lack merit. In fact, the applicant consistently noted that the examiner had withdrawn claim 37 from consideration. *See* Ex. 2 at M-AGA 254999; Ex. 3 at M-AGA 255033.

Notably, AGA does not challenge Professor Janicke's qualifications to opine on OTDP or on the complicated file histories, Patent Office rules, and patent prosecution practices involved in the inquiry. Rather, AGA argues that Professor Janicke's opinions should be excluded because they are contrary to the law and file history. Medtronic obviously disagrees with AGA's

---

[1] All further exhibit references shall be to the Walsh-Benson Decl., unless otherwise stated.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

interpretation of the law and file history, and intends to provide the testimony of Professor Janicke to assist the Court in understanding the dense and intricate set of patent-specific materials involved in the OTDP inquiry. Professor Janicke has analyzed and opined upon the very complicated history of four separate patent applications, including how complex Patent Office rules and practices were applied during the patent prosecution at issue. His testimony will assist the Court in understanding the materials and Patent Office rules and practices, and is the exact type of testimony contemplated by Federal Rule of Evidence 702.

Professor Janicke will help explain how claim 37 of the '378 application *was* withdrawn from consideration by the examiner after the examiner's requirement for restriction, thereby treating that claim as non-elected, thus the safe harbor of § 121 *does* apply to the claims at issue. Understandably, AGA does not want the Court to hear Professor Janicke's opinions because those opinions show that AGA's OTDP defense fails. Consequently, AGA mischaracterizes the patent files and Patent Office rules and procedures in an effort to argue that Professor Janicke's opinions are speculative and contrary to the record. This very mischaracterization of the patent files and rules, however, shows exactly why Professor Janicke's testimony will be so important in assisting the Court in understanding the true issues.

Professor Janicke *is* qualified as an expert to testify regarding issues relating to inequitable conduct and OTDP. His testimony will assist the Court in understanding the complex patent files and PTO rules and procedures involved in determining the merits of these issues. Moreover, AGA has failed to establish that Professor Janicke's testimony would be irrelevant, prejudicial, or cause confusion, undue delay or waste of time. Therefore, AGA's motion *in limine* should be denied.

### III. PROFESSOR JANICKE SHOULD BE PERMITTED TO TESTIFY REGARDING ISSUES CONSIDERED IN DETERMINING INEQUITABLE CONDUCT

#### A. Professor Janicke Qualifies As An Expert On Issues Relating To Inequitable Conduct

AGA argues in its motion that Professor Janicke "does not qualify as an expert on inequitable conduct or issues related thereto … [because] he lacks the necessary knowledge and understanding of inequitable conduct and the underlying rules to provide this Court with expert

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

testimony." Motion at 14:10-13. As an initial matter, inequitable conduct is a judicially-created doctrine. *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006) ("The inequitable conduct doctrine, a judicially created doctrine, was borne out of a series of Supreme Court cases in which the Court refused to enforce patents whereby the patentees had engaged in fraud in order to procure those patents."). As such, it is a legal issue decided by the courts and no one is qualified to act as an "expert" on inequitable conduct. Rather, a person may be an expert on Patent Office rules and procedure, which aid in understanding whether inequitable conduct has been committed.

### 1. Professor Janicke Is An Expert On Rules And Practice Before The Patent Office

Professor Janicke is an expert on customs and usage in the procurement of U.S. patents, the rules regarding the duty of candor before the Patent Office, and the usual practices of U.S. patent attorneys. Declaration of Steven Hemminger in Support of AGA's Motion in Limine to Preclude Professor Janicke's Testimony and Opinions (1) Regarding Inequitable Conduct, and (2) Included in His Suppl. Rebuttal Expert Report Regarding File Histories, Obviousness-Type Double Patenting, and Applicability of 35 U.S.C. § 121, Dkt. No. 1035, ("Hemminger Decl."), Ex. 3, ¶ 3. His expertise in these areas is established by his credentials, which include the following:

- Two years as a law clerk under Judge Lane at the Court of Customs and Patent Appeals (predecessor to the modern Court of Appeals for the Federal Circuit);
- Over 40 years as a registered patent attorney, 21 of those years in private practice where he prosecuted and/or supervised the prosecution of approximately 50 patents;
- Distinguished Intellectual Property Law professor at the University of Houston Law Center for the past 17 years, where he taught the school's Patent Bar Review course for 4 years;
- Testified as expert in 13 patent cases;
- Appointed Special Master in five separate patent cases – twice in the Northern

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

1    District of California (*Chiron Corp. v. F. Hoffman-LaRoche*, Civil Case No. 98-
2    00315 (Wilken J.) and *Ixys Corp. v. Inter'nl Rectifier Corp.*, Civil Case No. 02-
3    00313 (Alsup. J.)) and three times outside the district (*Nor. Amer. Container, Inc.*
4    *v. Plastipak Packaging, Inc.*, Civil Case No. 99-01749 (N.D. Tex. Kaplan. J.),
5    *Chrimar Sys., Inc. v. Cisco Sys., Inc.*, Civil Case No. 01-71113 (E.D. Mich. Cohn.
6    J.), and *Hochstein v. Microsoft Corp.*, Civil Case No. 04-73071 (E.D. Mich.
7    Borman. J.));

- Member of the Advisory Committee on Model Patent Jury Instructions for the Northern District of California (2001)

Ex. 4. Professor Janicke has more than 40 years of extensive experience in patent law that qualifies him to testify regarding rules and practice before the PTO. His relevant expertise in this area can properly aid the Court in determining whether inequitable conduct has been committed.

**B.   AGA's Argument Regarding Professor Janicke's Lack Of Expertise Is Based On Misleading Statements**

AGA's argument that Professor Janicke is not qualified to testify regarding issues related to inequitable conduct is unfounded and based on misleading statements. AGA claims that Professor Janicke is not sure if he is an expert on inequitable conduct. Motion at 14:15-16. AGA cites to certain portions of Professor Janicke's deposition transcript, but fails to cite to other portions of his testimony where he explains that he believes he knows as much about the subject as anyone:

> Q.   Do you consider yourself an expert in inequitable conduct?
> A.   I think I know as much about that law subject as anybody else. Expert, I don't know.

Ex. 5 at 14:11-14. Professor Janicke also explains in un-cited portions of his testimony that Patent Office procedure does not deal with inequitable conduct, which is a question of law, and therefore he does not intend to opine on inequitable conduct:

> Q.   Does patent office procedure deal with inequitable conduct?
> A.   It does not. Inequitable conduct is a litigation defense and is not mentioned in the patent office rules.
> Q.   Do you plan on opining on inequitable conduct?

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

> A. If you mean bottom-line conclusions, I think that is a conclusion of law for the judge. So I have no intention of opining…

*Id*. at 14:15-24.

AGA further makes the spurious claim that Professor Janicke's experience in prosecuting patents in front of the Patent Office is "scarce at best," Motion at 14:16-18, while ignoring the fact that he has prosecuted and/or supervised 50 patent applications (*see* Ex. 5 at 7:13-22) and examined over 1000 file histories (*see* Hemminger Decl., Ex. 3 at ¶ 12). Moreover, AGA's allegation that Professor Janicke's marking of 24 paragraphs of Mr. Goffney's report with an "IK" is somehow an admission that he has insufficient knowledge and understanding of areas related to inequitable conduct is disingenuous, as the majority of those paragraphs concern the background and organization of the Patent Office and are irrelevant to issues underlying a determination of inequitable conduct. *See generally*, Hemminger Decl. Ex. 2.

### C. Professor Janicke's Understanding Of The Materiality Prong Of Inequitable Conduct Is Based On The "Reasonable Examiner" Standard Applied By The Federal Circuit

AGA's primary argument regarding Professor Janicke's lack of expertise concerns his statement that he does not understand when a *prima facie* case of unpatentability is established under Rule 56. AGA argues that Professor Janicke cannot render a complete opinion on inequitable conduct without knowledge and understanding of a *prima case* of unpatentability. Motion at 16:12-13. AGA, however, takes Professor Janicke's statement that he does not understand a *prima facie* case of unpatentability out of context. Professor Janicke explained that he does not know of any real-life examples of claims that are *prima facie* unpatentable, and that this lack of real-life applicability has made it difficult for practitioners to understand when a *prima facie* case of patentability is established under the amended Rule 56:

> Q. And what don't you understand about a prima facie case?
>
> MS. YANG: Objection, vague.
>
> A. I can't explain what I don't understand except to say that either through some failing of mine or -- or something, I simply don't know in real-life practice when a claim is prima facie unpatentable in terms of actual examples. This has been a problem in the profession since the rule was promulgated, and that's all I can tell

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

you.

Ex. 5 at 6:11-18.

Professor Janicke made the statement that he does not understand what constitutes a *prima facie* case of unpatentability because he knows that Rule 56 is a PTO rule and courts are not required to apply it in determining materiality. In fact, the Federal Circuit has continued to apply a "reasonable examiner" standard to determine materiality, even after Rule 56 was amended. *Digital Control Inc.*, 437 F.3d at 1316, quoting, *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003) ("For many years, we have held 'that materiality for purposes of an inequitable conduct determination require[s] a showing that 'a reasonable examiner would have considered such prior art important in deciding whether to allow the parent application.'"). The Federal Circuit has further stated that the reasonable examiner standard is the only standard it applies in determining materiality. *Digital Control Inc.*, 437 F.3d at 1316 ("[T]he PTO's 'reasonable examiner' standard … gradually became the sole standard invoked by this court."). Because the Federal Circuit has exclusively used a reasonable examiner standard in determining materiality, there is very little development in the case law explaining what constitutes a *prima facie* case of unpatentability under PTO Rule 56. It is this lack of development in the case law that is the reason for Professor Janicke's lack of knowledge of real-life examples of when a *prima facie* case of unpatentability is established and why in rendering his opinions on materiality Professor Janicke applies the reasonable examiner standard

Contrary to AGA's allegations, an understanding of what constitutes a *prima facie* case of unpatentability is not even necessary to properly opine on materiality. The Federal Circuit has made clear that the "arguably narrower" Rule 56 "was not intended to replace or supplant the 'reasonable examiner' standard … [but rather] to present a clearer and more objective definition of what information the Office considers material to patentability." *Id*. Accordingly, because under the reasonable examiner standard, "material prior art need not even be invalidating prior art … material prior art [also] need not necessarily present a prima facie case of unpatentability." *Agfa Corp. v. Creo Products Inc.*, 451 F.3d 1366, 1373 (Fed. Cir. 2006). Moreover, the test for

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

1 materiality under 37 C.F.R. § 1.56(b) is just one of many that may be used by courts to determine

2 materiality. *Id*. ("[T]he PTO's recent adoption [in 1992] of an arguably narrower standard of

3 materiality does not supplant or replace our case law. Rather, it merely provides an additional

4 test of materiality.").[2]

### D. Professor Janicke Does Not Opine On Intent But Instead Provides Opinions On The Usual Practices Of Patent Attorneys, Which Informs Whether The Evidence Of Record Establishes Intent

AGA alleges that Professor Janicke opines on intent and that his testimony should be precluded because expert testimony on intent is improper. But a closer reading of Professor Janicke's expert report shows that he does not opine on intent at all. Rather, he uses his expertise on the usual practices of patent attorneys in procuring patents to provide an opinion regarding whether Jeffrey Sheldon's actions during prosecution of the '291 application, as reflected in the evidence of record, are indicative of a person intending to deceive the PTO. In paragraph 31 of Professor Janicke's report where AGA alleges he opined on intent, Professor Janicke identifies actions taken by Mr. Sheldon after he received the Cragg II article.[3] Professor Janicke states that on the same day Mr. Sheldon received the Cragg II article he immediately sent the PTO a letter enclosing the article and citing it as potentially relevant. Hemminger Decl. Ex. 3 at ¶31. Mr. Sheldon also took the additional step of requesting an affiliate located near the PTO to hand-carry a copy immediately to the examiner. *Id.* Professor Janicke opined that "these are hardly the actions of someone trying to conceal a reference from the USPTO. On the contrary, they *reflect* an extraordinary effort to disclose the article to the examiner." *Id*. (emphasis added). Professor Janicke thus did not opine on the ultimate question of Mr. Sheldon's intent. Rather, he analyzed whether Mr. Sheldon's actions in submitting the Cragg II article were within the usual practices of patent attorneys prosecuting a patent application and whether they were reflective of an intent

---

[2] The Federal Circuit has identified three other tests in addition to the reasonable examiner standard and 37 C.F.R. § 1.56(b) that courts have and may continue to use in determining materiality : (1) objective "but for," (2) subjective "but for," and (3) "but it may have." *See Digital Control Inc.*, 437 F.3d at 1314.

[3] Mr. Sheldon received the Hughes document at the same time he received the Cragg II article and took the same actions with respect to the Hughes document as he did with Cragg II article. Thus, although paragraph 31 to which AGA cites does not specifically refer to the Hughes document, the same analysis provided by Professor Janicke applies.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

to deceive the PTO. The Federal Circuit has held that because direct evidence of intent is rare, intent to deceive may be inferred from circumstantial evidence such as Mr. Sheldon's actions after he received the Cragg II article. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed.Cir. 2008) ("Direct evidence of deceptive intent is often unavailable; thus, intent to deceive may be inferred from indirect or circumstantial evidence.").

Professor Janicke used his expertise in the usual practices of patent attorneys in procuring a U.S. patent to opine on whether Mr. Sheldon's actions were reflective of an intent to deceive. This opinion is within Professor Janicke's field of expertise, and is not an opinion on the ultimate question of intent. Therefore, Professor Janicke's opinion regarding Mr. Sheldon is proper and should not be excluded.

AGA also argues that Professor Janicke's testimony regarding the Examiner's state of mind, intent, or mental impressions should be excluded. Motion at 18:8-20. The only paragraph of Professor Janicke's report that AGA specifically alleges contains such opinions is paragraph 53. However, that paragraph relates solely to AGA's inequitable conduct allegations concerning the declaration of Dr. Lee Middleman, which the Court has already ruled on summary judgment is excluded from this case.

Professor Janicke's opinions in his report are based on his expertise in the usual practices of patent attorneys in procuring a U.S. patent and on the evidence of record. As such, they are properly within Professor Janicke's field of expertise. These opinions are also not opinions on the ultimate question of intent. Therefore, Professor Janicke's testimony should not be excluded.

### E. Professor Janicke Properly Opines On PTO Procedures, Not Law

AGA argues that Professor Janicke's opinions on the law of inequitable conduct should be excluded and points to two paragraphs of his expert report where Professor Janicke discusses 37 C.F.R. § 1.97 and 1.98. These sections of the Code of Federal Regulations are not law as AGA claims; they are the Patent Office's rules of procedure. Thus, Professor Janicke can properly opine on them and how they are applied by practitioners.

### F. AGA Has Failed To Show How Professor Janicke's Testimony Would Be Irrelevant, Prejudicial, Or Cause Confusion, Undue Delay, Or Waste Of Time

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

1      Most importantly, AGA has failed to show how Professor Janicke's testimony regarding
2  issues considered in determining inequitable conduct would be irrelevant, prejudicial, or cause
3  confusion, undue delay, or waste of time, as required by Fed. R. Evid. 402 and 403. AGA has not
4  demonstrated how it would be prejudiced by permitting the Court to hear Professor Janicke's
5  testimony concerning inequitable conduct. Because Professor Janicke is a rebuttal witness, his
6  testimony is contingent on the testimony of Mr. Goffney. If the Court decides after hearing Mr.
7  Goffney's testimony that Professor Janicke's testimony would be irrelevant or unnecessary, it can
8  decide to exclude his testimony at that time. The Court can also disregard any of Professor
9  Janicke's testimony that it believes is unsupported, speculative, or irrelevant after it hears his
10 testimony. The Court is sophisticated enough to decide what evidence or testimony to admit or
11 exclude. Because AGA has not established any of the requirements to exclude evidence under
12 Rule 402 or 403, AGA's motion should be denied.

### IV. PROFESSOR JANICKE SHOULD BE PERMITTED TO TESTIFY REGARDING THE OPINIONS IN HIS SUPPLEMENTAL REBUTTAL EXPERT REPORT RELATING TO AGA'S OBVIOUSNESS-TYPE DOUBLE PATENTING DEFENSE

15     AGA's motion to exclude Professor Janicke's testimony on OTDP is nothing more than a
16 motion for summary judgment disguised as a motion *in limine*. AGA asks the Court for overly
17 broad relief that is unsupported by any arguments in its motion. AGA seeks to "exclude from
18 trial all opinions and testimony in Mr. Janicke's Supplemental Expert Report, particularly
19 opinions and testimony concerning whether the claims in the '141 patent are protected by 35
20 U.S.C. § 121 and whether Claim 37 of the '378 patent was subject to a restriction requirement."
21 Motion at 22:9-12. However, the only argument raised in AGA's motion relating to Professor
22 Janicke's supplemental rebuttal expert report concerns claim 37 of the '378 application. *See*
23 *generally*, Motion at 19-22. Professor Janicke's supplemental report contains other opinions
24 relating to AGA's OTDP defense, such as his opinion that claim 39 is protected by the safe
25 harbor provision of § 121. AGA cannot use arguments relating solely to claim 37 to preclude
26 Professor Janicke from opining on all the opinions in his supplemental report, including those
27 concerning claim 39. Moreover, AGA's assertion that Professor Janicke should be precluded
28 from testifying regarding OTDP because claim 37 was never subject to a restriction requirement

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO
EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE
CONDUCT AND OTDP; CASE NO. C07-00567 MMC

is plainly wrong, as Medtronic shows in its concurrently filed Opposition To AGA's Motion *In Limine* To Exclude Evidence And Argument At Trial That The Asserted Patent Claims Are Subject To Safe Harbor Under 35 U.S.C. § 121. Medtronic hereby incorporates by reference that Opposition.

### A. Professor Janicke Will Assist The Court In Determining Whether The Safe Harbor Provision of 35 U.S.C. § 121 Is Applicable

Professor Janicke is well-qualified to assist the Court in determining whether the safe harbor provision of § 121 applies to the claims at issue. Professor Janicke possesses substantial experience with respect to restriction practice at the United States Patent and Trademark Office and with the corresponding double patenting issues. Hemminger Decl., Ex. 4 at 3. In fact, Professor Janicke spent two years working as a law clerk under Judge Lane at the Court of Customs and Patent Appeals (predecessor to the modern Court of Appeals for the Federal Circuit), spending the majority of his time dealing with appeals from the PTO where issues surrounding requirements for restriction and double patenting frequently emerged. *Id*.

In an effort to assist the Court, Professor Janicke will provide testimony analyzing and explaining four complicated file histories that include a large amount of correspondence between counsel for the patent applicant, Mr. James Jervis, and the Patent Office. These file histories span a number of years and involve numerous complex Patent Office procedures. He will also provide insight into other patent prosecution practice. Professor Janicke's testimony will not be speculative, as AGA alleges. On the contrary, Professor Janicke's testimony is the exact type of testimony contemplated by Federal Rule of Evidence 702, as it will assist the Court in understanding a dense and intricate set of patent-specific materials.

AGA does not contend that Professor Janicke is unqualified to testify regarding issues related to OTDP. Rather, it alleges that he should be precluded from testifying on OTDP because his opinions are incorrect. Yet, AGA has provided absolutely no legal authority for the proposition that simply because it disagrees with Professor Janicke's opinions, such testimony must be excluded. There is no legal basis for AGA's position. If AGA truly thinks Professor Janicke's testimony is incorrect, it will have the right to cross-examine him when he testifies.

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

1  *Engineered Products Co. v. Donaldson Co., Inc.*, 313 F. Supp. 2d 951, 1008 (N.D. Iowa 2004)

2  ("Rule 705 permits [the party who is not offering the expert] to challenge during cross-

3  examination the basis for [the expert's] opinion regarding [the] 'ultimate issue' in [the]

4  litigation"). But AGA has provided no sound reason for excluding Professor Janicke's testimony

5  altogether.

6        Professor Janicke qualifies as an expert on OTDP and his testimony meets the

7  requirements of Rule 702. Therefore, AGA's motion should be denied.

8      **B.**     **Claims In The Parent '378 Application Were Cancelled As A Result Of A Restriction Requirement, And Professor Janicke Never "Admitted"**

9            **Otherwise**

10        AGA argues that Professor Janicke should be precluded from testifying that any claims of

11  the '141 patent were cancelled due to a restriction requirement. Specifically, AGA asserts that

12  claim 37 of the '378 application was never the subject of a restriction requirement. Motion at 19.

13  AGA's argument is not supported by the record.

14        As Professor Janicke will explain, in an office action dated March 7, 1994, the examiner

15  withdrew claim 37 from consideration, thereby including claim 37 within the group of non-

16  elected claims. Ex. 1 at M-AGA 254984. Professor Janicke will also explain that, under the

17  Patent Office rules in effect at the time, only the examiner has the power to withdraw claims from

18  consideration and only after the applicant has made an election in response to a requirement for

19  restriction. 37 C.F.R. § 1.142(b) ("[c]laims to the invention or inventions not elected, if not

20  cancelled, are nevertheless withdrawn from further consideration by the examiner by the

21  election…"). Thus, as Professor Janicke will opine, by withdrawing claim 37 from consideration,

22  the examiner included that claim with the group of non-elected claims.

23        AGA argues that the inclusion of application claim 37 in the list of "withdrawn" claims

24  was simply a hand-written error on an office action cover page. *See e.g.*, Motion at 11 at M-AGA

25  254984. AGA is wrong because claim 37 was never addressed on the merits within the body of

26  the office action. Ex. 1 at M-AGA 254984. Professor Janicke will opine that this indicates that

27  claim 37 fell within the scope of the non-elected claims and would no longer be considered in the

28  '378 application. *See* 37 C.F.R. § 1.142(b). In fact, as Professor Janicke will explain, under

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO
EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE
CONDUCT AND OTDP; CASE NO. C07-00567 MMC

1  Section 132(a) of the Patent Act, an examiner must include reasons why any claim is rejected or
2  subject to objection. 35 U.S.C. § 132(a). Thus, the fact that the body of the office action did not
3  include any rejection or objection to claim 37 shows that the examiner had considered it
4  withdrawn from prosecution. For a more complete explanation of the bases for Medtronic's
5  position that the examiner withdrew claim 37 from consideration and thereby included it in the
6  group of non-elected claims, Medtronic refers the Court to its concurrently-filed Opposition To
7  AGA's Motion *In Limine* To Exclude Evidence And Argument At Trial That The Asserted Patent
8  Claims Are Subject To Safe Harbor Under 35 U.S.C. § 121.

9  AGA implies in its motion that Professor Janicke admitted that claim 37 was not subject
10 to a restriction requirement (*see* Motion at 20:17-24), but Professor Janicke never made any such
11 admission. AGA takes Professor Janicke's statements regarding one office action and one
12 provision of the MPEP out of context and equates it to an admission by him that claim 37 was
13 never subject to a restriction requirement. The Examiner's subsequent actions, however, indicate
14 that claim 37 was in fact withdrawn and made a part of the non-elected claims, which was
15 confirmed in a subsequent office action by applicant's attorney, Jeffrey Sheldon. Ex. 2 at M-
16 AGA 254999; Ex. 3 at M-AGA 255033. Professor Janicke will explain this at trial.

17 To assist the Court in determining whether claim 37 was subject to a restriction
18 requirement, Professor Janicke will testify regarding the PTO rules and procedures that were
19 invoked during the prosecution of the '378 application. This Court has relied on patent law
20 experts such as Professor Janicke to assist in determining substantive issues of patent law.
21 *Therasense, Inc. v. Becton, Dickinson and Co.*, 2008 WL 2037732, at *4 (N.D. Cal. May 12,
22 2008) (Alsup, J.). In the context of OTDP, other courts have also relied upon the assistance of
23 patent law experts. *See Smith & Nephew, Inc. v. Biomet, Inc.*, 2005 WL 3132313, at *2 (D. Or.
24 Nov. 21, 2005). *See also*, *Ortho Pharma. Co. v. Smith*, 1990 WL 121353, at *8 (E.D. Pa. Aug.
25 17, 1990). Because Professor Janicke's testimony will assist the Court in understanding the PTO
26 rules and procedures relating to OTDP and the complex patent-specific material involved in the
27 inquiry, AGA's motion should be denied.

28

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO
EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE
CONDUCT AND OTDP; CASE NO. C07-00567 MMC

## V. CONCLUSION

For all the foregoing reasons, Medtronic respectfully requests that the Court deny AGA's Motion *In Limine* To Exclude Professor Janicke's Testimony And Opinions (1) Regarding Inequitable Conduct, And (2) Included In His Supplemental Rebuttal Report Regarding File Histories, Obviousness-Type Double Patenting, And Applicability Of 35 U.S.C. § 121.

Dated: December 2, 2009              Dechert LLP

By:   Joshua C. Walsh-Benson
      James J. Elacqua
      Noemi C. Espinosa
      Andrew N. Thomases
      Michelle W. Yang
      Hieu H. Phan
      Joshua C. Walsh-Benson

      Attorneys for Plaintiff
      MEDTRONIC, INC.

Dechert LLP
Attorneys At Law
Silicon Valley

15

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served this 2nd day of December, 2009, with an electronic copy of this document via the Court's CM/ECF system.

| | |
|---|---|
| Steven D. Hemminger, Esq. | steve.hemminger@alston.com |
| Michael S. Connor, Esq. | mike.connor@alston.com |
| Lance A. Lawson, Esq. | lance.lawson@alston.com |
| Brian F. McMahon, Esq. | brian.mcmahon@alston.com |
| Marissa R. Ducca, Esq. | marissa.ducca@alston.com |
| Miranda M. Olvera, Esq. | miranda.olvera@alston.com |
| Jessica J. Sibley, Esq. | jessica.sibley@alston.com |

By: ___Joshua C. Walsh-Benson___
Joshua C. Walsh-Benson

Attorney for Plaintiff
MEDTRONIC, INC.

13663193

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

MEDTRONIC'S OPP. TO AGA'S MOTION IN LIMINE TO EXCLUDE JANICKE'S TESTIMONY RE: INEQUITABLE CONDUCT AND OTDP; CASE NO. C07-00567 MMC