STEVEN D. HEMMINGER (Bar No. 110665)
ALSTON & BIRD LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA 94306-2112
Telephone: (650) 838-2029
Facsimile: (650) 838-2001
steve.hemminger@alston.com

MICHAEL S. CONNOR (*pro hac vice*)
LANCE A. LAWSON (*pro hac vice*)
BRIAN F. McMAHON (Bar No. 235373)
MIRANDA M. SOOTER (*pro hac vice*)
JESSICA J. SIBLEY (*pro hac vice*)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Telephone: (704) 444-1000
Facsimile: (704) 444-1770
mike.connor@alston.com
lance.lawson@alston.com
brian.mcmahon@alston.com
miranda.sooter@alston.com
jessica.sibley@alston.com

Attorneys for Defendant
AGA MEDICAL CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MEDTRONIC, INC., a Minnesota corporation,<br><br>                                        Plaintiff,<br><br>   v.<br><br>AGA MEDICAL CORPORATION, a Minnesota corporation,<br><br>                                        Defendant. | Case No. 3:07-cv-00567 MMC (EMC)<br><br>**AGA'S MOTION TO PRECLUDE MR. JANICKE'S TESTIMONY REGARDING (1) SCOPE AND MEANING OF THE CLAIMS AND ANY PATENTABLE DISTINCTIONS AND (2) MATTERS OUTSIDE OF THE WRITTEN PROSECUTION HISTORIES**<br><br>Date:     December 14, 2009<br>Time:     8:30 a.m.<br>Place:    Courtroom 7, 19th Floor<br>Judge:    Honorable Maxine M. Chesney |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................................... 2

    A.   The Level of Ordinary Skill in the Art ............................................................. 2

    B.   Mr. Janicke's Lack of Qualifications as a Person of Skill in the Art and Reliance on Dr. Zarins' Opinions .................................................................... 3

III.   LEGAL STANDARDS ................................................................................................. 4

    A.   Patent Practice and Procedure Experts Cannot Testify as Persons of Skill in the Art ................................................................................................. 4

    B.   Testimony That Suppplements or Contradicts the Written Prosecution Histories Is Improper ...................................................................................... 7

IV.   MR. JANICKE AND DR. ZARINS ARE NOT SKILLED IN THE ART ........................... 11

V.   THE COURT SHOULD PRECLUDE MR. JANICKE FROM TESTIFYING REGARDING THE SCOPE OF THE CLAIMS, ANY DIFFERENCES BETWEEN THE CLAIMS OF THE '378 AND '141 PATENTS, AND WHETHER THE ASSERTED CLAIMS OF THE '141 PATENT ARE OBVIOUS IN VIEW OF THE CLAIMS OF THE '378 PATENT ..................................... 12

VI.   THE COURT SHOULD PRECLUDE MR. JANICKE FROM TESTIFYING REGARDING MATTERS THAT ARE NOT MEMORIALIZED IN THE WRITTEN PROSECUTION HISTORIES OF THE '378 AND '141 PATENTS ...................................................................................................................... 15

VII.   CONCLUSION .......................................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*,
  1995 US Dist. LEXIS 22335 (N.D. Cal. April 25, 2005) ...................................................... 16

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1994) ....................................................................................................... 5

*Flex-Rest, LLC v. Steelcase, Inc.*,
  455 F.3d 1351 (Fed. Cir. 2006) ........................................................................................ 6

*Geneva Pharms., Inc. v. GlaxoSmithKline, Inc.*,
  349 F.3d 1373 (Fed. Cir. 2003) ............................................................................. 7, 8, 15, 16

*Gerber Garment Tech., Inc. v. Lectra Sys., Inc.*,
  916 F.2d 683 (Fed. Cir. 1990) .......................................................................................... 8

*Kumho Tire Co., Ltd., v. Carmichael*,
  526 U.S. 137 (1999) ....................................................................................................... 5

*Li Second Family L.P. v. Toshiba Corp*,
  231 F.3d 1373 (Fed. Cir. 2000) ........................................................................................ 11

*Litton Systems, Inc. v. Whirlpool Corp.*,
  728 F.2d 1423 (Fed. Cir. 1984) ............................................................................... 10, 15, 16

*P&G v. Teva Pharms. USA, Inc.*,
  566 F.3d 989 (Fed. Cir. 2009) ......................................................................................... 6

*Pfizer, Inc. v. Apotex, Inc.*,
  480 F.3d 1348 (Fed. Cir. 2007) ........................................................................................ 6

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008) ............................................................................. 5, 6, 13, 14

*Symbol Techs., Inc. v. Opticon, Inc.*,
  935 F.2d 1569 (Fed. Cir. 1991) ........................................................................................ 8

*United States v. Finley*,
  301 F.3d 1000 (9th Cir. 2002) ......................................................................................... 5

*United States v. Gwaltney*,
  790 F.2d 1378 (9th Cir. 1986) ......................................................................................... 5

*Urologix, Inc. v. Prostalund AB*,
  227 F. Supp. 2d 1033 (E.D. Wis. 2002) ....................................................................... 11, 16

## STATUTES

35 U.S.C. § 120 ................................................................................................................... 11

35 U.S.C. § 121 ................................................................................................................ 7, 8

35 U.S.C. § 132 ............................................................................................................. 8, 9, 15

## OTHER AUTHORITIES

37 C.F.R. § 1.133 ......................................................................................................... 9, 10, 15

37 C.F.R. § 1.2 ................................................................................................................ *passim*

MPEP § 713.04 ............................................................................................................... *passim*

MPEP § 812.01 ......................................................................................................... 9, 10, 15, 16

## FEDERAL RULES

Federal Rule of Evidence 401 ................................................................................................ 15

Federal Rule of Evidence 402 ................................................................................................ 15

Federal Rule of Evidence 702 ........................................................................................... *passim*

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant AGA Medical Corporation ("AGA") hereby moves this Court for an order precluding any testimony of Paul M. Janicke regarding (1) the scope of the claims of U.S. Patent No. 5,597,378 ("the '378 patent") and U.S. Patent No. 6,306,141 ("the '141 patent), any differences between the claims of those patents, and whether the claims of the '141 patent are obvious in view of the claims of the '378 patent, and (2) matters outside of the written record of the prosecution histories.  This motion is based upon this Notice of Motion, Memorandum of Points and Authorities, Declaration of Michael S. Connor, the Expert Reports of Professor Paul M. Janicke, the Deposition of Paul M. Janicke, and other *papers* and pleadings on file and on such other argument and evidence as may be presented to this Court at or prior to the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In compliance with the Court's request that the parties address objections to witnesses' testimony before the witness takes the stand in order to streamline the bench trial, AGA hereby asks the Court to preclude Medtronic's expert on patent office practice and procedure, Mr. Janicke, from testifying at trial regarding two issues.  First, the Court should preclude Mr. Janicke's opinions regarding interpretation of the scope of the claims of the '378 and '141 patents, any differences between the claims of those patents, and whether the claims of the '141 patent are obvious or patentably distinct in view of the claims of the '378 patent because he is not a person of skill in the art and because he based his opinions on the improper opinions of Dr. Zarins, who also is not a person of skill in the art.  Second, the Court should preclude Mr. Janicke from testifying regarding factual matters outside of the written record of the prosecution histories.

Each of Mr. Janicke's opinions based in whole or in part on Dr. Zarins' impermissible testimony should be precluded.  On December 10, 2008, the Court found that Dr. Zarins was unqualified to testify about how a person skilled in the art would understand the claims of the '141

patent and the '378 patent because he did not possess the requisite level of skill in the art of engineering and design of medical devices including shape memory alloy elements.  Mr. Janicke admitted during discovery that he did not have an independent understanding of the technical aspect of the claims in suit and that he relied on Dr. Zarins' opinions regarding the meaning and scope of the asserted claims of the '141 patent (which all explicitly claim either a "stent" or a "guide wire").  The Court therefore should preclude Mr. Janicke from testifying concerning the scope or any interpretation of the claims and any purported patentable distinctions between the claims because Mr. Janicke lacks the necessary skill in the art, and his opinions based on Dr. Zarins' improper testimony also are improper.

AGA also anticipates that Medtronic will attempt to offer testimony from Mr. Janicke that improperly supplements and/or contradicts the written prosecution histories of the '378 and '141 patents because Mr. Janicke included these improper opinions in his supplemental rebuttal expert report of May 11, 2009.  The Court also should preclude Mr. Janicke from testifying regarding matters that are not memorialized in the written prosecution histories of the '378 and '141 patents because controlling cases and patent regulations and rules required (and still require) that all matters with the patent office be conducted in writing, and the Federal Circuit has held that it is error to rely on information outside the written record of the prosecution histories.

## II.  FACTUAL BACKGROUND

### A.  THE LEVEL OF ORDINARY SKILL IN THE ART

Medtronic has maintained throughout this litigation that an ordinarily skilled artisan must possess a material science or related engineering degree.  *See* Joint Proposed Final Jury Instructions (4/28/09), Dkt. No. 473, at 16:5-7; Joint Proposed Final Jury Instructions (6/9/09), Dkt. No. 547, at 16:5-7; Joint Proposed Final Jury Instructions (7/29/09), Dkt. No. 915, at 26:5-7.  The Court instructed the jury on August 3, 2009 regarding the level of ordinary skill in the art as follows:

> Medtronic contends that the level of ordinary skill in the art in 1983 was that of a person who possessed a degree in material science or a related engineering degree, and had some familiarity with implantable medical devices in 1983.  AGA contends that the level of ordinary skill in the art in 1983 was that of a person that either had a bachelors of science degree in mechanical engineering

1           or in metallurgy and materials science, and had at least one year of
experience working with shape memory alloys, or had read and
understood at least one of many review articles in the art that were
available in 1983.

Jury Charge, Dkt. No. 972, at 175:1-4.

### B.   MR. JANICKE'S LACK OF QUALIFICATIONS AS A PERSON OF SKILL IN THE ART AND RELIANCE ON DR. ZARINS' OPINIONS

Mr. Janicke, a patent law professor, received a bachelor's degree in electrical engineering

from Manhattan College in 1961 and graduated from New York University Law School in 1964.

Curriculum Vitae of Paul. M. Janicke, Ex. 1 to the Connor Decl.  He also earned an L.L.M. in Patent

& Trade Regulation Law, George Washington University in 1971.  *Id*.  Mr. Janicke is not a person of

skill in the art, admitted that he lacks skill in the art, and further admitted that he relied on Dr.

Zarins' opinions regarding the scope and meaning of the claims of the '378 and '141 patents:

- Mr. Janicke does not have a degree in material science or a related engineering degree.

- He also stated in paragraph 22 of his supplemental rebuttal expert report that he relied on Dr. Zarins' opinion that the addition of the "guide wire" limitation in claims 1, 4, and 5 of the '141 patent indicated that the claims were drawn to a class of medical devices that includes "stents."  Janicke Supp. Report, Ex. 2 to the Connor Decl., at ¶ 22.

- Later, during his deposition, Mr. Janicke admitted that paragraph 22 of his report was merely a recitation of Dr. Zarins' opinion.  Deposition Transcript of Paul M. Janicke ("Janicke Dep. Tr."), Ex. 3 to the Connor Decl., at 288:22-289:4.

- Mr. Janicke repeatedly disclaimed skill in the art and stated that he relied on Dr. Zarins' opinions interpreting the elements of the claimed devices.

  o Mr. Janicke admitted during his first deposition in February that he does not have any expertise in metallurgy and therefore could not offer opinions regarding the technical aspects of shape memory alloys.  *See* Janicke Dep. Tr. Excerpt, Ex. 4 to the Connor Decl., 105:4-17.

  o Mr. Janicke also admitted during his deposition in May 2009 that all of the opinions he was prepared to give regarding AGA's double patenting defense were included in his supplemental report.  Janicke Dep. Tr., Ex. 3 to the Connor Decl., 313:3-13.

  o Counsel for AGA questioned Mr. Janicke regarding whether claim 37 of the

'378 application was limited to a stent, guide wire, catheter, blood filter, or IUD, and Mr. Janicke stated that he was not skilled in the art and did not have an opinion regarding the scope.  Janicke Dep. Tr., Ex. 3 to the Connor Decl., at 174:1-175:9.  He explained, "I personally do not know, but I have **only the technical information from Dr. Zarins**."  Janicke Dep. Tr., Ex. 3 to the Connor Decl., at 234:5-235:11.

Most significantly, Mr. Janicke stated during his deposition that he did not reach **any** conclusions about patentable distinctions between the claims of the '378 and '141 patents:

Q.  Have you compared any of the claims of the '378 patent with the claims of the '141 patent to make a determination as to whether or not those claims are patentably distinct from each other?

A.  I've compared the claims, but I didn't – I wasn't intending to.  I didn't reach any conclusions about patentable distinctness.

Q.  So when you say that the stent configuration is distinct from any claim of the '378 patent, you're not providing an opinion that the inclusion of the term "stent" as the shape memory alloy element somehow renders those claims patentably distinct from the claims in the '378 patent that merely refer to a shape memory alloy element, correct?

A.  I am not making that conclusion.

Q.  An in fact, is it your opinion that the shape memory alloy element of the claims in the '378 patent could include a stent?

A.  I don't have any opinion on that.

Janicke Dep. Tr., Ex. 3 to the Connor Decl., at 292:4-24.  Mr. Janicke also clarified that when he opined that the asserted claims of the '141 patent were drawn to a distinct invention, he was not comparing the scope of the claims but merely comparing the literal words.  Janicke Dep. Tr., Ex. 3 to the Connor Decl., at 296:11-25.

## III.    LEGAL STANDARDS

### A.    PATENT PRACTICE AND PROCEDURE EXPERTS CANNOT TESTIFY AS PERSONS OF SKILL IN THE ART

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

> experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court has "assign[ed] to the trial judge the task of ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1994); *see also Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 152 (1999).  This standard of reliability and relevancy applies to all experts, regardless of specialty.  *See Kumho Tire*, 526 U.S. at 151-152.  The proponent of expert testimony bears the burden of showing that the witness has sufficient expertise.  *United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986); *see also United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002).

Very recently, the Federal Circuit made clear that Rule 702 prohibits admitting testimony from a witness who is not skilled in the art where the issue calls for consideration of evidence from the perspective of one of ordinary skill in the art.  *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008).  In *Sundance*, the Federal Circuit held that it is an abuse of discretion to allow a witness who is not a person of skill in the art to opine on invalidity or infringement issues:

> We hold that it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art.  Testimony proffered by a witness lacking the relevant technical expertise fails the standard of admissibility under Fed. R. Evid. 702.  Indeed, **where an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to *Rule 702* to allow a witness to testify on the issue who is not qualified as a technical expert in that art**.

*Id.* at 1363 (emphasis added).

The Court of Appeals specifically explained that expert witnesses must qualify as persons of ordinary skill in the pertinent art in order to offer testimony regarding anticipation or obviousness at trial:

> With regard to invalidity, for example, a witness not qualified in the pertinent art may not testify as an expert as to anticipation, or any of the underlying questions, such as the nature of the claimed invention, what a prior art references[sic] discloses, or whether the asserted claims read on the prior art reference.
>
> Nor may a witness not qualified in the pertinent art testify as an expert on obviousness, **or any of the underlying technical questions, such as the nature of the claimed invention, the scope and content of prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention**.

*Id*. at 1364 (emphasis added); *see also Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360-61 (Fed. Cir. 2006) (affirming the district court's preclusion of Flex-Rest's expert, Dr. Rosecrance, whose area of expertise was in ergonomics, but one skilled in the art of the invention was a keyboard designer).

Notably, the Federal Circuit did not limit its holding in *Sundance* to ultimate conclusions of noninfringement or invalidity (nor did it limit the holding to jury trials), but instead extended its holding to testimony on the underlying technical questions. *Sundance*, 550 F.3d at 1364 (emphasis added).[1]  The facts in *Sundance* are strikingly similar to those presented by Mr. Janicke's testimony because Mr. Janicke's background and experience mirror those of Mr. Bliss, DeMonte's expert in patent office practice and procedure.  The Federal Circuit noted Mr. Bliss's background and experience as a patent attorney and his lack of technical experience:

> Mr. Bliss's pre-trial expert report details his years of experience as a patent attorney, including preparation of opinions on invalidity and knowledge of USPTO practice and procedure.   The report does not present Mr. Bliss as having any personal technical experience, or skills in the field of mechanics, much less covers.   Although Mr. Bliss also stated in his report that he has experience in "the vehicle field," support for this statement was only in the

---

[1]  The underlying technical questions in an obviousness-type double patenting analysis are more limited than those in a statutory obviousness analysis and include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; and (3) the differences between the claimed invention and the prior art.  *See P&G v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009) (explaining that (1) statutory obviousness compares claimed subject matter to the prior art, while non-statutory double patenting compares claims in an earlier patent to claims in a later patent or application; (2) double patenting does not require inquiry into a motivation to modify the prior art; and (3) double patenting does not require inquiry into objective criteria suggesting non-obviousness); *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir. 2007).

context of preparing and prosecuting patent applications for inventions in the vehicle field and in testifying "as an expert on patent law and patent office procedure" in connection with a separate suit also related to the vehicle field.  Nor does his appended curriculum vitae reveal any relevant technical experience with vehicle or other cover systems.

*Id*.  Just like DeMonte's patent practice and procedure expert, Mr. Janicke, Medtronic's patent practice and procedure expert, also lacks the technical expertise of a person of skill in the art.

### B.   TESTIMONY THAT SUPPLEMENTS OR CONTRADICTS THE WRITTEN PROSECUTION HISTORIES IS IMPROPER

Only the written prosecution histories of the patents-in-suit need be consulted in determining whether the asserted claims are invalid for double patenting.  In *Geneva Pharms., Inc. v. GlaxoSmithKline, Inc.*, the Federal Circuit addressed the district court's finding that there was no restriction requirement that enabled section 121 to act as a shield against GSK's '720 patent, which Geneva contended was invalid for double patenting.  349 F.3d 1373, 1378 (Fed. Cir. 2003). The court explained that GSK faced two obstacles to obtaining protection under section 121:  first, the original application did not contain the same "method of use" claims that later appeared in the issued '720 patent, and second, the examiner "did not issue a formal restriction requirement relating to the claims at issue in any document in the record."  *Id*.

The *Geneva* court rejected GSK's argument that a summary of an interview held in 1979 constituted a restriction requirement that satisfied the strict requirements of 35 U.S.C. § 121.  *Id*. at 1380-81.  The summary of the interview provided no clear line of demarcation that suggested the claims were subject to a restriction requirement, *see id*. at 1381, and the term "restriction" did not appear in the July 9, 1979 response that the applicants filed in response to the interview.  *Id*.  The court explained, "[t]he quoted passage does not state that the examiner required restriction between those two sets of claims.  Moreover, the passage does not state that any claims are patentably distinct."  *Id*.  Ultimately, the court concluded that section 121's safe harbor applies only to restriction requirements that are documented *in clarity and detail by the PTO* and that, under the circumstances, the alleged oral restriction requirement at the interview was not sufficiently memorialized.  *Id*. at 1382.

The court explained that the policy supporting its requirement that restriction requirements clearly be documented in writing is the need for a line of demarcation between restricted subject matter to allow determination that claims in continuing applications are consonant and therefore deserving of the safe harbor:

> Section 121 shields claims against a double patenting challenge if consonance exists between the divided groups of claims and an earlier restriction requirement.  *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1579 (Fed. Cir. 1991) ("Consonance requires that the line of demarcation between the 'independent and distinct inventions' that prompted the restriction requirement be maintained . . . . Where that line is crossed the prohibition of the third sentence of Section 121 does not apply.") (quoting *Gerber Garment Tech., Inc. v. Lectra Sys., Inc.*, 916 F.2d 683, 688 (Fed. Cir. 1990).  **If a restriction requirement does not clearly set forth the line of demarcation, then challenged claims could not satisfy the consonance requirement.   Therefore restriction requirements must provide a clear demarcation between restricted subject matter to allow determination that claims in continuing applications are consonant and therefore deserving of § 121's protections**.

*Id*. at 1381 (emphasis added).

The Federal Circuit's decision in *Geneva* that restriction requirements must be documented in writing, in addition to ensuring that a clear line of demarcation between restricted subject matter exists, also accords with the longstanding policy that the public is entitled to rely on the written prosecution history.  During prosecution of the '378 and '141 patents, both federal law and PTO procedures required that business with the PTO be conducted in writing and explained that matters outside the written record – including oral promises and understandings – were without legal effect. Section 132 of the Patent Act addressed examiner rejections and objections and stated:

> Whenever, on examination, any claim for a patent is rejected, or any objection or requirement made, the Commissioner shall notify the applicant thereof, stating the reasons for such rejection, or objection or requirement, together with such information and references as may be useful in judging of the propriety of continuing the prosecution of his application.

35 U.S.C. § 132 (2001).[2]  Thus, whenever an examiner made a restriction requirement during examination, the examiner was required by federal statute to notify the applicant and to state the reasons for the restriction requirement.

Furthermore, rules and regulations in force during the prosecution of the '378 patent required that all business with the PTO, including restriction requirements, be made in writing.  Section 1.2 explicitly required that all business with PTO be conducted in writing and – importantly – no effect would be given to purported oral agreements, stipulations, or understandings:

> **37 C.F.R. § 1.2 - Business to be transacted in writing**
>
> All business with the Patent and Trademark Office should be transacted in writing.  The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary.  **The action of the Patent and Trademark Office will be based exclusively on the written record in the Office.  No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.**

37 C.F.R. § 1.2 (emphasis added).  Thus, any oral exchange between the applicant and examiner that is not documented in writing in the prosecution history is without effect.  According to 37 C.F.R. § 1.133, when an applicant requested reconsideration in view of an interview with the examiner, the applicant was required to file "a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant."  37 C.F.R. § 1.133(b).  According to the regulations, the applicant bore the burden of creating a written record of any interviews with the examiner.

The Manual of Patent Examining Procedure ("MPEP") in effect at the time also required that all transactions be documented in writing, particularly with regard to interviews with the examiner and restriction requirements.  Section 713.04 of the MPEP required that a "complete written statement" of the substance of any interview with the examiner be made of record in the application.  MPEP § 713.04.  Finally, MPEP § 812.01 governed telephone restriction practice and also required written documentation, regardless of the subsequent course of action that the applicant chose.

---

[2] The quoted excerpt of section 132 remained unchanged through 2001, the date of issuance of the '141 patent, except that the term "Commissioner" was replaced with "Director" in 1999.  Unless otherwise noted, all citations to statutes, rules, and regulations in this Section III.B are to provisions in effect during 1994 through 2001.

Section 812.01 explained that if the applicant objected or failed to respond to a telephonic restriction requirement, the usual restriction letter would be mailed and would make reference to the unsuccessful telephone call.  MPEP § 812.01.  If the applicant instead made an oral election, the examiner would then proceed to incorporate into the Office Action a formal restriction requirement including the date of the election, the attorney's name, and a complete record of the telephone interview, followed by a complete action on the elected claims including linking or generic claims if present.  *Id*.  Thus, the Patent Act, the corresponding regulations interpreting the Act, and PTO rules enforcing these regulations all required (and still require) that requirements for restriction be made in writing.  A patentee's post-issuance argument that the applicant reached any understanding with the examiner has no effect.

The Federal Circuit has addressed the effect of an applicant's failure to document negotiations with the PTO in writing, strictly applying the rule requiring written documentation.  In *Litton Systems, Inc. v. Whirlpool Corp.*, the court held that Litton's acquiescence in the PTO's requirement that Litton file a continuation-in-part ("CIP") application estopped Litton from arguing that the application did not add new matter.  Affirming the district court's holding of invalidity, the court held that Litton was estopped from arguing that the PTO had abandoned its position that the added limitations were new matter where the purported abandonment was not recorded in the written prosecution history.  728 F.2d 1423, 1438-1440 (Fed. Cir. 1984).  The court explained that the policies in 37 C.F.R. §§ 1.2 and 1.133, and MPEP § 713.04 all supported the application of estoppel against Litton:

> The MPEP, commonly relied upon as a guide to patent attorneys and patent examiners on procedural matters, details procedures to be followed during and after an interview…. (The language in the current edition of the MPEP is more direct: "A complete written statement as to the substance of any face-to-face or telephone  interview with regard to an application must be made of record in the application, whether or not an agreement with the examiner was reached * * *. It is the responsibility of the applicant * * to make the substance of an interview of record in the application file, * * *," MPEP § 713.04 (4th ed. rev. 1982).)

> Litton, in this case, simply filed a perfunctory paper which,
> Litton admitted during oral argument, said virtually nothing.  As a
> result of Litton's own failure to document the results of its
> interview with the patent examiners, Litton is now estopped from
> showing that the prosecution record is not true and that what Litton
> then called a C-I-P in response to a new matter rejection does not
> contain new matter.  Because Litton's ultimate goal in submitting
> the C-I-P declaration was to secure a patent, and because a patent
> was issued as a direct and immediate result of Litton's actions, we
> see no reason not to extend traditional estoppel doctrine here.

*Id.* at 1439 (emphasis in original).  *See also Li Second Family L.P. v. Toshiba Corp,* 231 F.3d 1373,

1378-1379 (Fed. Cir. 2000) (applying Rule 1.2's requirement that business with the PTO be

conducted in writing and affirming the district court's judgment that the patent-in-suit was

unenforceable for inequitable conduct based on its supporting finding that Li engaged in a persistent

course of nondisclosure and misrepresentation during prosecution); *Urologix, Inc. v. Prostalund*

*AB,* 227 F. Supp. 2d 1033 (E.D. Wis. 2002) (granting Prostalund's motion for summary judgment

of invalidity because Urologix's foreign priority reference, a French application publication, was

prior art under section 102(d) based on a failure of copendency under 35 U.S.C. § 120 between the

'004 patent and its parent application where the written prosecution history disclosed no evidence

that the applicants petitioned for or obtained an extension of time to respond to an Office Action,

and the application therefore was abandoned).

## IV.   MR. JANICKE AND DR. ZARINS ARE NOT SKILLED IN THE ART

Mr. Janicke is not qualified as a technical expert to offer opinions regarding double patenting

according to Medtronic's own definition of a person of ordinary skill in the art.  Medtronic has

consistently argued throughout this case the "level of ordinary skill in the field in 1983 was that of a

person who possessed a degree in material science or a related engineering degree and had some

familiarity with implantable medical devices in 1983."  Joint Proposed Final Jury Instructions

(4/28/09), Dkt. No. 473, at 16:5-7; Joint Proposed Final Jury Instructions (6/9/09), Dkt. No. 547, at

16:5-7; Joint Proposed Final Jury Instructions (7/29/09), Dkt. No. 915, at 26:5-7.  Accordingly, the

Court instructed the jury regarding Medtronic's proposed definition on August 3, 2009.  *See* Jury

Charge, Dkt. No. 972, at 175:1-4.  Mr. Janicke, however, does not possess a degree in material

AGA'S MOTION TO PRECLUDE CERTAIN TESTIMONY
OF MR. JANICKE
CASE NO. 3:07-cv-00567-MMC (EMC)

1   science or a related engineering degree and therefore is not qualified to offer technical expert

2   testimony.  Mr. Janicke is a patent law professor.  *See* Curriculum Vitae of Paul M. Janicke., Ex. 1 to

3   the Connor Decl.  He admitted during his deposition that because he lacks skill in the art and does

4   not have any expertise in metallurgy, he therefore could not offer opinions regarding the technical

5   aspects of shape memory alloys.  *See* Janicke Dep. Tr., Ex. 4 to the Connor Decl., 105:4-17.  Mr.

6   Janicke is not skilled in the art of engineering and design of medical devices including shape

7   memory alloys and therefore is not qualified to offer technical expert opinions.

8   **V.   THE COURT SHOULD PRECLUDE MR. JANICKE FROM TESTIFYING**
    **REGARDING THE SCOPE OF THE CLAIMS, ANY DIFFERENCES**
9   **BETWEEN THE CLAIMS OF THE '378 AND '141 PATENTS, AND**
    **WHETHER THE ASSERTED CLAIMS OF THE '141 PATENT ARE**
10  **OBVIOUS IN VIEW OF THE CLAIMS OF THE '378 PATENT**

11          The Court should preclude Mr. Janicke from testifying at trial about the scope and any

12  differences between the claims of the claims of the '378 and '141 patents and whether the asserted

13  claims of the '141 patent are obvious in view of the claims of the '378 patent because he is not

14  skilled in the art and relied on Dr. Zarins' improper opinions regarding the claims.  AGA expects

15  that Medtronic will question Mr. Janicke regarding the scope and any differences between the claims

16  of the claims of the '378 and '141 patents and whether the asserted claims of the '141 patent are

17  obvious in view of the claims of the '378 patent because he opines on these topics in his report.[3]

18          The Court should limit Mr. Janicke's testimony to PTO practices and procedures and should

19  not allow him to address any construction of the claims or analysis of the differences between or

20

21  [3] *See* Janicke Supp. Report, Ex. 2 to the Connor Decl., at ¶ 17 (improperly opining on the meaning
    of "stent"); ¶ 18 (improperly opining that the stent claims were restricted); ¶ 20 (improperly stating
22  that all of the claims of the '141 patent are "stent" claims); ¶¶ 22-25 (improperly relying on Dr.
    Zarins' understanding regarding scope of the claims that include guidewire and stent limitations);
23  ¶¶ 30-32 (expressing an improper opinion that claims are consonant with the restriction requirement,
    which requires an understanding of the scope of the claims and construction of the claims); ¶ 33
24  (stating that "stent" is broader than "stent graft," which he is not qualified to do); ¶ 35 (stating that
    claim 2 is consonant with the restriction requirement, which is improper because it requires an
25  understanding of the meaning of the claim terms); ¶ 37 (stating that all of the claims of the '141
    patent are various versions of the "distinct invention" claimed in the application, which Mr. Janicke
26  is unqualified to do because he is not skilled in the art); ¶ 51 (summarizing his opinion on the
    restriction requirement, 121 safe harbor, and OTDP, which must be on an understanding of the scope
27  of the claims, construction of claim terms, and a determination that the invention is patentably
    distinct, and Mr. Janicke lacks such understanding).

28

1   obviousness of the claims.  The Federal Circuit has held that "it is an abuse of discretion to permit a

2   witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is

3   qualified as an expert in the pertinent art," and "where an issue calls for consideration of evidence

4   from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a

5   witness to testify on the issue who is not qualified as a technical expert in that art."  *Sundance,* 550

6   F.3d at 1363; *see also* Fed. R. Evid. 702.

7          Any testimony by Mr. Janicke at trial based on an interpretation of the scope of the claims of

8   the '141 patent will be impermissible under Rule 702 and Federal Circuit authority.  The *Sundance*

9   court did not limit its holding to ultimate conclusions of noninfringement or invalidity, but instead

10   stated that a witness not qualified in the pertinent art may not "testify as an expert on obviousness,

11   **or any of the underlying technical questions**, such as the nature of the claimed invention, the

12   scope and content of prior art, the differences between the claimed invention and the prior art, or the

13   motivation of one of ordinary skill in the art to combine these references to achieve the claimed

14   invention."  *Sundance*, 550 F.3d at 1364 (emphasis added).  Mr. Janicke is not skilled in the art and

15   therefore is unqualified to offer technical expert testimony.  On this basis alone, the Court should

16   preclude him from offering technical expert opinions at trial.

17          Moreover, Mr. Janicke indicated in his supplemental report in May that he relied on Dr.

18   Zarins' interpretation of the assserted claims.  Janicke Supp. Report, Ex. 2 to the Connor Decl., at

19   ¶ 22.[4]  Specifically, he stated, "Claims 1, 4, and 5 [of the '141 patent], although not expressly

20   reciting stents, are stent claims because, at a minimum, they contain the limitation of 'a guide wire.'

21   I understand that it is Dr. Zarins' opinion that the addition of the 'guide wire' limitation indicates

22   that these claims are drawn to a class of medical devices that includes 'stents.'  Guide wire is

23   therefore a term used in the '141 patent in connection with stent arrangements."  *See id*.  Mr. Janicke

24   confirmed that paragraph 22 of his report was merely a recitation of Dr. Zarins' opinion.  Janicke

25   Dep. Tr., Ex. 3 to the Connor Decl., at 288:22-289:4.  He admitted that Dr. Zarins was his only

26

27   ───────────────
     [4] Mr. Janicke also admitted during his deposition that all of the opinions he was prepared to give
     regarding AGA's double patenting defense were included in his supplemental report.  Janicke Dep.
28   Tr., Ex. 3 to the Connor Decl., 313:3-13.

AGA'S MOTION TO PRECLUDE CERTAIN TESTIMONY
OF MR. JANICKE
CASE NO. 3:07-cv-00567-MMC (EMC)

source of information regarding the technical aspects of the claims.  Janicke Dep. Tr., Ex. 3 to the Connor Decl., at 234:5-235:11.

Most significantly, as noted above in Section II.B, Mr. Janicke stated during his deposition that he did not reach **any** conclusions as to whether the claims of the '378 and '141 patents are patentably distinct.  First, counsel for AGA questioned Mr. Janicke regarding whether claim 37 of the application that issued as the '378 patent was limited to a stent, guide wire, catheter, blood filter, or IUD, and Mr. Janicke stated that he was not skilled in the art and did not have an opinion on claim 37's scope.  Janicke Dep. Tr., Ex. 3 to the Connor Decl., at 174:1-175:9.  Later in the deposition, Mr. Janicke testified that he did not have an opinion whether the claims were patentably distinct.  Janicke Dep. Tr., Ex. 3 to the Connor Decl., at 292:4-24.  Mr. Janicke also clarified that when he opined that the asserted claims of the '141 patent were drawn to a distinct invention, he was not comparing the scope of the claims but merely comparing the literal words.  Janicke Dep. Tr., Ex. 3 to the Connor Decl., at 296:11-25.

All of Mr. Janicke's opinions regarding the scope of the claims, differences in claim language, and any patentable distinctions between the claims of the '378 and '141 patents are based on Dr. Zarins' improper opinions and therefore are inadmissible.  On December 10, 2009, the Court determined that Dr. Zarins was not qualified to offer opinions regarding double patenting from the perspective of a person of ordinary skill in the art.  Trial Tr. (12/10/09), at 674:10-676:11.  To the extent that Mr. Janicke's opinions are based on Dr. Zarins' opinion of how one skilled in the art would understand the claims, Mr. Janicke's testimony also is improper and should be precluded.  The Court therefore should preclude Mr. Janicke's testimony based on an interpretation of the scope of the claims of the '378 and '141 patents because (1) Mr. Janicke is not skilled in the art and therefore is unqualified to give such testimony, and (2) Mr. Janicke relied on Dr. Zarins' opinions on this issue, and the Court found that Dr. Zarins' testimony was inadmissible under Rule 702 and *Sundance*.

**VI.    THE COURT SHOULD PRECLUDE MR. JANICKE FROM TESTIFYING REGARDING MATTERS THAT ARE NOT MEMORIALIZED IN THE WRITTEN PROSECUTION HISTORIES OF THE '378 AND '141 PATENTS**

The Court should not permit Mr. Janicke to testify regarding matters that are not memorialized in the written prosecution histories – that is, to supplement or contradict the written records – because any testimony that he might offer in addition to or contrary to the written prosecution histories is legally irrelevant to double patenting and therefore is inadmissible. *See* 35 U.S.C. § 132; Fed. R. Evid. 401 and 402; *Geneva Pharms.*, 349 F.3d at 1382; *Litton Sys.*, 728 F.2d at 1438-1440; 37 C.F.R. §§ 1.2 and 1.133; MPEP §§ 713.04 and 812.01.  AGA expects that Medtronic will attempt to elicit such testimony from Mr. Janicke because his supplemental expert report of May 11, 2009 includes these improper opinions.[5]

The written prosecution histories of the '378 and '141 patents are public records that memorialize the exchange between the applicant and the PTO, and receiving any testimony outside the written record of the prosecution history is improper.  35 U.S.C. § 132; *Litton Sys.*, 728 F.2d at 1438-1440; 37 C.F.R. §§ 1.2 (requiring that all business with the PTO be conducted in writing) and 1.133(b) (requiring the applicant to file "a complete written statement of the reasons presented at the interview as warranting favorable action" after the interview); MPEP §§ 713.04 ("A complete written statement as to the substance of any face-to-face or telephone interview must be made of record in the application") and 812.01 (requiring a telephonic restriction requirement to be memorialized in writing).  Accordingly, the Federal Circuit requires that restriction requirements be made in writing, and a purported oral restriction requirement is without legal effect.  *See id.*; *Geneva Pharms*, 349 F.3d at 1382.

As the Court indicated during the first week of the bench trial with respect to Mr. Sheldon, Mr. Janicke's limited role, if any, also should be that of a reader.  He should not be permitted to fill

---

[5] *See* Janicke Supp. Report, Ex. 2 to the Connor Decl., at ¶ 12 (inferring or guessing at what occurred during the June 26, 1995 telephonic interview); ¶ 29 (offering an improper ultimate opinion that section 121 applies, which requires Mr. Janicke to rely on his speculation regarding what occurred during the telephonic interview on June 26, 1995); ¶ 39 (speculating as to why the Examiner did not issue a double patenting rejection of the application for '141 patent based on the '378 patent); ¶ 40 (speculates that the Board apparently did not see fit to make a double patenting rejection based on the '378 patent).

in "holes" in the written prosecution histories with his suppositions or inferences.  Furthermore, any testimony regarding the patent examiner's state of mind, intent, or mental impressions is inadmissible under Rule 702 because it is speculative and is not (and cannot be) based on Mr. Janicke's expertise.  Fed. R. Evid. 702; *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 1995 US Dist. LEXIS 22335, at \*8-\*11 (N.D. Cal. April 25, 2005) (granting plaintiff's motion to exclude the testimony of defendant's legal expert regarding what the expert would have done if he had been the examiner, or if the examiner had different information, which was irrelevant and speculative and beyond the scope of Patent Office procedure).

In short, it is improper for Medtronic to attempt to supplement or contradict the written prosecution histories with Mr. Janicke's testimony.  The Federal Circuit's decisions in *Geneva Pharms.* and *Litton Sys.* and PTO rules and regulations require the Court to disregard any testimony or opinions Mr. Janicke might offer regarding the written prosecution histories of the patents-in-suit, including testimony concerning any oral restriction requirement purportedly issued during a telephonic interview that was not recorded in the examiner's summary of the interview. *Geneva Pharms*, 349 F.3d at 1382; *Litton Sys.*, 728 F.2d at 1438-1440; 37 C.F.R. §§ 1.2 and 1.133; MPEP §§ 713.04 and 812.01; *Urologix,* 227 F. Supp. 2d at 1038.  Additionally, any testimony Mr. Janicke might offer regarding the examiner's intent is speculative, not based on his expertise, and therefore is inadmissible under Rule 702.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, AGA respectfully requests that this Court preclude Mr. Janicke's testimony regarding (1) the scope and any differences between the claims of the claims of the '378 and '141 patents and whether the asserted claims of the '141 patent are obvious in view of the claims of the '378 patent, and (2) matters that are not memorialized in the written prosecution histories.

Dated: December 13, 2009                     Respectfully submitted,


                                             /s/ Michael S. Connor
                                             Michael S. Connor

                                             Attorneys for Defendant
                                             AGA MEDICAL CORP.

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record, who are deemed to have consented to electronic

service, are being served this December 13, 2009, with a copy of this document via the Court's

CM/ECF system.

| | |
|---|---|
| James J. Elacqua, Esq. | james.elacqua@dechert.com |
| Noemi C. Espinosa, Esq. | nicky.espinosa@dechert.com |
| Michelle W. Yang, Esq. | michelle.yang@dechert.com |
| Ellen J. Wang, Esq. | ellen.wang@dechert.com |
| Hieu H. Phan, Esq. | hieu.phan@dechert.com |
| Andrew N. Thomases | andrew.thomases@dechert.com |
| Joshua C. Walsh-Benson | joshua.walsh-benson@dechert.com |
| Karen D. McDaniel | kmcdaniel@merchantgould.com |

By /s/ Michael S. Connor
     Michael S. Connor

Attorneys for Defendant
AGA MEDICAL CORPORATION